# Exhibit C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| PUREWICK CORPORATION,<br><br>      Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>SAGE PRODUCTS, LLC,<br><br>      Defendant and Counterclaim Plaintiff. | C.A. No. 19-1508-MN |

## DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT (NOS. 1-6)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant and Counterclaim Plaintiff Sage Products, LLC ("Sage") hereby objects and responds to Plaintiff's First Set of Interrogatories to Defendant (Nos. 1-6).

## GENERAL OBJECTIONS

1.      Sage objects to each of Plaintiff's interrogatories, instructions, and definitions to the extent they attempt to impose any obligations on Sage beyond and/or inconsistent with those set forth in the Federal Rules of Civil Procedure, the District of Delaware Local Rules, the Default Standard for Discovery Including Discovery of ESI ("Default Standard") including any modifications thereafter agreed upon by the parties, the Court's January 9, 2020 Scheduling Order ("Case Scheduling Order"), the Court's February 12, 2020 Stipulated Protective Order ("Protective Order"), or any Order of the Court. Sage further incorporates its objections and responses to PureWick's document requests.

2.      Sage objects to Plaintiff's interrogatories to the extent they seek information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other

privilege or protection afforded by law. Sage further objects to the extent that any interrogatory, definition, or instruction seeks logging of privileged information or communications generated after the filing of this lawsuit or any other category of information protected under Paragraph 1(d) of the Default Standard.

3. Sage objects to Plaintiff's interrogatories to the extent they seek information not relevant to a claim or defense or to the subject matter of this litigation or not proportional to the needs of the case, considering the importance of the issues at stake, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

4. Sage objects to Plaintiff's interrogatories as unduly burdensome to the extent that they seek discovery of information already within the possession, custody, and control of Plaintiff or Plaintiff's counsel or information that is available from public sources.

5. Sage objects to each interrogatory to the extent it seeks identification of "all" documents or information and not identification of representative documents or information, making the interrogatories even more overly broad and unduly burdensome.

6. Sage objects to Plaintiff's interrogatories to the extent they seek information that is subject to non-disclosure agreements, confidentiality agreements, court protective orders, or other obligations of confidentiality including, for example, patient medical records, to the extent Plaintiff's interrogatories seek such information in a manner inconsistent with such non-disclosure agreement, confidentiality agreement, court protective order, and/or another obligation of confidentiality. Sage will provide responsive, non-privileged, confidential information and documents pursuant to the Protective Order in accordance with its obligations of confidentiality.

7.      Sage objects to the definitions of "Sage" and "Defendant" as overly broad and unduly burdensome and to the extent the definitions and instructions attempt to impose an obligation on Sage to produce, identify, or locate information or documents not in its possession, custody, or control through inclusion of individuals and entities other than Sage Products, LLC in the definition. Sage will only provide information within the possession, custody, and control of Sage.

8.      Sage objects to the definition of "Accused Product" as vague, overly broad, and unduly burdensome to the extent that it includes products other than Sage's PrimaFit® product identified in Plaintiff's Amended Complaint (D.I. 9), as Plaintiff has not identified any other "Accused Product" with any specificity and has not provided any relevant disclosures pursuant to the Case Scheduling Order or the Default Standard. Sage further objects to Plaintiff's interrogatories as overly broad and unduly burdensome to the extent they seek technical information and documents for products not relevant to any claim or defense in this case. For example, "all versions and variations thereof" is vague and indefinite and overbroad and unduly burdensome. Sage is interpreting "Accused Product" to be the Sage product identified and depicted in Plaintiff's Amended Complaint, e.g., at Exhibit 4. Moreover, Sage incorporates by reference General Objection No. 13.

9.      Sage objects to the definition of "PureWick's Product" as vague and indefinite as PureWick has sold a variety of different products, including structurally different products, under the name "PureWick FEC Solution." Unless PureWick further clarifies its definition of "PureWick's Product," Sage is interpreting "PureWick's Product" to be the PureWick System including the PureWick Female External Catheter depicted on https://www.purewickathome.com/ as of March 23, 2020.

10.     Sage object to the definition of "Prior Art" as vague and indefinite. Sage will interpret "Prior Art" to the best of its understanding of the term as used in the context of patent law.

