# Exhibit D

**quinn emanuel** trial lawyers | new york

191 N. Wacker Drive, Suite 2700, Chicago, Illinois 60606 | TEL (312) 705-7400 FAX (312) 705-7401

WRITER'S DIRECT DIAL NO.
**(312) 705-7409**

WRITER'S EMAIL ADDRESS
**amandaantons@quinnemanuel.com**

July 9, 2020

<u>**VIA E-MAIL**</u>

Bryce R. Persichetti
McAndrews Held & Malloy
500 W Madison Street # 34,
Chicago, IL 60661
Telephone: (312) 775 800
E-mail: bpersichetti@mcandrews-ip.com

Re:   <u>PureWick Corporation v. Sage Products, LLC,</u> D. Del. 19-1508-MN

Dear Bryce:

I write to confirm our understandings of the parties' positions following our meet and confer on July 6 and July 9 regarding the deficiencies in Sage's responses to PureWick's discovery requests as outlined in our June 11 letter.

**Sage's Interrogatory Responses**

**PureWick Interrogatory No. 1**:  Interrogatory No. 1 asks Sage to identify on a monthly basis by customer "[f]or each month and year that the Accused Product has been sold or otherwise distributed by or for Defendant . . . the total number of units sold, gross revenues, net revenues, gross profits, net profits, and costs."  Sage responded that it "will produce documents reflecting cumulative sales data for the PrimaFit® product identified in Plaintiff's Amended Complaint, for the relevant time period at an appropriate time in this litigation."

During the meet and confer we explained Sage's response was improper in that: (1) Sage is refusing to produce documents prior to the date of the complaint until it decides PureWick has presented a *prima facie* case of evidence of patent marking; (2) Sage is limiting discovery to "cumulative sales data" as opposed to producing documents directed to the full scope of Interrogatory No. 1 (e.g., monthly gross and net revenues, profits and costs); (3) Sage is refusing to provide discovery on a customer basis; and (4) Sage is limiting its response to the specific versions of the Accused Products identified in the Complaint, excluding any discovery related to the sales of any other versions or variations of the Accused Products.

Bryce R. Persichetti
July 9, 2020
Page 2

With respect to Sage's refusal to produce discovery prior to the date of the complaint until it decides PureWick has presented *prima facie* evidence of patent marking, you did not identify any case law to support that position. We do not agree that Sage is entitled to withhold discovery until it unilaterally decides that PureWick has come forward with *prima facie* evidence. Moreover, even were PureWick not entitled to damages prior to August 2019, the information sought by Interrogatory No. 1 is relevant to other issues, including the date of first infringement and commercial success. In any event, we have supplemented PureWick's response to Sage's Interrogatory No. 7 to identify the dates on which marking began. Accordingly, please confirm by July 16 that Sage will be supplementing its response to PureWick's Interrogatory No. 1 to provide the requested information for each month and year that the Accused Products have been sold or otherwise distributed by or for Defendant.

With respect to Sage's position regarding limiting its responses to "cumulative sales data," you indicated that Sage would be producing discovery that includes, on a monthly basis, the financial information sought by Interrogatory No. 1, including the total number of units sold, gross revenues, net revenues, gross profits, net profits, and costs, to the extent that information is kept in the ordinary course of business.

With respect to Sage's refusal to provide the requested discovery on a customer basis, you indicated that you would follow-up to let us know if this information is available. Please let us know by July 16, whether Sage intends to withhold the requested discovery on a customer-basis.

With respect to Sage's limitation of its response to the specific Accused Products identified in the Complaint, which excludes any other versions or variations of those products, you represented that Sage would be producing development documents, and to the extent we identified any other versions of the Accused Products that have been sold by Sage, Sage would be willing to revisit its production of discovery related to the sales of such products.

**Interrogatory No. 2:** PureWick's Interrogatory No. 2 asks Sage to "describe in detail the facts and circumstances regarding Defendant's first awareness of each of the Patents-in-Suit and the applications that led to each of the Patents-in-Suit, including when Defendant first became aware, how Defendant first became aware, the identity of the individual(s) who first became aware," as well as "the actions, if any, taken by Defendant after becoming aware."

During the meet and confer, you represented that Sage's investigation is ongoing and it is not withholding any of the information sought by Interrogatory No. 2, including precise dates, how it became aware, the identity of the individuals who first became aware, or the actions taken, if any, after becoming aware of the Patents-in-Suit and applications that led to the Patents-in-Suit. Please let us know by July 16, when we can expect a supplemental response providing the information sought by this interrogatory.

**Interrogatory No. 5:** In Interrogatory No. 5, PureWick asks Sage to provide "the complete factual and legal bases for each of Defendant's affirmative defenses raised in its Answer to Plaintiff's Amended Complaint." In response, Sage lists its affirmative defenses but refuses to provide the

Bryce R. Persichetti
July 9, 2020
Page 3

factual and legal bases for such defenses because, according to Sage, PureWick's request is premature, and PureWick's interrogatory "contains multiple discrete parts, which should be counted as separate interrogatories."

