# Exhibit E



Bryce R. Persichetti
(T) 312 775 8000
bpersichetti@mcandrews-ip.com

July 16, 2020

**VIA EMAIL**

Amanda K. Antons
amandaantons@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive,
Suite 2700
Chicago, Illinois 60606

      **RE:** *PureWick Corporation v. Sage Products, LLC*, D. Del. 19-1508-MN

Dear Amanda:

    I write in response to your July 9 letter concerning the parties' meet and confer on July 6 and July 8. While Sage disagrees with some of PureWick's characterizations of the parties' discussion, we address some issues here so that we can hopefully resolve some of our disputes.

**1.  Sage's Interrogatory No. 6**

    As an initial matter, your July 9 letter stated that Sage's issue with PureWick's response to Sage's Interrogatory No. 6 is "resolved" now that PureWick has supplemented its response to Sage's Interrogatory No. 6. During the meet and confer, Sage represented that Sage's issue was mainly related to identifying a certain date when PureWick would provide a full response to Interrogatory No. 6, as PureWick did not appear to dispute the relevance of Interrogatory No. 6. Sage also represented that a response to the full scope of Interrogatory No. 6 would resolve the dispute. PureWick's supplemental response to Interrogatory No. 6, however, does not provide information responsive to the full scope of Interrogatory No. 6.

    Interrogatory No. 6 asks PureWick to: "[i]dentify each version or iteration of the PureWick Female External Catheter product and any other product (including iterations), combination of products, or system <u>ever manufactured, used, offered for sale or sold</u> by any party (whether licensed or unlicensed) which is covered by any claim of the Asserted Patents; <u>the dates when that product/product iteration, combination of products, or system was demonstrated, used, manufactured, offered for sale, or sold</u>; the party(ies) which manufactured and sold it; and, if applicable, how each product or system meets the limitation of the claim (i.e., prepare a claim chart)."



Amanda K. Antons
July 16, 2020
Page 2

PureWick's supplemental response identified three versions of the PureWick Female External Catheter allegedly sold as early as January 2016. However, PureWick's own discovery as well as other sources show that there are versions that were available at least as early as 2014. The response is deficient.

Accordingly, Sage maintains that PureWick's response to Sage's Interrogatory No. 6 is deficient. Sage will continue to seek assistance from the Court unless PureWick provides a complete response to Interrogatory No. 6.

## 2. PureWick's Interrogatories

### a. Interrogatory No. 1

PureWick's Interrogatory No. 1 asks Sage to "identify on a monthly basis by customer the total number of units sold, gross revenues, net revenues, gross profits, net profits, and costs" "for each month and year that the Accused Product has been sold or otherwise distributed by or for Defendant."

Sage objected to this interrogatory to the extent that PureWick seeks damages related information regarding any accused product before providing notice of the Patents-In-Suit. Your July 9 letter asked Sage to confirm whether Sage will provide the information requested by PureWick's Interrogatory No. 1 for the time period prior to the filing of the Complaint in view of PureWick's July 9, 2020 supplement to Sage's Interrogatory No. 7 related to marking. PureWick's supplemental response to Sage's Interrogatory No. 7 admitted that the PureWick Female External Catheter was not marked with the 376 patent until after the filing of the Complaint. PureWick's supplemental response also alleged that the "blue silicon shell version of the PureWick FEC has been marked with the '508 Patent continuously since that product was first sold in August 2016." PureWick cited a document with Bates No. PureWick_0017997 to support this allegation that its product was marked with the 508 patent, but PureWick has not yet produced a document with that bates number. Sage cannot fully assess PureWick's supplemental response to Sage's Interrogatory No. 7 until PureWick produces this document. Accordingly, please produce this document so that Sage can assess PureWick's response to Sage's Interrogatory No. 7 regarding marking. Sage will then confirm with PureWick whether Sage will provide the sales related information requested by PureWick's Interrogatory No. 1 for any time period prior to the filing of the Complaint.

With respect to PureWick's Interrogatory No. 1, Sage confirms that by agreeing to produce "cumulative sales data" for the Accused Products, Sage will produce, on a monthly basis, the total number of units sold, gross revenues, net revenues, gross profits,



Amanda K. Antons
July 16, 2020
Page 3

net profits, and costs, to the extent that information is kept in the ordinary course of business. Sage also confirms that it will produce cumulative sales data for the Accused Products on a customer-basis, to the extent that information is kept in the ordinary course of business.

    **b. Interrogatory No. 2**

Your July 9 letter requested that Sage advise PureWick when PureWick can expect a supplemental response to PureWick's Interrogatory No. 2. Sage's investigation is ongoing, and Sage will supplement its response to PureWick's Interrogatory No. 2 if and when it acquires additional responsive information.

    **c. Interrogatory No. 5**

Sage understands that PureWick intends to seek the Court's guidance regarding Interrogatory No. 5. Sage maintains its objections that Interrogatory No. 5 contains multiple discrete parts, which should be counted as separate interrogatories and is premature. Sage is willing to consider its objections, however, if PureWick is willing to narrow the information it is seeking in Interrogatory No. 5.

    **d. Interrogatory No. 6**

Your July 9 letter mischaracterizes Sage's statements during the meet and confer with regard to PureWick's Interrogatory No. 6. Rather than representing that "Sage is not presently aware of any non-infringing alternatives but that Sage would supplement its response if it identified any," during the meet and confer Sage represented that its investigation with respect to non-infringing alternatives is ongoing and that Sage will supplement its response to Interrogatory No. 6 as necessary after further discovery has been conducted including claim construction and expert discovery.

