IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PUREWICK CORPORATION,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>SAGE PRODUCTS, LLC,<br><br>Defendant/Counterclaim Plaintiff. | C.A. No. 19-1508-MN |

**LETTER TO THE HONORABLE MARYELLEN NOREIKA**
**FROM ANNE SHEA GAZA REGARDING DISCOVERY DISPUTE**


Of Counsel:
Robert A. Surrette
Sandra A. Frantzen
Christopher M. Scharff
Bryce R. Persichetti
MCANDREWS, HELD & MALLOY, LTD
500 West Madison Street
Chicago, IL 60661
(312) 775-8000
bsurrette@mcandrews-ip.com
sfrantzen@mcandrews-ip.com
cscharff@mcandrews-ip.com
bpersichetti@mcandrews-ip.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Defendant and Counterclaim Plaintiff Sage Products, LLC*


Dated: July 29, 2020

Dear Judge Noreika,

Sage respectfully seeks an Order compelling PureWick to (1) provide immediately a complete response to Sage's Interrogatory No. 6 regarding PureWick's products (including prior art products), and (2) immediately search for and produce prior art documents responsive to Sage's Request for Production Nos. 9, 15, 16, and 22 in PureWick's possession.

## I. PureWick Should Be Compelled to Fully Respond to Interrogatory No. 6

Interrogatory No. 6 asks PureWick to identify "each version or iteration of the PureWick Female External Catheter product and any other product . . . ever manufactured, used, offered for sale or sold . . . which is covered by any claim of the Asserted Patents; <u>the dates when that product/product iteration . . . was demonstrated, used, manufactured, offered for sale, or sold</u>; the party(ies) which manufactured and sold it; and, if applicable, how each product or system meets the limitation of the claim (i.e., prepare a claim chart)." (Ex. 1 (emphasis added).) PureWick does not dispute that this information is relevant to numerous issues, including invalidity and damages. *See McKesson Info. Sols. LLC v. Epic Sys. Corp.*, 242 F.R.D. 689, 692-93 (N.D. Ga. 2007) (finding information related to sales or offers to sell products covered by the asserted patent relevant to invalidity and damages); *Regal Elecs., Inc. v. Pulse Eng'g, Inc.*, No. 5:03CV1296JWRS, 2005 WL 3078983, at *3 (N.D. Cal. Nov. 16, 2005) (compelling production of "all prior art known to [the patentee] relating to the subject matter disclosed or claimed in the [asserted] patent or any U.S. or foreign patents or patent applications corresponding in whole or in part to such patent.").

Based on PureWick's own discovery responses, it is evident that versions of the PureWick Female External Catheter were publicly disclosed and/or on sale before the presumed priority date of two asserted patents (June 1, 2017 and August 29, 2016). PureWick's response to Sage's Interrogatory No. 9, for example, states that a version of the Female External Catheter was publicly disclosed <u>at least as early as 2014</u>. (*See* Ex. 2, p. 22 "There has been significant industry praise for the technology of the patents-in-suit by others. For example, Purewick was awarded the Second Runner-Up Prize in the 2014 Dare-to-Dream MedTech Design Challenge, the Winner of the 2015 Most Innovative New Product Award . . . .") Thus, it appears the PureWick Female External Catheter was publicly disclosed and/or on sale before the priority dates of the 989 and 376 patents. Other public information supports this conclusion. *See infra.*

Sage has repeatedly advised PureWick of the urgency in receiving the information that Interrogatory No. 6 requests. (*See* Ex. 5, p. 3; Ex. 6, p. 3; Ex. 7, p. 2.) Yet, while PureWick acknowledges its relevance and has supplemented its response, PureWick has still neither provided a complete response to Interrogatory No. 6 nor even identified all the versions of its Female External Catheter. Thus, the Court should compel PureWick to provide a full response.

