

**YOUNG CONAWAY**

WILMINGTON
RODNEY SQUARE

**Anne Shea Gaza**
P 302.571.6727
agaza@ycst.com

March 29, 2021

The Honorable Sherry R. Fallon
U.S. District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re: *PureWick Corporation v. Sage Products, LLC.*, C.A. No. 19-1508-MN

Dear Judge Fallon:

This is a patent infringement case in which PureWick asserts that Sage's urine collection devices infringe four PureWick patents. Sage asserts the patents are not infringed and are invalid, among other things. Sage respectfully seeks an order compelling PureWick to: (1) narrow its asserted claims in compliance with the Court's discovery orders (D.I. 72 at 28, D.I. 84, D.I. 89 (referencing D.I. 87-1 at ¶1)); and (2) provide a complete response to Sage Interrogatory Nos. 5, 6, and 15 (Exs. 1-3), which request factual information about PureWick's prior art products.[1] A proposed Order is attached.

**Issue 1: PureWick Should Narrow Its Asserted Claims As Ordered**

On October 5, 2020, PureWick filed a motion seeking to require Sage to limit the number of its invalidity references even though almost no discovery had occurred in the case. (D.I. 82.) After Sage explained that the number of invalidating references was dictated by PureWick's excess number of asserted infringement claims (D.I. 83 at 3), the Court denied PureWick's request and ordered the parties to confer about how the case could be narrowed on both sides. (D.I. 84.) After additional briefing (D.I. 87-88), the Court ordered (a) PureWick to withdraw five of 37 asserted claims by November 24 and (b) Sage to narrow its invalidity references from over 200 references to 35. *Id.* (D.I. 89 (referencing D.I. 87-1 at ¶1).) Sage abided by the order, but PureWick did not.

On November 24, PureWick "withdrew" five claims: Claims 7, 8, and 14 of the 376 patent, Claim 4 of the 989 patent; and Claim 10 of the 407 patent. (Ex. 4.) However, PureWick's "withdrawal" of these claims did not narrow the case. That is because PureWick selected the "withdrawn" claims "in contravention of the spirit of the Court's order reducing the number of claims." *See LG Display Co. v. AU Optronics Corp.*, 686 F. Supp. 2d 429, 434 n.1 (D. Del. 2010) (assertion of dependent claims violated the spirit of Court's narrowing order). For example, PureWick "withdrew" Claim 4 of the 989 patent—yet PureWick still asserted Claim 5, which depends on Claim 4. (Ex. A.) Accordingly, the parties still have to prove infringement and invalidity of "withdrawn" Claim 4. This is improper. *See Sherwin-Williams Co. v. PPG Indus., Inc.*, No. 2:17-CV-01023-JFC, 2018 WL 6732883, at *2 (W.D. Pa. Nov. 14, 2018) ("by the assertion of Claim 7, an expert and/or the Court will need to interpret the substance of Claims 1 and 5 in order to determine whether the dependent Claim 7 is either infringed and/or valid").

---

[1] Sage notes that its final invalidity contentions are currently due on April 5, 2021, though Sage has moved to stay the proceedings pending IPR as they relate to the 508 patent. (D.I. 56 at 3.)

Similarly, while PureWick "withdrew" Claims 7 and 8 of the 376 Patent (a device patent), which generally recite vacuum coupled to the claimed device, it did not withdraw the corresponding method claims, e.g., Claims 2 and 3 of the 989 Patent despite the almost identical claim scope. (*Compare* Ex. A and Ex. B) "Withdrawing" device claims while continuing to assert the method claims, again, did not meaningfully narrow the issues in the case or eliminate any burden on Sage for its invalidity assertions.

In contrast, Sage narrowed its asserted prior art references from over 200 to 33, which was difficult given the early stage of litigation at that time, and provided obviousness combinations of references for the asserted claims. (*See, e.g.*, Ex. 5 at 292-294.) Sage was forced to account for PureWick's overbroad infringement theories in those limited contentions, *see* D.I. 83 (p. 3 and Ex. 4 at 2). And PureWick compounded this problem by gaming the system by "withdrawing" claims that result in no withdrawal at all in contravention of the spirit of the narrowing order. Accordingly, Sage requests that PureWick withdraw (1) Claims 2, 3 and 5 of the 989 patent; or (2) three additional claims to comply with "the spirit of the Court's order reducing the number of claims."