11.     Sage objects to Plaintiff's interrogatories to the extent they require Sage to review, search, identify, or collect information and documents from other litigations including documents and things in the possession of Sage's outside counsel.

12.     Sage objects to Plaintiff's interrogatories as overly broad and unduly burdensome to the extent they require searching and collection from custodians and data sources other than those identified in Sage's disclosures pursuant to Paragraph 3 of the Default Standard or any modification thereof agreed-upon by both Parties.

13.     Sage further objects to Plaintiff's interrogatories to the extent they are unbounded in time and therefore seek irrelevant information. For example, Sage objects to Plaintiff's interrogatories that seek information from prior to six years before the filing of the complaint to the extent such interrogatories are not in accordance with Paragraph 4(e) of the Default Standard. Sage further objects to the extent the interrogatories seek infringement-related or damages-related information regarding the PrimaFit® during a time period that predates the issuance of the Patents-In-Suit or prior to Sage receiving notice of the Patents-In-Suit by the filing of the Complaint. Sage will not provide infringement-related or damages-related information from prior to August 2019 at least until Plaintiff produces *prima facie* evidence of patent marking of the 508 Patent and 376 Patent.

14.     Sage objects to Plaintiff's interrogatories as premature to the extent they seek information in advance of the timelines set forth in the Default Standard or the Case Scheduling

Order. For example, expert-related discovery will proceed as required by the Case Scheduling Order.

15.     Sage objects to the premature service of these interrogatories (Nos. 1-6), which were served prior to the parties' Rule 26(f) conference in violation of Federal Rule of Civil Procedure 26(d). The parties have agreed that responses to these interrogatories (Nos. 1-6) will be due on March 23, 2020.

16.     Sage's investigation and preparation for trial in the above-captioned litigation is continuing and discovery in this action has just commenced. All responses to the following interrogatories are based on information presently known to Sage after a reasonable effort to locate information called for by these interrogatories. Thus, Sage's responses are based on preliminary information in its possession and Sage reserves the right to supplement its responses to the extent Sage learns of additional information that may develop or come to Sage's attention at a later time. In addition, Sage's objections as set forth herein are made without prejudice to Sage's right to assert any additional or supplemental objections should Sage discover additional grounds for such objections.

17.     Sage is willing to meet and confer to discuss its objections in a good faith attempt to resolve or narrow any differences between the parties.

## **INTERROGATORIES**

1.     For each month and year that the Accused Product has been sold or otherwise distributed by or for Defendant, identify on a monthly basis by customer the total number of units sold, gross revenues, net revenues, gross profits, net profits, and costs.

**RESPONSE TO INTERROGATORY 1:**

In addition to the General Objections set forth above, Sage objects to this interrogatory as vague, ambiguous, indefinite, overly broad and unduly burdensome and to the extent it seeks

information that is not relevant to the claims or defenses of any party or not proportional to the needs of the case. Sage objects to this interrogatory as vague and indefinite, at least because the terms or phrases "gross revenues," "net revenues," "gross profits," "net profits," and "costs" have not been defined by Plaintiff and are not reasonably susceptible to precise definition in this context including without expert discovery. Similarly, Sage objects to this interrogatory as vague and indefinite to the extent that it seeks costs, profits, or other information "by customer." Sage further objects to this interrogatory as unbounded in time and hereby incorporates General Objection No. 13. For example, this interrogatory is overly broad and unduly burdensome to the extent that Plaintiff seeks damages-related information regarding any accused product before providing notice of the Patents-In-Suit. Sage objects to this interrogatory as vague, overly broad, unduly burdensome, and seeking information not relevant to the claims or defenses of any party or proportional to the needs of the case to the extent the definition of "Accused Product" includes products other than Sage's PrimaFit® product identified in Plaintiff's Amended Complaint. In addition, Sage objects to the extent that customer-specific sales information is not relevant to the claims or defenses of any party or proportional to the needs of the case and will not provide such data until Plaintiff identifies its relevance, if any. Sage objects to this interrogatory as duplicative of other discovery requests, such as Request for Production No. 65 and hereby incorporates its objections and response to Request for Production No. 65.