During the meet and confer, you reiterated that Sage will not respond to Interrogatory No. 5 because it is: (1) premature; and (2) Interrogatory No. 5 should be propounded as separate interrogatories. With respect to any response being premature, you were unable to provide a certain date or stage of the case (e.g. prior to expert discovery) when Sage would be willing to provide the requested information.

With respect to your position that Interrogatory No. 5 should be propounded as separate interrogatories, we disagreed that this is a proper basis for Sage to refuse to answer. Moreover, you indicated that you would not agree to give PureWick additional interrogatories in order to separately address each of Sage's affirmative defenses. Accordingly, the parties appear to be at an impasse and we plan to seek assistance from the Court to compel Sage to respond to Interrogatory No. 5 as propounded, or grant PureWick additional interrogatories to seek the requested discovery for each affirmative defense.

**Interrogatory No. 6:** In Interrogatory No. 6, PureWick asks that Sage identify and describe in detail "any alleged non-infringing alternative that Defendant contends can be used as an alternative to each Patent-in-Suit." As part of its request, PureWick asks Sage for, among other things, the "(iv) costs associated with developing and/or implementing each alleged non-infringing alternative; and (v) steps and the time required to develop and/or implement each alleged non-infringing alternative."

During the meet and confer, you represented that Sage is not presently aware of any non-infringing alternatives but that Sage would supplement its response if it identified any. You also indicated that you did not presently anticipate withholding any of the information sought by Interrogatory No. 6, but if you do identify any non-infringing alternatives and have any issue with the scope of the Interrogatory, you would raise that with us at that time. Please let us know by July 16, when we can expect a supplemental response providing the information sought by this interrogatory, or a confirmation that Sage is not relying on the existence of any non-infringing alternatives.

**Sage's Responses to PureWick's Requests for Production**

**General Objection No. 5**: In General Objection No. 5, Sage objects to the definition of "Accused Product" as "vague, overly broad and unduly burdensome to the extent that it includes products other than Sage's PrimaFit® product identified in Plaintiff's Amended Complaint." Sage thus contended that it need not provide discovery on any product other than Accused Products, and Sage repeats this objection in its responses to numerous Requests, including Request Nos. 1-6, 8-16, 20, 44, 47, 49-55, 57-63, 65-72, and 74.

During the meet and confer, we explained that to the extent that Sage is withholding responsive documents concerning all versions and variations of the Accused Products, that is improper. You represented that Sage will be producing development documents, and that Sage is not refusing to

Bryce R. Persichetti
July 9, 2020
Page 4

produce discovery in response to these requests; thus, it is your position that there will not be an issue concerning the scope of these requests as discovery proceeds. The parties agreed to revisit this issue if there are deficiencies in Sage's document production or Sage believes it has a basis to withhold documents responsive to these requests.

**General Objection No. 17**: In its response, Sage contends that it "will not provide infringement-related or damages-related information from prior to August 2019 at least until Plaintiff produces *prima facie* evidence of patent marking of the 508 Patent and 376 Patent."

During the meet and confer, we explained that Sage's Objection No. 17 is improper, as it has no reason at this stage in the litigation to withhold damages-related information from prior to August 2019. As with the parties discussion related to Interrogatory No. 1, Sage continues to refuse to produce discovery prior to the date of the complaint until it decides PureWick has presented *prima facie* evidence of patent marking, and it is Sage's position that until a *prima facie* case has been made, the discovery is not relevant. Because we have supplemented PureWick's response to Sage Interrogatory No. 7, please confirm by July 16 that Sage is not withholding any documents based on General Objection No. 17.

**Requests for Sales-Related Information:** In Request Nos. 47, 57, 58, 65, 68, 69, and 70, PureWick asks for a variety of documents relating to specific sales, customer, and pricing data. For example, Request No. 47 asks that Sage produce "Documents sufficient to identify each customer of an Accused Product." Request No. 65 similarly requests "Documents sufficient to show, on a monthly basis by customer, Defendant's unit sales, gross revenues, net revenues, gross profits, net profits, and costs for the Accused products." And Request No. 70 asks for "[a]ll Documents and Things relating to data from third party providers regarding sales, prescriptions, or costs relating to the Accused Product and/or PureWick's Product."

With respect to Sage's responses to Request Nos. 47, 65, 68, and 69, in which Sage agreed to produce "cumulative sales data," you represented, as with Interrogatory No. 1, that Sage would be producing discovery that includes, on a monthly basis, the total number of units sold, gross revenues, net revenues, gross profits, net profits, and costs, to the extent that information is kept in the ordinary course of business or reasonably accessible to Sage. And with respect to the requested discovery on a customer basis, you indicated that you would follow-up with a response. Again, please let us know by July 16, whether Sage intends to withhold the requested discovery on a customer-basis.