Your July 9 letter asked Sage to advise PureWick by July 16 as to when PureWick "can expect a supplemental response providing the information sought by this interrogatory, or a confirmation that Sage is not relying on the existence of any non-infringing alternatives." As Sage stated in its response to Interrogatory No. 6, Sage's investigation is ongoing, and Sage intends to supplement its response to this interrogatory as necessary after further discovery has been conducted, including a determination by the Court on claim construction issues.



Amanda K. Antons
July 16, 2020
Page 4

### 3. Requests for Production

#### a. General Objection 17

As with PureWick's Interrogatory No. 1, your letter of July 9 asked Sage to confirm that it is not withholding any documents based on General Objection No. 17 in view of PureWick's supplement to Sage's Interrogatory No. 7 related to marking. As explained above, Sage needs PureWick to produce the document cited in PureWick's supplemental response to Sage's Interrogatory No. 7 before Sage can assess whether to maintain this objection.

#### b. Sales Related Information (Nos. 47, 57, 58, 65, 68, 69, and 70)

Your July 9 letter asked Sage to confirm whether Sage will produce the requested sales related discovery on a customer basis. As Sage stated above with respect to PureWick's Interrogatory No. 1, Sage will produce cumulative sales data for the Accused Products (e.g., the total number of units sold, gross revenues, net revenues, gross profits, net profits, and costs) on a customer basis to the extent that information is kept in the ordinary course of business.

With respect to Request No. 70, your July 9 letter "clarified" that PureWick is seeking "documents containing 'summary data' provided to Sage from third party providers, such as healthcare providers, hospitals, physicians, or health insurers, regarding sales, prescriptions, or costs." Sage still is unable to understand this request, and needs additional clarification before it can respond. Sage does not understand, for example, what type of documents healthcare providers, hospitals, physicians, or health insurers would provide to Sage that include "summary data" regarding sales, prescriptions, or costs.

#### c. Market Related Information (Nos. 53, 66, 71, and 74)

Your July 9 letter asked Sage to confirm whether it will produce documents responsive to Request Nos. 53, 66, 71, and 74.

Request No. 53 seeks "Documents and Things relating to any marketing, distribution, sales, or offers for sale of the Accused Product by Defendant, including any financial projections, market share projections, marketing plans, business plans or strategic plans concerning the Accused Product." Sage already agreed to produce "relevant marketing and business plans for the PrimaFit® product located after a reasonable search . . . to the extent any exist" in response to Request No. 52. Sage confirms that it will also produce relevant "strategic plans" for the Accused Product located



Amanda K. Antons
July 16, 2020
Page 5

after a reasonable search to the extent any exist. Sage also confirms that it will produce relevant, non-privileged, representative marketing materials for the Accused Product including financial projections and market share projections located after a reasonable search to the extent any exist.

Request No. 66 seeks "Documents and Things relating to the market for the Accused Products, including competitive analyses, market projections and market projection models, projected market penetration and market share studies, market surveys, customer satisfaction surveys, industry reports, sales data, and forecasts." During the meet and confer, PureWick indicated that by this request, it is seeking documents related to the market "globally," meaning not limited to the PrimaFit® and PureWick products. Sage requires additional clarification with regard to the definition of the "global market" in order to respond to this request. Does PureWick, for example, define the "global market" as all urinary catheter products including internal and external catheters? Or, for example, does PureWick define the "global market" as external urine catheter products?

Request No. 71 seeks "Documents and Things relating to Defendant's actual or projected share of the market in which the Accused Product is sold." PureWick has not identified any issue with Sage's response to Request No. 71, which is that "Sage will produce documents reflecting cumulative sales data for the PrimaFit® product for the relevant time period at an appropriate time in discovery, as well as non-privileged, representative, market share information for the PrimaFit® product, located after a reasonable search to the extent any exist." Sage therefore maintains its response to Request No. 71.

Request No. 74 seeks "Documents and Things relating to the marketing and sale of the Accused Product, including relating to the use, importance, or demand for the Accused Product." Sage incorporates its response to Request No. 12, and states that it will produce representative marketing materials for the PrimaFit® product located after a reasonable search.

   d.  **Request Nos. 31–34, 39, 41, and 76–78**

With respect to Request Nos. 31-34, 39, 41, and 76-78, Sage explained during the meet and confer that given the phrasing of these requests, Sage can only feasibly search for and produce documents on which Sage intends to rely that are responsive to these requests. For example, Request No. 31 seeks "[a]ll Documents and Things supporting, refuting or otherwise relating to any contention by Defendant that the Patents-in-Suit are invalid, including without limitation all Documents and Things that Defendant contends



Amanda K. Antons
July 16, 2020
Page 6

are Prior Art to the Patents-in-Suit." This is clearly overbroad and Sage's response states that it will produce relevant prior art and documents supporting Sage's invalidity defenses. Sage cannot feasibly search for all documents, for example, that could theoretically "refute" its contentions that the Patents-In-Suit are invalid. It is unclear what exactly PureWick believes Sage should be looking for.

As Sage explained during the meet and confer, Sage is not specifically withholding documents responsive to these requests based on these objections, but it cannot feasibly search for documents that refute its contentions. Moreover, any such documents would seem to be in the possession of Plaintiff given Plaintiff's response to Sage's Answer and Counterclaims. Again, with respect to these Requests, PureWick needs to identify which types of specific documents that it actually seeks. Until PureWick does so, Sage can only produce the documents responsive to these requests upon which it intends to rely.

 e. **Request No. 37**

Sage confirms that it will produce relevant, representative, non-privileged documents that mention App. Nos. 12/840,475, 15/260,103, and 15/611,587, and Prov. Patent No. 62/082,279 located after a reasonable search to the extent any exist.

 f. **Request No. 46**

Sage confirms that at the appropriate time it will produce any documents on which Sage will rely to establish the level of ordinary skill in the art.

Sincerely,

*/s/ Bryce R. Persichetti*

Bryce R. Persichetti