Sage served this interrogatory on February 21, 2020. PureWick initially responded that it would produce documents pursuant to Rule 33(d). (Ex. 2, p. 17.) On April 10, Sage explained to PureWick that a response pursuant to Rule 33(d) is deficient because PureWick needs to identify the many versions of the products, when they were available (including if they were sold prior to the priority dates), and whether they were covered by the patents. (Ex. 5, p. 3); *see Blast Motion, Inc. v. Zepp Labs, Inc.*, No. 15-cv-00700-JLS, 2016 WL 5107677, at *1-4 (S.D. Cal. Mar. 2, 2016); *Aristocrat v. Int'l Game Tech.*, No. C 06-03717 RMW (RS), 2009 U.S. Dist. LEXIS 105294, at *7 (N.D. Cal. Oct. 30, 2009) ("[T]he patent holder . . . is in the position to identify which of its own

products make use of the patented technology. Therefore, IGT's motion to compel is granted."). Sage explained that it urgently needed this information to proceed with its case, and especially to prepare its initial invalidity contentions, which were due on May 29, 2020. (Ex. 5, pp. 1, 3.)

PureWick agreed to identify each version or iteration of the PureWick Female External Catheter and provide the factual basis for why its products are covered by any claim of the Asserted Patents. (Ex. 6, p. 3; Ex. 7 p. 2.) The response did not come. Sage then reiterated several times, including during a meet and confer on June 2, that it urgently needed this information, particularly to prepare its invalidity case (additional contentions are due on August 21 (D.I. 56)). (Ex. 7 p. 2.) PureWick continued to delay, responding that it was still collecting information on the topic. (*Id*.) On June 19, Sage advised PureWick that it would seek the Court's assistance to obtain a complete response unless PureWick provided the requested information by June 24. (*Id*.) PureWick failed to provide the information. Therefore, on July 1, Sage's counsel sought the Court's assistance.

Then, on July 9, PureWick finally served an incomplete supplemental response to Interrogatory No. 6 that identified three versions of the PureWick Female External Catheter allegedly sold as early as January 2016. (Ex. 2[1], pp. 17-18.) As explained above, however, PureWick's own discovery responses state that a version of the Female External Catheter was publicly disclosed <u>at least as early as 2014</u>. Additionally, publicly available sources show several more versions of the PureWick Female External Catheter that were not identified in PureWick's latest response. (*See* Appendix A.) Accordingly, PureWick's response remains deficient.

It has been over five months since Sage requested this critical information about PureWick's own products. No one disputes the relevance of the interrogatory. Yet, despite Sage's repeated requests, PureWick has yet to provide a complete response to Interrogatory No. 6 or even a time frame as to when Sage can expect to receive the requested information. Instead, Sage continues to receive partial responses. PureWick's failure to provide this vital information about its own products prejudices Sage's ability to prepare its case. Sage was forced to prepare its initial invalidity contentions without this information, which appears to include invalidating disclosures or sales. PureWick's failure to provide this information also limits Sage's ability to conduct additional discovery, including third party discovery. The urgency in receiving this information is apparent given the approaching deadlines (supplemental invalidity contentions are due in a month and the substantial completion of document production is just over four months away). Thus, the Court should compel PureWick to respond immediately and completely to Interrogatory No. 6.

## II. PureWick Should Be Compelled to Search For and Produce Prior Art Documents Responsive to Request Nos. 9, 15, 16, and 22

Sage served a number of requests for production related to prior art, including Request Nos. 9, 15, 16, and 22, which generally seek prior art relating to the Patents-In-Suit and Related Patents and Applications including, e.g., prior art relating to "the use of fluid permeable supports, vacuum, fluid permeable membranes, wicking material, adhesive tape, fabric sleeves, ribbed knit fabric, or cylindrical supports or casings in an external urine management system prior to June 1, 2017." (Ex. 3.) The parties have conducted numerous discussions related to Sage's prior art requests, during which Sage has repeatedly advised PureWick that Sage urgently needs prior art in PureWick's possession to prepare its invalidity case. (Ex. 6, pp. 8-11; Ex. 7, pp. 3-5.) PureWick,

[1] To avoid excess pages, claim charts were not included in Ex. 2.

meanwhile, has frequently changed its position regarding the scope of documents it will search for and produce in response to these requests.