**Issue 2: PureWick Should Be Compelled to Completely Answer Interrogatory Nos. 6 and 15 Relating To PureWick's Prior Art Devices**

One of the main pieces of prior art in the case is PureWick's own prior art ("the PureWick Prior Art Devices"). (Ex. 5 at 202-204; Ex. 8 at 55-60.) These are devices that PureWick demonstrated and sold publicly long before the effective filing dates of the 376 and 989 patents-in-suit. (*Id.*) Importantly, Sage asserts, and the Patent Office found, that the effective filing date of the asserted claims of the 989 and 376 patents is no earlier than <u>August 29, 2016</u>. (Ex. 5 at 88-89; Ex. 6 at PW1162.) And there is no dispute that PureWick publicly demonstrated and sold its products more than a year before that date, which creates an invalidity issue. For over a year, Sage has been seeking information about PureWick's prior art products. (*See, e.g.*, D.I. 65.) Yet, at every turn, PureWick has resisted providing information about its own public disclosures before the August 2015 bar date. PureWick's prior art devices are clearly relevant to Sage's anticipation and obviousness defenses. *See, e.g., Dippin Dots, infra.* They are also relevant to damages as potential acceptable non-infringing alternatives. *See, e.g.*, Ex. 8 at 83-84; *Rite Hite, infra*.

***Interrogatory No. 6***, served over a year ago, asked PureWick to identify each "iteration of the PureWick Female External Catheter product…; the dates when that product …was demonstrated, used, manufactured, offered for sale, or sold; …and, if applicable, how each product or system meets the limitation of the claim." (Ex. 1 at 8.) PureWick initially provided no answer and then supplemented to only identify products sold after the bar date. (Ex. 2 at 19, 20-21.) Sage was forced to seek the Court's assistance to compel a response, explaining how PureWick provided only *some* information on products that post-dated the bar date, but did not provide full information regarding earlier products despite clear public information stating that such products existed. (D.I. 65 at 1-2 and App. A; D.I. 72 at 26:14-27:18.) On August 4, <u>the Court ordered PureWick to respond fully to Interrogatory No. 6</u> and identify, *inter alia*, any PureWick female external catheter product used, offered for sale, sold, or demonstrated along with corresponding dates. (D.I. 72 at 28.)

Weeks later, PureWick served a supplement identifying several prior art devices that were disclosed in 2013, 2014, and 2015. (Ex. 2 at 21-23.) However, despite the fact that many of the

product images look identical to patent images, PureWick's supplemental response did not identify whether many of the newly-identified products demonstrated prior to the priority date were covered by the patents. (*Id*.) Further, PureWick omitted several other products disclosed prior to the critical date, including a July 2015 sale of its product of which Sage became aware. (*See, e.g.*, Ex. 8 at 59-60; Ex. 9 at 71-76.)[2] PureWick also still failed to identify the product manufacturer.

Sage notified PureWick of the missing sales information and again asked PureWick to supplement and identify all the relevant information. (Ex. 7.) PureWick recently supplemented again, stating that a "sale of a PureWick device was made to one individual on July 26, 2015", but claimed that it "has been unable to determine which version of the PureWick device was sold on that date." (Ex. 2 at 24.) This was surprising given that this sale was purportedly PureWick's first sale and is key information given the August 2015 bar date. PureWick also finally revealed that a product disclosed in 2014/2015 was covered by the 989 and 376 patents. (*Id*. at 23) However, PureWick failed to explain whether many other products disclosed before the bar date were covered or provide the requested details regarding the disclosures. (*Id*. at 23-24.) A complete and accurate response to Interrogatory No. 6 is necessary and has already been ordered by the Court.

Moreover, given PureWick's evolving responses and failure to identify whether its products were covered by the patents-in-suit, in October 2020, Sage served **Interrogatory No. 15,** which asked about products that were not identified as covered by the patents in Interrog. No. 6:

> For each version…of the PureWick Female External Catheter product…identified in response to Sage's Interrogatory No. 6 that were not identified as covered by…the Asserted Patents…, describe the features of the version or iteration and, on a claim-by-claim basis, identify each element…that PureWick contends is missing or absent from each such version or iteration, …. (Ex. 3 at 3.)

This interrogatory is not unusual. Courts routinely compel patentees to answer interrogatories requesting the patentee to identify whether its products are covered by the patents and which elements are missing from the prior art. For example, in *Quantum Loyalty Sys. v. TPG Rewards*, No. 09-CV-022-SLR/MPT, 2012 WL 726842, at *2-3 (D. Del. Mar. 6, 2012), the court compelled the patentee to provide a claim chart and explain why alleged prior art products did not meet the asserted claim. Similarly, in *Gardner v. Toyota Motor Corp.*, No. C08-0632-RAJ, 2009 WL 8732016, at *1 (W.D. Wash. May 6, 2009), the court ordered the patentee to respond to an interrogatory asking: "[f]or each…prior art references, identify each and every [claim] limitation…that you contend is not disclosed in the reference and explain why you believe each such limitation is missing…." *See also Best Medical Int'l Inc. v. Varian Medical Sys.*, No. 18-1599-MN, Tr. At 12:17-13:8 (D. Del.) (D.I. 94 at Ex. 5 (compelling patentee to identify missing claim elements in prior art). And in *Aristocrat Techs. v. Int'l Game Tech.*, No. 06–CV–03717 RMW (RS), 2009 WL 3573327, *2 (N.D. Cal. 2009), the court ordered the patentee to answer an interrogatory asking it to "explain fully whether" ten of its own products "do or do not practice, or are or are not capable of practicing, any method claimed in the Asserted Patents."