Subject to and without waiving any general or specific objections, pursuant to Federal Rule of Civil Procedure 33(d), Sage will produce documents reflecting cumulative sales data for the PrimaFit® product identified in Plaintiff's Amended Complaint, for the relevant time period at an appropriate time in this litigation. Sage preliminarily identifies the following: SAGE00000488.

Sage further states that discovery is ongoing and Sage will supplement its response to this interrogatory as necessary pursuant to Fed. R. Civ. P. 26(e) after a substantial amount of discovery has been conducted. Sage expressly reserves the right to supplement, modify, or amend its responses contained herein.

2.      Separately for each of the Patents-in-Suit, describe in detail the facts and circumstances regarding Defendant's first awareness of each of the Patents-in-Suit and the applications that led to each of the Patents-in-Suit, including when Defendant first became aware, how Defendant first became aware, the identity of the individual(s) who first became aware, the actions, if any, taken by Defendant after becoming aware, and an identification of all documents showing or reflecting the first awareness.

**RESPONSE TO INTERROGATORY 2:**

In addition to the General Objections set forth above, Sage objects to this interrogatory as premature because it seeks information that is the subject of ongoing discovery and investigation, both of which are in the early stages. Discovery has just started in this case and there has been no deposition discovery. Sage objects to this interrogatory to the extent it seeks information which is protected by any applicable privilege, including attorney-client privilege and/or work product immunity doctrine. Sage objects to this interrogatory as overly broad, unduly burdensome, and seeking information not relevant to the claims or defenses of any party or proportional to the needs of the case. For example, the interrogatory is overbroad to the extent it seeks information regarding Sage's awareness of any patents or application beyond the Patents-In-Suit. The request that Sage identify "all documents" rather than representative documents or documents sufficient to show the relevant information is overly broad and unduly burdensome. Sage objects to this interrogatory as vague and indefinite, at least because the term "actions . . . taken by Defendants after becoming aware" has not been defined by Plaintiff and is overbroad on its face. Sage further objects to the extent that this interrogatory seeks information that is not corporate knowledge but rather

7

knowledge of particular individuals. Sage objects to this interrogatory because it contains multiple discrete parts, which should be counted as separate interrogatories pursuant to Fed. R. Civ. P. 33.

Subject to and without waiving any general or specific objections, Sage hereby incorporates its Answer, Defenses, and Counterclaims to Plaintiff's Amended Complaint (D.I. 12). During the parties' various discussions, Sage received information from PureWick about limited aspects of its business including the 508 patent at least as early as 2016. Sage learned of the 376 patent at least as early as March 12, 2019, after the patent issued. Sage learned of the 989 patent at least as early as August 27, 2019, after the patent issued. PureWick never alleged that Sage infringed any of these patents until filing this lawsuit in August 2019 despite having multiple opportunities to do so if it believed there was infringement.

PureWick has been aware of Sage's intention to sell a female external collection device since at least September 28, 2017. On September 28, 2017, PureWick sent a letter to Sage about Sage's female external collection device, which attached a brochure with an image of Sage's device, which is nearly identical to images included in PureWick's Amended Complaint, and addressed the issue of the parties' confidentiality agreement. In that letter, PureWick requested assurances that Sage did not use any PureWick confidential information in the development of Sage's product but, despite knowing about Sage's product, PureWick never raised any infringement issue relating to the 508 patent even though the 508 patent issued years earlier in 2012. PureWick also did not raise any patent infringement issues or potential patent infringement issues relating to any pending patent applications. Sage responded to PureWick's September 28, 2017, letter on March 19, 2018, and confirmed that it had not misused any PureWick confidential information. On April 22, 2019, after the PrimaFit® had been on the market for several months and the 376 patent issued, PureWick sent another letter addressing the parties' confidentiality

8

agreement. Again, PureWick never referenced any patent issues, never alleged infringement of the 508 patent (which had issued years earlier), never mentioned any infringement of the now newly-issued 376 patent, and never referenced any potential patent infringement issues relating to any pending patent applications. Thus, in multiple pieces of correspondence with Sage relating to the PrimaFit® product over several years prior to the filing of the Complaint, PureWick never alleged any patent infringement issues (while simultaneously and wrongly requesting information about other potential alleged violations such as, e.g., use of confidential information). PureWick's actions and inactions led Sage to believe that PureWick did not believe the PrimaFit® product infringed any PureWick patents.