With respect to Request No. 70, Sage has refused to produce any responsive documents "unless and until Plaintiff clarifies what is meant by 'data from third party providers regarding sales, prescriptions, or costs.'" In our June 11 letter, we explained that by "data from third party providers regarding sales, prescriptions, or costs," PureWick means any sales, prescriptions, or costs data that was provided to Sage by third-party providers, such as healthcare providers, hospitals, physicians, or health insurers. While we believe this is sufficiently clear and narrowly tailored, we agreed to suggest a further narrowing of the request. Accordingly, we propose that the request be limited to documents containing "summary data" from third party providers

Bryce R. Persichetti
July 9, 2020
Page 5

regarding sales, prescriptions or costs. Please confirm by July 16, that Sage will produce documents responsive to this request as narrowed.

**Requests for Market Related Information:** PureWick also propounded Requests (*see* Request Nos. 53, 66, 71, and 74) seeking documents related to marketing, demand for the Accused Product, financial projections, and market share projections.

During the meet and confer, you alleged that these requests are duplicative of other requests for which you had already agreed to provide discovery. We disagreed that the requests are duplicative. For example, in Request No. 66, PureWick requests "[a]ll Documents and Things relating to the market for the Accused Products, including competitive analyses, market projections and market projection models, projected market penetration and market share studies, market surveys, customer satisfaction surveys, industry reports, sales data, and Forecasts." We explained that the information sought by this request, as well as Request No. 74, is broader than, for example, requests seeking information limited to the Accused Products, in that it is seeking information related to the relevant market. We also indicated our position that even to the extent that the requests are duplicative, this does not provide a basis for Sage to refuse to produce responsive documents. With respect to Request Nos. 53, 66, 71 and 74, you indicated you would follow-up with Sage's position on producing documents within the full scope of the request. Please let us know by July 16, if Sage plans to produce documents responsive to the full scope of the request, or if it intends with withhold any responsive documents please identify the specific categories of documents it is refusing to produce.

**Other Miscellaneous Requests:**

**Request No. 16:** In Request No. 16, PureWick asks Sage to produce "[t]wo samples of each precursor or prototype of Defendant's Accused Product." In response, Sage agrees to produce "documents showing the development of the PrimaFit® product." During the meet and confer the parties agreed to work in good faith to provide each side with information regarding precursor or prior versions of their respective products. This may include the initial production of photographs followed by arrangements for inspection or production at a date when such inspection or production is both safe and feasible.

**Request Nos. 31–34, 39, 41, and 76–78:** Sage's responses to Request Nos. 31–34, 39, 41, and 76–78 are deficient because they are limited to only those documents that support its claims or defenses raised in this case, or on which it intends to rely. During the meet and confer, you purported to not understand how Sage could search for documents that do not support Sage's claims or defenses. We explained that it is improper for Sage to withhold any evidence in its possession that: (1) may refute its claims or defenses; or (2) is otherwise relevant, but on which Sage may not intend to rely. For example, with respect to Request No. 33, which seeks "[a]ll Documents and Things relating to any objective indicia of obviousness or nonobviousness of any claim of the Patents-in-Suit . . . .," it is improper for Sage to withhold any discovery that might refute Sage's presumed contention that the PureWick product, an embodiment of the claimed invention, is not a commercial success. Following our discussion, you represented that you were

Bryce R. Persichetti
July 9, 2020
Page 6

not withholding documents responsive to these requests except to the extent that they are subject to attorney-client privilege or attorney work product.

**Request No. 37:**  Request No. 37 asks Sage to produce "[a]ll Documents and Things relating to Defendant's knowledge or awareness of the Patents-in-Suit and/or any application(s) leading to the Patents-in-Suit."  During the meet and confer, you represented that Sage will produce documents responsive to the full scope of this request, including relating to knowledge or awareness of App. Nos. 12/840,475, 12/260,103, and 15/611,587, and Prov. Patent No. 62/082,279.

**Request No. 46:**  Request No. 46 asks Sage to produce "[a]ll Documents and Things relating to the level of ordinary skill in the art pertinent to any claim of the Patents-in-Suit."  During the meet and confer, you represented that Sage will produce anything on which Sage will rely in assessing level of ordinary skill in the art, and we agreed to revisit this issue to the extent further specific discovery on this point is needed.

Finally, at the conclusion of the meet and confer, we asked you to explain what dispute you believed the parties had with respect to Sage's Interrogatory No. 6, which you intended to raise with the Court at the now scheduled Aug. 4, 2020 hearing.  You indicated that your issue was that PureWick had not provided a date certain when it would supplement its response to Interrogatory No. 6.  We have now served our supplemental response to Interrogatory No. 6 and, therefore the issue you sought to raise with the Court regarding Interrogatory No. 6 has been resolved.

Regards,

*/s/* Amanda K. Antons

Amanda K. Antons