While it initially refused to search for prior art responsive to many of Sage's requests (including Request Nos. 15, 16, and 22), PureWick initially agreed to produce "prior art to the Patents-in-Suit and non-privileged documents referring to prior art to the Patents-in-Suit" in response to Request No. 9. (Ex. 4, p. 16.) Then, after discussions between the parties, PureWick recanted its response and stated for the first time on July 15 that it would only produce prior art that was included in the prosecution files of the Patents-In-Suit or Related Patents and Applications.[2] (Ex. 8, p. 2.) During the parties' subsequent meet and confer on July 23, PureWick represented that the reason for its change in position was that it is too burdensome to search for prior art in its possession that was not cited to the Patent Office. Sage advised PureWick that given the importance of prior art to the needs of this patent case (and particularly the high relevance of prior art that was not provided to the Patent Office), a vague objection based on burden is not appropriate. Sage began preparing this motion to compel.

Late yesterday, PureWick yet again changed its position, stating that now "PureWick is conducting a reasonable search of sources that are likely to contain responsive and relevant documents and to the extent relevant prior art is located PureWick will produce it."[3] (Ex. 9, p. 1.) PureWick's latest response appears to suggest that it is now willing to provide the documents requested in Request Nos. 9, 15, 16, and 22 (along with the other agreed-upon documents, see n.2).

Given PureWick's frequently changing positions and the continued delay, the Court should compel PureWick to search for and produce prior art in its possession, including prior art that was not cited to the Patent Office to the extent that remains an issue, in response to Request Nos. 9, 15, 16, and 22. Indeed, prior art not cited to the Patent Office is sometimes the most highly relevant prior art. And Sage should be able to evaluate prior art in PureWick's possession that PureWick chose not to provide to the Patent Office. *See Lucas-Milhaupt, Inc. v. Bellman-Melcor, LLC*, No. 11 C 7557, 2012 WL 10261956, at *1-3 (N.D. Ill. May 15, 2012) (compelling production of additional prior art because "Defendant need not take Plaintiff's word" that it fully disclosed all relevant prior art during prosecution); *Regal*, 2005 WL 3078983, at *3.

---

[2] After Sage sought the Court's assistance, PureWick did agree to produce prior art in response to several other Requests for Production including: the prosecution files for the Patents-In-Suit and Related Patents and Applications including foreign patents and applications (Nos. 4 and 5); documents that were considered, studied, or referred to during prosecution of the Patents-In-Suit or Related Patents and Applications (No. 6); iterations of PureWick's website from prior to June 1, 2017 (No. 12); documents concerning specific prior art products identified by Sage (No. 17); and prior art identified by C.R. Bard or Becton Dickinson in connection with the diligence and acquisition of PureWick. (No. 41). (Ex. 8.) As mentioned above, however, in its July 15 letter, PureWick indicated that it refused to search for or produce any other prior art in its possession that is not in the prosecution files of the Patents-In-Suit and Related Patents and Applications, which appears to relate to Request Nos. 9, 15, 16, and 22. (*Id.*)

[3] PureWick raised an alleged concern that Sage's requests are overbroad because they encompass art relating to "indwelling catheters" (Ex. 9, pp. 1-2). However, Sage's requests are directed to the Patents-In-Suit and "external" urine management systems.

Respectfully,

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)

cc: All Counsel of Record (via Electronic Mail)

# APPENDIX A

**Images from the internet of PureWick versions of catheters*:**



* Notably, the sixth device from the left is labeled "2013-2014."

**The only catheters identified in PureWick's Response to Interrogatory No. 6 (Ex. 2) (including images from the two documents referenced in the Interrogatory response):**



| "Brown Tape, Vinyl Reservoir" (PureWick_0014538-39) | "Brown/Blue Tape, Silicon Reservoir" | "Blue Silicon Shell" (PureWick_0014361) |
| --- | --- | --- |
| | No document identified | |