---

[2] Indeed, in the last few days, Sage learned of more missing information during a deposition of a PureWick inventor (Ex. 9) as well as an untimely production of thousands of pages of documents from two of the named inventors. PureWick still has not produced documents from one inventor.

As demonstrated by these numerous cases, Interrogatory No. 15 clearly seeks relevant information. If an element is missing from a publicly-disclosed PureWick prior art product, the claims could have been obvious in view of that product. *See Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1344 (Fed. Cir. 2007) (asserted claims were obvious in view of on-sale earlier version of patentee's product). Moreover, to the extent a prior art product is not covered by the asserted claims, it is relevant to damages as a potentially acceptable non-infringing alternative as Sage has already alleged, *see, e.g.*, Ex. 8 at 83-84, which would serve as a limitation on damages. *See Rite-Hite Corp. v. Kelly Co.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995). Yet, despite the clear relevance of Interrogatory No. 15 to both invalidity and damages, PureWick responded that "it has not undertaken the analysis or formed the contentions called for by this Interrogatory and, therefore, has no information responsive to this interrogatory." (Ex. 3 at 4.)[3]

In Sage's original motion on this issue, the Court stated that "if you [Sage] come forward with assertions and you say all of these elements are met [by the PureWick prior art devices], then I would make them [PureWick] tell me why they disagree." (D.I. 99 at 8:18-20.) Sage thus supplemented its invalidity contentions and interrogatory responses accordingly to identify specifically which PureWick prior art products it alleges anticipate the asserted claims. (*See, e.g.*, Ex. 5 at 202-204, 106-122.) Sage specifically identified each claim element that the PureWick prior art products satisfied in the claim charts in its invalidity contentions. *Id.* (highlighted). Sage also provided a lengthy description of the devices insofar as Sage had that information (*id.* at 202-205) as did Sage's interrogatory responses (Ex. 8 at 55-60). Notably, these are products that PureWick itself asserts are covered by its patents (when sold after the bar date). Sage further identified the products as non-infringing alternatives to the extent not covered. (*Id.* at 83-84.) Despite Sage's supplement and the Court's previous directive, however, PureWick still refuses to answer Interrog. No. 15 as it relates to its prior art products. (Ex. 3 at 4.)

**Issue 3: PureWick Should Be Compelled to Completely Respond to Interrogatory No. 5**

*Interrogatory No. 5* asks PureWick to "identify the date when the claimed subject matter was first disclosed . . . and the dates when the claimed subject matter was first on sale, offered for sale, and in public use, including the circumstances surrounding such disclosure, sale, offer for sale, and use . . . ." (Ex. 1 at 7-8.) This is a standard interrogatory in a patent case. For over a year, PureWick provided no response other than citing Rule 33(d) (without identifying documents). (Ex. 2 at 17.) In February 2021, PureWick finally supplemented. However, its belated response is vague and incomplete. For example, with regard to the 989 and 376 patents, PureWick stated that a brown tape version "which embodies the inventions claimed in the '376 and '989 patents . . . was offered for sale to Tri-City Hospital in late 2015, and sold to and in public use . . . beginning in January 2016." (Ex. 2 at 18.) This response is exceptionally vague, especially considering the importance of exact dates in "late 2015" considering the August 2015 bar date. Further, PureWick's response completely ignores the July 2015 "sale of a PureWick device" that PureWick now admits occurred in its response to Interrogatory No. 6. (Ex. 2 at 24.) Similarly, with regard to the 508 patent, PureWick asserts that the product was shown to a PureWick employee but does not explain the circumstances regarding any other initial testing or when it was first on sale, offered for sale, or in public use. Accordingly, PureWick should be compelled to answer Interrogatory No. 5 completely.

---

[3] PureWick also failed to provide any reason why the PureWick prior art devices were not invalidating in response to Sage Interrogatory No. 17. (Ex. 10 at 3.)

        Respectfully,

        */s/ Anne Shea Gaza*

        Anne Shea Gaza (No. 4093)

Enclosures (Exhibits A-C, 1-7, & 10, and Proposed Order enclosed; Exhibits 8-9 filed separately under seal)

cc:   All Counsel of Record (via E-Mail)