As explained, Plaintiff did not notify Sage of any alleged infringement until it filed its Complaint and Amended Complaint on August 12, 2019, and October 2, 2019, respectively. The Complaints failed to present *prima facie* cases of infringement. Sage filed its response to the Amended Complaint on November 1, 2019, in which it detailed numerous good faith defenses to Plaintiff's claims including detailed explanations of why no valid claim of any Patent-In-Suit is infringed as well as unenforceability defenses.

Sage further states that discovery is ongoing and Sage will supplement its response to this interrogatory as necessary pursuant to Fed. R. Civ. P. 26(e) after a substantial amount of discovery has been conducted. Sage expressly reserves the right to supplement, modify, or amend its responses contained herein.

3.      For any asserted claim of the Patents-in-Suit that Defendant contends its Accused Product does not infringe, either directly, indirectly, literally, or under the doctrine of equivalents, provide the full bases for Defendant's contention, including by identifying each limitation in each claim that Defendant contends the Accused Product does not infringe, stating and explaining in full for each such limitation the entire legal and factual basis for the contention of non-infringement, identifying by production number all documents that support Defendant's

contention, and identifying all persons (expert or otherwise) with knowledge regarding Defendant's contentions and/or upon whom Defendant intends to rely to support its contentions.

**RESPONSE TO INTERROGATORY 3:**

In addition to the General Objections set forth above, Sage objects to this interrogatory as a premature contention interrogatory that has been served before a substantial amount of discovery has been completed. Discovery has just started in this case and there has been no deposition discovery. Sage objects to this interrogatory as premature because Plaintiff has not provided infringement contentions pursuant to Paragraph 7 of the Case Scheduling Order or in response to Sage's Interrogatory No. 1. Moreover, Plaintiff's Complaint and Amended Complaint is inadequate as it fails to explain how certain claim elements are purportedly satisfied. Indeed, Plaintiff has not even identified any particular asserted claims. Sage objects to this interrogatory as premature to the extent it seeks information that is the subject of expert discovery, which will be provided according to the Case Scheduling Order. Sage also objects to this interrogatory as premature because the parties have not yet proffered their proposed constructions of the asserted claims, and the Court's final claim constructions may affect Sage's non-infringement contentions. Sage objects to this interrogatory as overly broad, unduly burdensome, and seeking information not relevant to the claims or defenses of any party or proportional to the needs of the case. For example, Sage objects to this interrogatory as vague, overly broad, unduly burdensome, and seeking information not relevant to the claims or defenses of any party or proportional to the needs of the case to the extent the definition of "Accused Product" includes products other than Sage's PrimaFit® product identified in Plaintiff's Amended Complaint. Sage also objects to this interrogatory as overly broad, unduly burdensome, and seeking information not relevant to the claims or defenses of any party or proportional to the needs of the case to the extent it requests Sage provide non-infringement bases for unasserted claims (to date no asserted claims have been

identified) or accused products during a time period that predates the filing of the Complaint on August 12, 2019, or the Amended Complaint on October 2, 2019, which is not relevant since Plaintiff has not produced *prima facie* evidence that its products were marked and Plaintiff did not provide Sage notice of the Patents-In-Suit prior to the filing of the Complaint. Sage objects to this interrogatory as overly broad and unduly burdensome in that it requests Sage "stat[e] and explain[] in full for each such limitation the entire legal and factual basis for the contention of non-infringement." Sage objects to this interrogatory because it contains multiple discrete parts, which should be counted as separate interrogatories pursuant to Fed. R. Civ. P. 33. The request that Sage identify "all documents" rather than representative documents or documents sufficient to show the relevant information is overly broad and unduly burdensome. That is particularly burdensome since all of Sage's documents relating to the PrimaFit® product could potentially show why and how there is no infringement since many of the claim elements are missing.

Subject to and without waiving any general or specific objections, Sage incorporates the factual and legal bases for its allegations of non-infringement with respect to the PrimaFit® product identified in Sage's Answer, Defenses, and Counterclaims (D.I. 12). For example, with respect to the 508 patent, the PrimaFit® product does not include several elements of the claims of the 508 patent, including at least the claimed "urine collection device" or "moisture-wicking article" adapted for use with such a device that includes "a container defining a chamber" (including one that "is closed at both ends"), "wherein the container is closed except for having an array of openings . . . through which urine can be drawn into the chamber," "at least one outlet port through which urine can be drawn away from the chamber," and "wherein an elongated exterior of the container is configured [and dimensioned] for enabling a moisture-wicking article to be secured over the array of openings of the container by wrapping the article over the array and securing the

wrapped article." There is no person or entity that performs the method steps of "providing [the claimed] urine collection device," "securing a moisture-wicking article over the array of openings by wrapping the article over the array and securing the article," or "drawing the urine from the moisture-wicking material, through the array of openings and into the chamber from the disposed moisture-wicking article." This is at least because the PrimaFit® product does not include a container, much less one that is closed or defines or has a chamber (much less one that is closed at both ends). It also does not include an array of openings (much less any article secured over the array by wrapping the article over it and securing the article) or a port through which urine is drawn away from any chamber. Nor does the PrimaFit® product have, for example, each of a container, an array of openings, and a moisture wicking article over such an array, all in the same device at the same time. There is also no direct infringement because there is no party that performs all of the steps of any claimed method claim, including the claimed "method of transporting urine voided from a person or animal." For example, there is no party that performs the steps of "(a) providing a urine collection device . . . , (b) securing a moisture-wicking article over the array . . . (c) disposing the secured moisture-wicking article in contact with a region of the person . . . so that urine from the urethral opening is drawn into the moisture-wicking article; and (d) drawing the urine from the moisture-wicking material . . . ." Under Plaintiff's own allegations, various unrelated parties and actors that do not act in concert would perform such steps, and Sage does not direct or control others' performance.

With respect to the 376 patent, the PrimaFit® product does not include several elements of the claims of the 376 patent, including at least the claimed "apparatus" that includes "a fluid impermeable casing having [or defining] a fluid reservoir at a first end," "a fluid impermeable casing defining a pliable fluid reservoir at a first end," "a fluid impermeable layer," and/or "a

membrane . . . supported on the support." This is at least because the PrimaFit® product does not include at least a casing, much less an impermeable one or one that has or defines a fluid reservoir (or a pliable fluid reservoir). The PrimaFit® product also does not include a membrane supported on an inner support.

With respect to the 989 patent, the PrimaFit® product does not include several elements of the claims of the 989 patent, including at least the claimed "method" that includes "disposing in an operative relationship with the urethral opening of a female user a urine collecting apparatus" where the apparatus includes "a fluid impermeable casing having a fluid reservoir at a first end," "a fluid impermeable layer," and/or "a membrane . . . supported on the fluid permeable support." This is at least because the PrimaFit® product does not include at least a casing, much less an impermeable one or one that has or defines a fluid reservoir. The PrimaFit® product also does not include a membrane supported on an inner support. The use of PrimaFit® product therefore does not infringe any of the claims.

Sage has also not contributorily infringed or induced infringement of any valid and enforceable claim of the Patents-In-Suit. Sage does not have the requisite specific intent to infringe or knowledge of infringement of the Patents-In-Suit required for inducement of infringement or contributory infringement. Sage does not offer to sell or sell within the United States or import into the United States any component knowing that it is especially made or especially adapted for use in infringement of the Patents-In-Suit.

Sage further states that discovery is ongoing and Sage will supplement its response to this interrogatory as necessary pursuant to Fed. R. Civ. P. 26(e) after further discovery has been conducted. Sage expressly reserves the right to supplement, modify, or amend its responses contained herein.

4.      State the basis for any contention that any infringement of the Patents-in-Suit was not or will not be willful, including identifying all facts, literature, or other documents or evidence that Defendant asserts support its contention, and identifying each person with knowledge of such facts.

**RESPONSE TO INTERROGATORY 4:**

In addition to the General Objections set forth above, Sage objects to this interrogatory as premature because it seeks information that is the subject of ongoing discovery and investigation, both of which are in the early stages. Discovery has just started in this case and there has been no deposition discovery. Plaintiff bears the burden of establishing willful infringement and Plaintiff has proffered no facts that indicate that Sage has willfully infringed any patent-in-suit. That is particularly troubling since Sage has been selling its products for years without any word from Plaintiff. Thus, responding to this interrogatory prior to any affirmative identification of evidence by Plaintiff is premature. Sage objects to this interrogatory to the extent it seeks information which is protected by any applicable privilege, including attorney-client privilege and/or work product immunity doctrine. Sage objects to this interrogatory as overly broad, unduly burdensome, and seeking information not relevant to the claims or defenses of any party or proportional to the needs of the case. For example, Sage objects to this interrogatory as overly broad and unduly burdensome in that it requests that Sage identify "all facts, literature, or other documents or evidence" rather than representative facts, literature, documents or other evidence sufficient to show the relevant information. Sage objects to this interrogatory as overly broad, unduly burdensome, and seeking information not relevant to the claims or defenses of any party or proportional to the needs of the case in requesting Sage identify "each person with knowledge of such facts." Sage objects to this interrogatory because it contains multiple discrete parts, which should be counted as separate interrogatories pursuant to Fed. R. Civ. P. 33.

14

Subject to and without waiving any general or specific objections, Sage incorporates its response to Interrogatory No. 2. Sage further responds that it has not, does not, and will not willfully infringe any of the Patents-In-Suit, at least because the accused PrimaFit® product, and the use of the PrimaFit® product, does not infringe any claim of the Patents-In-Suit and because the Patents-In-Suit are invalid and unenforceable. Sage hereby incorporates by reference its response to Interrogatory No. 3. Sage also hereby incorporates by reference the factual and legal bases set forth in Sage's Answer, Defenses, and Counterclaims (D.I. 12) for its allegations that the accused PrimaFit® product does not infringe any claim of the Patents-In-Suit and that the claims of the Patents-In-Suit are invalid and unenforceable. Further details will be outlined in forthcoming invalidity contentions and expert reports.

Sage also incorporates the factual and legal bases in its Answer, Defenses, and Counterclaims (D.I. 12) setting forth its good faith belief that it did not infringe any valid patents. PureWick has been aware of Sage's intention to sell a female external collection device since at least September 28, 2017. On September 28, 2017, PureWick sent a letter to Sage about Sage's female external collection device, which attached a brochure with an image of Sage's device, which is nearly identical to images included in PureWick's Amended Complaint, and addressed the issue of the parties' confidentiality agreement. In that letter, PureWick requested assurances that Sage did not use any PureWick confidential information in the development of Sage's product but, despite knowing about Sage's product, PureWick never raised any infringement issue relating to the 508 patent even though the 508 patent issued years earlier in 2012. PureWick also did not raise any patent infringement issues or potential patent infringement issues relating to any pending patent applications. Sage responded to PureWick's September 28, 2017, letter on March 19, 2018, and confirmed that it had not misused any PureWick confidential information. On April 22, 2019,

after the PrimaFit® had been on the market for several months and the 376 patent issued, PureWick sent another letter addressing the parties' confidentiality agreement. Again, PureWick never referenced any patent issues, never alleged infringement of the 508 patent (which had issued years earlier), never mentioned any infringement of the now newly-issued 376 patent, and never referenced any potential patent infringement issues relating to any pending patent applications. Thus, in multiple correspondence with Sage over several years prior to the filing of the Complaint, PureWick never alleged any patent infringement issues (while simultaneously and wrongly requesting information about other potential violations such as, e.g., use of confidential information). PureWick's actions and inactions led Sage to believe in good faith that PureWick did not believe the PrimaFit® product infringed any PureWick patents.

Sage further states that discovery is ongoing and Sage will supplement its response to this interrogatory as necessary pursuant to Fed. R. Civ. P. 26(e) after further discovery has been conducted. Sage expressly reserves the right to supplement, modify, or amend its responses contained herein.

5.     Provide the complete factual and legal bases for each of Defendant's affirmative defenses raised in its Answer to Plaintiff's Amended Complaint.

**RESPONSE TO INTERROGATORY 5:**

In addition to the General Objections set forth above, Sage objects to this interrogatory as compound, overly broad and unduly burdensome in that it requests Sage identify "the complete factual and legal bases for each of Defendant's affirmative defenses." Sage objects to this interrogatory because it contains multiple discrete parts, which should be counted as separate interrogatories pursuant to Fed. R. Civ. P. 33. Indeed, there are at least eleven enumerated affirmative defenses, many of which have sub defenses, including at least:

1. The Amended Complaint fails to state a claim upon which relief can be granted, including, but not limited to, failing to adequately plead indirect or willful infringement and failing to plead infringement.

2. Sage has not engaged and is not engaging in any act that constitutes direct infringement, induced infringement, or contributory infringement, either literally or under the doctrine of equivalents, of any valid and enforceable claim of any of the patents-in-suit.

3. Sage has not engaged and is not engaging in any act that constitutes willful infringement of any valid and enforceable claim of any of the patents-in-suit.

4. The claims of the patents-in-suit are invalid for failure to meet one or more of the conditions of patentability as specified in Title 35 of the United States Code, including 35 U.S.C. §§ 102, 103, and/or 112, *et seq*. No claim of the patents-in-suit can be validly construed to cover any product or action of Sage.

5. Plaintiff's claims are barred in whole or in part by prosecution history estoppel.

6. Plaintiff's claims are barred or otherwise limited under principles of equity, including waiver, estoppel, unclean hands, and/or acquiescence and render the patents-in-suit unenforceable.

7. Plaintiff's right to seek damages is limited or barred, including, without limitation, by 35 U.S.C. § 287.

8. Plaintiff is barred by 35 U.S.C. § 288 from recovering any costs associated with this suit.

9. Plaintiff may not seek injunctive relief against Sage because the alleged damages are not immediate or irreparable.

10. Plaintiff has suffered no damages.

11. This is an exceptional case, and Sage is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

Thus, the interrogatory is unduly compound and improper under established law.

Sage further objects to this interrogatory as premature because it seeks information that is the subject of ongoing discovery and investigation, both of which are in the early stages. Discovery has just started in this case and there has been no deposition discovery. Sage objects to this interrogatory to the extent it seeks information which is protected by any applicable privilege, including attorney-client privilege and/or work product immunity doctrine. Sage objects to this interrogatory because it attempts to impose obligations on Sage beyond and/or inconsistent with those set forth in the Federal Rules of Civil Procedure, the District of Delaware Local Rules, the Default Standard, the Case Scheduling Order, the Protective Order, or any Order of the Court.

This interrogatory is improper as explained above. Subject to and without waiving any general or specific objections, Sage will not further respond to this interrogatory until it is either narrowed or withdrawn. However, Sage hereby incorporates Sage's Answer, Defenses, and Counterclaims (D.I. 12), which explain the basis of its defenses as well as its Answering Brief in Opposition to PureWick's Motion to Dismiss and Motion to Strike (D.I. 19). Sage also incorporates its responses to Interrogatories Nos. 1-4 and 6, which relate to at least some of its affirmative defenses.

6.    For each of the Patents-in-Suit, identify and describe in detail any alleged non-infringing alternative that Defendant contends can be used as an alternative to each Patent-in-Suit, including but not limited to: (i) a description of each alleged non-infringing alternative; (ii) a description of when and how each alleged non-infringing alternative was developed; (iii) the identity of individuals involved in developing and/or most knowledgeable about each alleged non-infringing alternative (if applicable); (iv) costs associated with developing and/or implementing

18

each alleged non-infringing alternative; and (v) steps and the time required to develop and/or implement each alleged non-infringing alternative.

**RESPONSE TO INTERROGATORY 6:**

In addition to the General Objections set forth above, Sage objects to this interrogatory as vague, indefinite, ambiguous, overly broad and unduly burdensome and to the extent it seeks information that is not relevant to the claims or defenses of any party or not proportional to the needs of the case. Sage objects to this interrogatory as a premature contention interrogatory that has been served before a substantial amount of discovery has been completed. Discovery has just started in this case and there has been no deposition discovery. Moreover, as explained in response to Interrogatory No. 3, which is hereby incorporated by reference, Plaintiff has not even identified how the PrimaFit® infringes or even what claims are alleged to infringe. Sage objects to this interrogatory as premature to the extent it seeks information that is the subject of expert discovery, which will be provided according to the Case Scheduling Order. Sage also objects to this interrogatory as premature because the parties have not yet proffered their proposed constructions of the asserted claims, and the Court's final claim constructions may affect Sage's non-infringing alternative contentions. Sage objects to this interrogatory to the extent it calls for a legal conclusion regarding non-infringing alternatives to the alleged inventions claimed in the Patents-In-Suit.

Sage further objects to this interrogatory as vague and indefinite, at least to the extent that it requires a non-infringing alternative to be "developed." Sage further objects to this interrogatory as vague, indefinite and irrelevant at least because "costs" has not been defined by Plaintiff and is not reasonably susceptible to precise definition in this context and "costs associated with developing and/or implementing each alleged non-infringing alternative" is not relevant to a claim or defense or to the subject matter of this litigation. Sage further objects to Plaintiff's interrogatory as vague, indefinite and irrelevant because "steps and the time required to develop and/or

19

implement each alleged non-infringing alternative" has not been defined by Plaintiff and is not reasonably susceptible to precise definition in this context, and seeks information not relevant to a claim or defense or to the subject matter of this litigation. Sage also objects to this interrogatory to the extent it seeks information outside of Sage's possession, custody, or control. Sage objects to this interrogatory to the extent it seeks information which is protected by any applicable privilege, including attorney-client privilege and/or work product immunity doctrine. Sage objects to this interrogatory because it contains multiple discrete parts, which should be counted as separate interrogatories pursuant to Fed. R. Civ. P. 33.

Subject to and without waiving any general or specific objections, Sage states that discovery is ongoing and Sage will supplement its response to this interrogatory as necessary pursuant to Fed. R. Civ. P. 26(e) after further discovery has been conducted including an explanation by Plaintiff on how PrimaFit® infringes and a determination by the Court on claim construction issues. Sage expressly reserves the right to supplement, modify, or amend its responses contained herein.

Dated: March 23, 2020

*As to objections only,*

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Of Counsel:

Robert A. Surrette
Sandra A. Frantzen
Christopher M. Scharff
Bryce R. Persichetti
McAndrews, Held & Malloy, Ltd
500 West Madison Street
Chicago, IL 60661
(312) 775-8000
bsurrette@mcandrews-ip.com
sfrantzen@mcandrews-ip.com
cscharff@mcandrews-ip.com
bpersichetti@mcandrews-ip.com

*/s/ Samantha G. Wilson*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Defendant and Counterclaim
Plaintiff Sage Products, LLC*

26191021.1

21

## <u>CERTIFICATE OF SERVICE</u>

I, Samantha G. Wilson, hereby certify that on March 23, 2020, I caused a true and correct

copy of the foregoing document to be served on the following counsel in the manner indicated:

### <u>BY E-MAIL</u>

John W. Shaw, Esquire
Karen E. Keller, Esquire
Nathan R. Hoeschen, Esquire
Shaw Keller LLP
I.M. Pei Building
1105 North Market Street
12th Floor
Wilmington, DE 19801
*jshaw@shawkeller.com*
*kkeller@shawkeller.com*
*nhoeschen@shawkeller.com*

Steven C. Cherny, Esquire
Brian P. Biddinger, Esquire
Matthew A. Traupman, Esquire
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
*stevencherny@quinnemanuel.com*
*brianbiddinger@quinnemanuel.com*
*matthewtraupman@quinnemanuel.com*

Amanda K. Antons, Esquire
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
*amandaantons@quinnemanuel.com*

*Attorneys for Plaintiff/Counterclaim Defendant*

Dated:  March 23, 2020

YOUNG CONAWAY STARGATT
& TAYLOR, LLP


*/s/  Samantha G. Wilson*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Defendant and Counterclaim
Plaintiff Sage Products, LLC*

2

25669520.1