IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PUREWICK CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | **Redacted- Public Version** |
| | ) | |
| v. | ) | C.A. No. 19-1508-MN |
| | ) | |
| SAGE PRODUCTS, LLC, | ) | ███████████████ |
| | ) | ███████████████ |
| Defendant. | ) | |

## LETTER TO THE HONORABLE SHERRY R. FALLON
## FROM JOHN W. SHAW

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
Steven C. Cherny
Brian P Biddinger
Matthew A. Traupman
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
(212) 849-7000

Amanda K. Antons
Athena Dalton
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400

Dated: April 1, 2021



John W. Shaw
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com

April 1, 2021



**BY CM/ECF & HAND DELIVERY**
The Honorable Sherry R. Fallon
United States District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:    *PureWick Corp. v. Sage Products LLC*, C.A. No. 19-1508-MN

Dear Judge Fallon,

This responds to Sage's letter (D.I. 146) regarding certain discovery disputes. Sage seeks to compel PureWick to further narrow its number of asserted claims. But PureWick already reduced the number of asserted claims to 32 on November 25th when it complied with the Court's order. D.I. 146, Ex. 4. Sage also asks the Court to compel "complete" responses to Sage's Interrogatory Nos. 5, 6, and 15, but again, PureWick already has done that. PureWick has answered, and, when necessary, supplemented its answers, to provide Sage with the responsive information that PureWick has in its possession. For those reasons, discussed below, the Court should deny Sage's requests.

**Issue 1: PureWick Has Already Narrowed the Asserted Claims Pursuant to the Court's Order**

On October 28, 2020, the Court adopted PureWick's proposal for limiting the number of asserted claims and prior art references. D.I. 89. In relevant part, that proposal stated: "[o]n or before November 24, 2020, Plaintiff shall narrow the number of asserted claims to no more than 32 and shall identify those claims to Defendant. Plaintiff may select these claims from any of the asserted patents and there is no per-patent limit." D.I. 87-1 ¶ 1. On November 24th, PureWick did exactly that. It withdrew Claims 7, 8, and 14 of the '376 patent, Claim 4 of the '989 patent, and Claim 10 of the '407 patent, such that the total number of asserted claims in the case was reduced to 32. PureWick's proposal, which the Court adopted, did not prohibit PureWick from asserting dependent claims or claims that were "almost identical" to withdrawn claims, and Sage never asked the Court to impose such a requirement. *See* D.I. 88-1.[1] The Court's Order simply required PureWick to reduce the number of asserted claims to 32, and PureWick complied.

Sage, however, now contends that PureWick's selection of 32 claims was in "'contravention of the spirit of the Court's order'" because it did not "narrow the case."[2] D.I. 146 at 1 (citation omitted). Sage, however, imports that alleged "spirit" from dicta in a separate case with a separate claim narrowing order. Indeed, the case to which Sage cites, *LG Display Co. v. AU Optronics Corp.*,

---

[1] Sage likewise never volunteered that prior art references it kept would not be "almost identical" to ones it dropped.

[2] Sage first raised this "issue" with PureWick more than four months ago, and two months prior to the *Markman* hearing. If Sage really believed that PureWick "did not meaningfully narrow the issues," Sage presumably would have raised the issue before the *Markman* hearing.

SHAW KELLER LLP

Page 2

686 F. Supp. 2d 429 (D. Del. 2010), bears no resemblance to this case. *LG Display* was a consolidated action encompassing three related patent infringement cases involving *23 patents*. 686 F. Supp. 2d at 434. Moreover, the claim narrowing order was aimed specifically at streamlining issues for *trial*, not discovery. *Id.* And even despite the Court's statement regarding the "spirit" of its claim narrowing order, which appeared in a footnote to its post-trial claim construction order, *the Court never ordered the parties to withdraw the dependent claims they chose to assert*.

Sage's other case is similarly inapplicable. In fact, in the sentence immediately after the one Sage cites in its letter—"by the assertion of Claim 7, an expert and/or the Court will need to interpret the substance of Claims 1 and 5 in order to determine whether the dependent Claim 7 is either infringed and/or valid"— the Court notes that its statement "is neither commentary nor criticism on the selection of claims." *Sherwin-Williams Co. v. PPG Indus., Inc.*, No. 2:17-CV-01023-JFC, 2018 WL 6732883, at *2 (W.D. Pa. Nov. 14, 2018), *report and recommendation adopted as modified*, No. CV 17-1023, 2018 WL 6695258 (W.D. Pa. Dec. 20, 2018). Thus, *Sherwin-Williams* does not support Sage's argument that PureWick's selection of asserted claims was in any way improper.[3]

Sage does not and cannot say that PureWick did not comply with the Court's Order as written. Instead it seeks to rewrite that Order to impose a further limitation on which asserted claims could be maintained that is neither present in the Order nor was suggested by Sage. And Sage's position is not workable. Who will determine whether a dropped claim is "almost identical" to a retained claim? Many patents have claims that, on their face, seem to have narrow differences but yet have different infringement and validity profiles. And, under Sage's view, parties likely would fight endlessly about how "identical" claims are depending on how many elements each has in common with others to determine whether dropping some actually "narrowed" the case? And if the claims were all "almost identical," why narrow at all given that an infringement and validity analysis of one claim likely would be the same as a number of others. PureWick abided by the Court's order and, therefore, Sage's request to compel PureWick to withdraw additional claims should be denied.

**Issue 2: PureWick Has Provided a Complete Response to Interrogatory Nos. 6, and Judge Noreika Already Denied Sage's Request to Compel a Response to Interrogatory No. 15**

This is the second motion to compel filed by Sage about Interrogatory No. 6. This Interrogatory asks PureWick to identify prior versions or prototypes of the PureWick product, as well as any prior products covered by the Asserted Patents, the dates when any of those products were demonstrated, used, manufactured, offered for sale, or sold, and how any products that are covered by the Asserted Patents meet the limitations of the asserted claims. Ex. 1 at 2. In the first motion, the Court rejected Sage's demand that PureWick explain whether all prior prototypes and devices are covered by the asserted patents. Instead, the Court simply ordered that PureWick identify the prior devices, when they were made and, if sold, when.

PureWick disputes Sage's assertion that PureWick's prior versions or prototypes of the PureWick product "are devices that PureWick demonstrated and sold publicly long before the

---

[3] PureWick asked Sage during the meet and confer whether they had any authority for their request and Sage failed to identify any cases.

SHAW KELLER LLP

Page 3

effective filing dates of the 376 and 989 patents-in-suit."[4]  D.I. 146 at 2.  Nevertheless, PureWick
has provided the information in its possession, custody, or control regarding those devices in
response to Interrogatory No. 6 and there is, simply put, nothing for the Court to compel.

Indeed, PureWick's response to Interrogatory No. 6 describes the creation and development
of various urine collection device prototypes, starting in 2009 and ending in September 2016 with
the launch of PureWick's commercial products.  Ex. 1 at 3-7.  PureWick's response also indicates,
with reference to dozens of exemplary documents, when those prototypes were tested, and when, if
applicable, they were publicly demonstrated or sold.  *Id.*  And further, where it has formed an
opinion on the subject, PureWick identifies which prototypes practice one or more claims of the
Asserted Patents, providing claim charts for each of those prototypes.  *Id.*  In sum, PureWick
responded to Interrogatory No. 6 by providing the responsive information that it has in its possession
and it is not clear what else Sage wants besides documents and information that do not exist.[5]

To the extent Sage again argues that PureWick must "explain whether many other products
disclosed before the bar date were covered" by the Asserted Patents, D.I. 146 at 3, Judge Noreika
already refused to require this.  In connection with Sage's prior motion, Judge Noreika stated that
"[y]ou [PureWick] don't have to say if you think those other products are covered if you don't have
an opinion, you just have to identify them." Ex. 2 at 25:16-18.  In compliance with the Court's
order, PureWick identified all of the other earlier products or prototypes that are known to it, and
where it had an opinion on the subject, it identified which of those products practice one or more
claims of the Asserted Patents and provided claim charts mapping the products to the claims.  *See*
Ex. 1 at 3-7, 8-117.  PureWick has therefore responded completely to Interrogatory No. 6 and the
Court should deny Sage's request to compel anything further.[6]

This is also Sage's second motion to compel on Interrogatory No. 15, which asks PureWick
to provide validity contentions for each of the prototypes and devices developed by PureWick.  But
Judge Noreika already refused to compel a response because Sage had not provided specific
invalidity contentions for any PureWick prototypes or devices.  During the hearing on Sage's
original motion, the Court stated, "I don't understand how you [Sage] think that they [PureWick]
should have to give you that type of information, that contention before you've even given them a
contention.  You're the one with the burden of proof here." D.I. 145, Ex. 6 at 6:16-20.  The Court
thus held that PureWick "shouldn't have to give you [Sage] validity contentions before you have

---

[4] The '376 and '989 patents are entitled to a priority date of March 19, 2014, which is before the
alleged public disclosures or sales on which Sage purportedly relies.

[5] Sage complains that PureWick recently made "an untimely production" from two named inventors.
D.I. 146 at n. 2.  Sage fails to inform the Court that this production was from third-parties who were
not served with a subpoena by Sage until February 11, 2021.  Sage also fails to tell the Court that
PureWick told Sage more than a year ago that the inventors were third parties who would need to be
subpoenaed and PureWick repeatedly offered to accept subpoenas which Sage ignored for months.

[6] PureWick provided its supplemental response more than six months ago, and Sage did not raise any
issues when it was served.  PureWick has also produced hundreds of pages of documents regarding
its prototype devices and made physical samples available for inspection.  Thus, Sage's unsupported
attorney argument that "PureWick has resisted providing information" about its devices is not true.

SHAW KELLER LLP
Page 4

given them invalidity contentions." *Id.* at 7:21-23. And as Sage recognized in its letter, the Court explained further that PureWick is under no obligation to answer Sage's "improper contention" Interrogatory No. 15, *id.* at 7:2, unless Sage "come[s] forward with assertions" that "all of these [claim] elements are met" by the earlier prototypes. *Id.* at 8:18-21. Sage still has not done so.

As explained in PureWick's March 29th letter (D.I. 145), Sage's invalidity contentions do not identify any specific prototype or device that allegedly discloses the elements of the Asserted Claims, nor do they provide any explanation at all as to how any device allegedly meets any element of any Asserted Claim. Thus, just as it did the last time it raised this issue with Judge Noreika, Sage seeks to compel PureWick to provide specific validity contentions concerning devices for which Sage has not provided specific invalidity contentions. This is no more proper now than it was then.

Sage will no doubt contend, as it did at the December 3rd hearing on this issue, that it is "really unfair," D.I. 145, Ex. 6 at 7:6, to require Sage to provide such invalidity contentions when it "can't see anything about the product." *Id.* at 8:5-6. That argument must fail though for the same reasons the Court outlined during the December 3rd hearing. Namely, it is Sage's burden to prove invalidity, and if Sage needed more specific facts in order to make its invalidity case with regard to the earlier prototypes, then it "need[ed] to ask more specific questions." *Id.* at 7:13-15. The Court explained that, for example, Sage could ask to inspect the prototypes or for better pictures of the prototypes. *Id.* at 7:16-18. Alternatively, it could take a Rule 30(b)(6) deposition to learn more about the prototypes. *Id.* at 8:11-14. The reality is that Sage has had photographs and other documents concerning PureWick's prototypes and devices for more than nine months, and has inspected physical samples of those prototypes. Indeed, Sage alleges in its letter to the Court that "many of the product images look identical to patent images" (D.I. 146 at 2-3), yet Sage has never made any effort to compare any product images with any of the asserted patents in Sage's invalidity contentions. Because Sage has not provided invalidity contentions on a "claim by claim, element by element" basis as the Court indicated was required of it, D.I. 145, Ex. 6 at 5:4-6, PureWick should not be compelled to provide any further response to Interrogatory No. 15.

**Issue 3: PureWick Has Provided a Complete Response to Interrogatory No. 5**

Contrary to Sage's assertion, PureWick has responded completely to Interrogatory No. 5. Interrogatory No. 5 asks PureWick to, for each Asserted patent, "identify the date when the claimed subject matter was first disclosed, . . . and the dates when the claimed subject matter was first on sale, offered for sale, and in public use . . . ." D.I. 146, Ex. 2 at 2. In response, PureWick identified a date of first disclosure and, where applicable, a date of first sale, offer for sale, and public use for each invention claimed by the Asserted Patents. *See id.* at 3-4. Sage contends that PureWick's response is "vague," but PureWick has provided the responsive information available to it.

Sage also argues that the alleged incompleteness of PureWick's response is evidenced by the fact that the response does not reference the July 2015 sale of a PureWick device that is identified in response to Interrogatory No. 6. As PureWick explained in response to Interrogatory No. 6, however, PureWick has been unable to determine which prototype was sold in July 2015 despite its efforts to do so. *Id.* at 10. Therefore, it cannot say whether the July 2015 sale constituted "a date of first sale" of an invention claimed by the Asserted Patents, as requested by Interrogatory No. 5. Because PureWick's response to Interrogatory No. 5 is complete, the Court should thus deny Sage's request to compel any further response.

SHAW KELLER LLP
Page 5

Respectfully submitted,

*/s/ John W. Shaw*

John W. Shaw (No. 3362)

cc: Clerk of the Court (by Hand Delivery)
    All counsel of record (by CM/ECF and Email)

# EXHIBIT 1
## REDACTED
## IN ITS
## ENTIRETY

# EXHIBIT 2

1

13:12:40

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PUREWICK CORPORATION,       )
                            )
            Plaintiff,      )
                            ) C.A. No. 19-1508(MN)
        v.                  )
                            )
SAGE PRODUCTS, LLC,         )
                            )
            Defendant.      )

                    Tuesday, August 4, 2020
                    10:00 a.m.
                    Discovery Dispute Teleconference

                    844 King Street
                    Wilmington, Delaware

BEFORE:  THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge

APPEARANCES:

         SHAW KELLER LLP
         BY:  JOHN SHAW, ESQ.

         -and-

         QUINN EMANUEL URQUHART & SULLIVAN
         BY:  BRIAN P. BIDDINGER, ESQ.
         BY:  STEVEN CHERNY, ESQ.
         BY:  AMANDA ANTONS, ESQ.

                    Counsel for the Plaintiff

---

2

1   APPEARANCES CONTINUED:

2

3

4       YOUNG CONAWAY STARGATT & TAYLOR LLP
        BY: ANNE SHEA GAZA, ESQ.

5       -and-

6       MCANDREWS HELD & MALLOY
        BY: ROBERT SURRETTE, ESQ.

7       BY: SANDRA FRANTZEN, ESQ.
        BY: BRICE PERSICHETTI, ESQ.

8
                    Counsel for the Defendant

9

10      _ _ _ _ _ _ _ _ _ _

09:49:07   11

09:58:03   12      THE COURT:  Good morning, counsel.  Who is

09:58:05   13  there, please?

09:59:35   14      MR. SHAW:  Good morning, Your Honor.  It's John

09:59:37   15  Shaw for PureWick.  Joining me from Quinn Emanuel are Steve

09:59:42   16  Cherny, Brian Biddinger and Amanda Antons.

09:59:47   17      THE COURT:  Good morning to all of you.

09:59:48   18      And for Sage?

09:59:52   19      MS. GAZA:  Good morning, Your Honor.  It's Anne

09:59:54   20  Gaza from Young, Conaway on behalf of Sage.  I'm joined this

09:59:57   21  morning by Robert Surrette, Sandra Frantzen, and Brice

10:00:04   22  Persichetti of McAndrews, Held & Malloy.  And Mr. Surrette

10:00:05   23  will present on behalf of Sage.

10:00:08   24      THE COURT:  Okay.  Good morning to you as well.

10:00:09   25      So I have reviewed all of the letters as well as

---

3

10:00:12   1   the supplemental letters on the meet and confer and I think

10:00:15   2   it makes sense at this point just to deal with the substance

10:00:18   3   of the disputes.  So I will hear from the Plaintiffs first

10:00:27   4   on the disputes that were outlined in Mr. Shaw's letter from

10:00:35   5   July 30th and let's go through one by one, we'll get

10:00:41   6   Plaintiff's position and then Defendant's position so I can

10:00:43   7   address each request in turn.

10:00:46   8       So first, interrogatory number 6.

10:00:52   9       MR. BIDDINGER:  Your Honor, that's Defendant's

10:00:58   10  interrogatory.

10:00:59   11      THE COURT:  I'm sorry, I was looking at

10:01:01   12  Plaintiff's responsive letter.  Sorry.  Okay.  Thank you for

10:01:05   13  that.  Let's start with PureWick interrogatory number 1.

10:01:10   14      MR. BIDDINGER:  Good morning, Your Honor.  This

10:01:11   15  is Brian Biddinger from Quinn Emanuel for the Plaintiff.  So

10:01:15   16  I think briefly on this, not that there is a whole lot to

10:01:20   17  add beyond what's in the letter, but the issue is whether

10:01:23   18  Sage will provide the requested information which is related

10:01:28   19  to financials so, you know, sales data basically, for sales

10:01:35   20  that were made prior to the filing of the lawsuit.

10:01:39   21      We understand Sage's position to be that they

10:01:42   22  will not provide that information unless and until they're

10:01:46   23  satisfied that we have provided prima fascia evidence that

10:01:50   24  PureWick has complied with the marking statute.  We have

10:01:55   25  provided interrogatory in response that identifies a lot has

---

4

10:02:02   1   happened with the mark and the dates on which the marking

10:02:04   2   began.  We are producing documents that we believe

10:02:08   3   ultimately will support the information we provided in the

10:02:11   4   interrogatories, and so at this point we really don't see a

10:02:16   5   basis for them to be withholding discovery of the sales data

10:02:20   6   and sales information given the current record and frankly

10:02:24   7   even if we hadn't provided the information about the

10:02:29   8   markings, we don't see the authority or have the authority

10:02:34   9   for them withholding that information.

10:02:37   10      And the last thing I would note is that in

10:02:40   11  putting marking aside, information about the dates on which

10:02:44   12  they're sold, the accused products is relevant to other

10:02:50   13  issues including the date of first infringement, commercial

10:02:54   14  success, it's also evidence of indirect infringement and

10:03:00   15  will allow us to identify customers that we may need to take

10:03:04   16  follow-up discovery on to show direct infringement.  So

10:03:08   17  putting all that aside, again, our position is we told them

10:03:12   18  when we started marking to identify the products that had

10:03:16   19  been marked and at this point we believe they should provide

10:03:19   20  a full response to the interrogatory.

10:03:21   21      THE COURT:  Okay.  How far back are we talking

10:03:23   22  about?  I know you don't know exactly when they started

10:03:27   23  selling or maybe you do, but how far -- what's the time

10:03:31   24  period that we're talking about?

10:03:39   25      MR. BIDDINGER:  Relatively short, Your Honor.

---

5

| | |
|---|---|
| 10:03:41 | 1  The complaint was filed a year ago now, so 2019.  Our |
| 10:03:45 | 2  understanding is their sales began in either towards the end |
| 10:03:48 | 3  of 2017 or sometime in 2018. |
| 10:03:51 | 4         THE COURT:  Okay.  Thanks. |
| 10:03:52 | 5         So Sage, what's your position on this?  Is it |
| 10:03:55 | 6  really that you are not going to produce documents until |
| 10:03:59 | 7  you're satisfied with the marking. |
| 10:04:00 | 8         MR. SURRETTE:  Well, first of all, Your Honor, |
| 10:04:02 | 9  we have produced -- |
| 10:04:03 | 10        THE COURT:  Stop.  Wait, wait, wait.  Sorry.  I |
| 10:04:06 | 11  forgot to give my warning at the beginning.  When you start |
| 10:04:10 | 12  talking, you have to say who you are so that we get a clear |
| 10:04:13 | 13  record.  So start with that and then you can go on. |
| 10:04:17 | 14        MR. SURRETTE:  I am sorry, Your Honor.  Robert |
| 10:04:20 | 15  Surrette on behalf of Sage. |
| 10:04:22 | 16        First of all, we have produced documents, |
| 10:04:24 | 17  financial documents related to when we first started -- |
| 10:04:27 | 18        THE COURT:  No, no, I get that.  But have you |
| 10:04:29 | 19  produced the financial documents back to when you first -- |
| 10:04:34 | 20  they're requesting and that you have produced for things |
| 10:04:37 | 21  after the filing of the lawsuit prior to -- have you |
| 10:04:41 | 22  produced what they're asking for for the time between when |
| 10:04:44 | 23  you first started selling and the lawsuit was filed? |
| 10:04:51 | 24        MR. SURRETTE:  We have produced financial |
| 10:04:53 | 25  information from the time we started selling the product |

6

| | |
|---|---|
| 10:04:55 | 1  which was before the complaint was filed. |
| 10:04:57 | 2         THE COURT:  So what's the fight about here |
| 10:05:00 | 3  today? |
| 10:05:06 | 4         MR. SURRETTE:  Well, the fight is about this |
| 10:05:09 | 5  information, they're asking for it on a monthly basis, |
| 10:05:09 | 6  they're asking for it on a customer basis, despite the fact |
| 10:05:13 | 7  that we have produced financial documents going back to 2017 |
| 10:05:16 | 8  so they can't establish when the date of alleged first |
| 10:05:20 | 9  infringement began.  We don't believe they have established |
| 10:05:25 | 10  constructive notice under 287.  And under *Power Integrations* |
| 10:05:29 | 11  where this Court denied a motion to compel on the same type |
| 10:05:32 | 12  of information for failure to establish marking under |
| 10:05:36 | 13  constructive notice under 287, we don't believe that it's |
| 10:05:40 | 14  relevant at this point. |
| 10:05:41 | 15        THE COURT:  But what do they have to do?  They |
| 10:05:44 | 16  say we have shown you that we were marking and you say well, |
| 10:05:48 | 17  that's not enough.  At what point -- I mean, I am not going |
| 10:05:52 | 18  to make that determination now, so what is it that you |
| 10:05:56 | 19  expect to happen here? |
| 10:06:00 | 20        MR. SURRETTE:  Well, what I would think they |
| 10:06:02 | 21  could provide and all they have provided to us is a |
| 10:06:04 | 22  statement that they started marking and a picture of a |
| 10:06:07 | 23  product, one picture of a product that has a patent on it |
| 10:06:13 | 24  without any date, without any time when it started, and I'm |
| 10:06:17 | 25  not sure we're required to just accept on face value that |

7

| | |
|---|---|
| 10:06:21 | 1  that's when they started marking.  And frankly, Your Honor, |
| 10:06:28 | 2  that's what the whole point of the meet and confer process |
| 10:06:33 | 3  is about is to try to crystalize the issues.  And we were |
| 10:06:38 | 4  still talking about this issue in our last meet and confer. |
| 10:06:41 | 5  And I know the Court has just decided to address the issues |
| 10:06:43 | 6  here, but it's very clear that they didn't follow the meet |
| 10:06:46 | 7  and confer process here. |
| 10:06:47 | 8         THE COURT:  I'm done.  Listen, I read your |
| 10:06:50 | 9  letters on all that stuff.  I asked you what happened, and I |
| 10:06:53 | 10  got enough and I don't want to hear anymore of the bickering |
| 10:06:58 | 11  back and forth about that.  Okay?  I can't -- I got to just |
| 10:07:03 | 12  move on.  So I guess my question then for the Plaintiff is |
| 10:07:07 | 13  why do you need on a monthly basis by customer this |
| 10:07:11 | 14  information on each of these things?  This seems a little |
| 10:07:16 | 15  bit much.  Monthly by customer, why do you need that? |
| 10:07:22 | 16        MR. BIDDINGER:  Sure, Your Honor, Brian |
| 10:07:26 | 17  Biddinger for the Plaintiff.  I think there are a couple of |
| 10:07:28 | 18  reasons.  Number one, and first of all, they agreed to |
| 10:07:32 | 19  provide that, they just wouldn't do it prior to the filing |
| 10:07:36 | 20  of the complaint.  But the identification of sales of |
| 10:07:40 | 21  particular customers is important here because we have |
| 10:07:42 | 22  direct infringement claims and we need to show that |
| 10:07:46 | 23  particular customers, particularly for our method claims |
| 10:07:50 | 24  actually practiced and directly infringe those claims.  So |
| 10:07:55 | 25  identifying which customers have been sold to so that we can |

8

| | |
|---|---|
| 10:08:00 | 1  identify the direct infringers and potentially take |
| 10:08:03 | 2  follow-up discovery of those direct infringers is important. |
| 10:08:07 | 3         It's also important because we have a lost |
| 10:08:10 | 4  profits claim in this case, so determining which customers |
| 10:08:13 | 5  have been sold to by the Defendants in order to prove that |
| 10:08:18 | 6  we have lost sales to those particular customers is also |
| 10:08:22 | 7  important. |
| 10:08:23 | 8         And sorry, one other thing, I know that this |
| 10:08:27 | 9  isn't specifically your question, Your Honor, but counsel |
| 10:08:30 | 10  for Defendants mentioned the *Power Integrations* case, and |
| 10:08:33 | 11  there is an important distinction in that in that case the |
| 10:08:38 | 12  Plaintiff admitted in their interrogatory responses that |
| 10:08:42 | 13  they had not marked their product.  That's not the case |
| 10:08:45 | 14  here, we have marked our product, it's just a case of |
| 10:08:48 | 15  whether or not we have sufficiently proved to the Defendants |
| 10:08:50 | 16  whether or not we have complied with that marking |
| 10:08:54 | 17  requirement for the relevant time period. |
| 10:08:56 | 18        THE COURT:  Okay. |
| 10:08:57 | 19        MR. SURRETTE:  Your Honor, this is Robert |
| 10:08:59 | 20  Surrette on behalf of Sage.  In fact, the facts are |
| 10:09:03 | 21  identical.  Here PureWick has admitted that they haven't |
| 10:09:09 | 22  marked two products.  There is three products that they have |
| 10:09:15 | 23  identified and two of them they admit they have not marked. |
| 10:09:19 | 24        THE COURT:  Why does it matter that they have |
| 10:09:21 | 25  not marked one?  Isn't one enough to get the information |

**9**

| | |
|---|---|
| 10:09:23 | 1 |
| 10:09:25 | 2 |
| 10:09:28 | 3 |
| 10:09:30 | 4 |
| 10:09:31 | 5 |
| 10:09:33 | 6 |
| 10:09:37 | 7 |
| 10:09:42 | 8 |
| 10:09:46 | 9 |
| 10:09:53 | 10 |
| 10:09:56 | 11 |
| 10:09:59 | 12 |
| 10:10:05 | 13 |
| 10:10:05 | 14 |
| 10:10:07 | 15 |
| 10:10:10 | 16 |
| 10:10:11 | 17 |
| 10:10:12 | 18 |
| 10:10:14 | 19 |
| 10:10:16 | 20 |
| 10:10:22 | 21 |
| 10:10:26 | 22 |
| 10:10:28 | 23 |
| 10:10:32 | 24 |
| 10:10:35 | 25 |

1 that they need?

2 MR. SURRETTE: Well, we're not sure they have
3 established that they have actually marked it, and that's
4 really the heart of the dispute here.

5 THE COURT: Okay. So I'm going to grant this
6 request because I don't think Defendants, we're not going to
7 get into a substantive decision on whether the marking has
8 been established before they can ask for discovery. So I'm
9 going to grant the motion for interrogatory number 1. We'll
10 talk about the timing of these responses at the end, but
11 let's go to the next one. Interrogatory number 5. Is it
12 Mr. Biddinger again?

13 MR. SHAW: Your Honor, I have this one.

14 THE COURT: I'm sorry, who was that?

15 MR. SHAW: It's John Shaw, Your Honor. I have
16 interrogatory number 5.

17 THE COURT: Mr. Shaw.

18 MR. SHAW: So this one is pretty
19 straightforward. It's a single interrogatory asking for
20 Sage's factual legal basis for affirmative defenses. There
21 are two objections. One is that there are multiple
22 subparts, the other is the timing of objections. The first
23 as a matter of practice in the district and according to the
24 case law this has not been counted as multiple
25 interrogatories. In part I'm sure that's because the number

**10**

| | |
|---|---|
| 10:10:38 | 1 |
| 10:10:42 | 2 |
| 10:10:46 | 3 |
| 10:10:50 | 4 |
| 10:10:51 | 5 |
| 10:10:55 | 6 |
| 10:10:59 | 7 |
| 10:11:02 | 8 |
| 10:11:03 | 9 |
| 10:11:06 | 10 |
| 10:11:12 | 11 |
| 10:11:16 | 12 |
| 10:11:18 | 13 |
| 10:11:22 | 14 |
| 10:11:26 | 15 |
| 10:11:31 | 16 |
| 10:11:36 | 17 |
| 10:11:40 | 18 |
| 10:11:43 | 19 |
| 10:11:47 | 20 |
| 10:11:50 | 21 |
| 10:11:54 | 22 |
| 10:11:57 | 23 |
| 10:11:59 | 24 |
| 10:12:01 | 25 |

1 of affirmative defenses varies by case and second it helps
2 on case management not to have to anticipate early on
3 exactly how many interrogatories are needed for affirmative
4 defenses.

5 But to the extent, Your Honor, these are
6 multiple subparts, we ask to have the interrogatory limit
7 expanded by ten because there are eleven from the Defendant
8 in this case.

9 THE COURT: And let me just ask, Mr. Shaw, if I
10 were to do that, would you be okay with me doing that
11 reciprocally so that everybody gets another ten?

12 MR. SHAW: I'm not sure that would be the case,
13 Your Honor. The reason to do that here is to get at the
14 multiple issues that are typically treated as one. You can
15 make the argument that other issues such as responses on
16 validity for anticipation, obviousness, other flavors should
17 also be counted as individual interrogatories, and if that
18 were true, I would think the additional ten would make
19 sense, but here we would commit the additional ten would
20 only be used for interrogatories that are dedicated to ask
21 the basis of each affirmative defense. So we wouldn't be
22 expanding it beyond just trying to get the information.

23 THE COURT: Okay.

24 MR. BIDDINGER: On the timing question, all a
25 party can ever do is ask its opponent to get all the

**11**

| | |
|---|---|
| 10:12:06 | 1 |
| 10:12:10 | 2 |
| 10:12:14 | 3 |
| 10:12:17 | 4 |
| 10:12:20 | 5 |
| 10:12:24 | 6 |
| 10:12:26 | 7 |
| 10:12:30 | 8 |
| 10:12:33 | 9 |
| 10:12:35 | 10 |
| 10:12:39 | 11 |
| 10:12:39 | 12 |
| 10:12:41 | 13 |
| 10:12:44 | 14 |
| 10:12:49 | 15 |
| 10:12:51 | 16 |
| 10:12:52 | 17 |
| 10:12:56 | 18 |
| 10:12:59 | 19 |
| 10:13:04 | 20 |
| 10:13:08 | 21 |
| 10:13:12 | 22 |
| 10:13:15 | 23 |
| 10:13:19 | 24 |
| 10:13:20 | 25 |

1 information presently in its custody and control. That's
2 what we have done here. Their view is they seem to think we
3 can wait to some future part of the case to respond. We
4 know they have some information about the interrogatories
5 and about the affirmative defenses because they put them in
6 their answer. So at this point what we're asking is that
7 the objection on prematurity be overruled and that they
8 respond to the information that is presently in their
9 possession, custody and control.

10 THE COURT: Mr. Surrette, are you dealing with
11 this one?

12 MR. SURRETTE: Yes, I am, Your Honor. We think
13 this interrogatory is clearly overbroad. We have identified
14 eleven affirmative defenses, many which have sub-defenses,
15 in essence they're asking for eleven separate
16 interrogatories. Much of the information sought by
17 interrogatory 5 is covered by other interrogatories, so --

18 THE COURT: But don't you think they get --
19 don't you think that it makes sense that they get to ask an
20 interrogatory for the -- your contentions on any affirmative
21 defenses you assert, and I don't know how -- I mean, what
22 are they supposed to do if you assert a hundred affirmative
23 defenses, they're not allowed to ask? That's where I'm
24 falling down on this one.

25 MR. SURRETTE: Well, they have asked in other

**12**

| | |
|---|---|
| 10:13:22 | 1 |
| 10:13:25 | 2 |
| 10:13:32 | 3 |
| 10:13:35 | 4 |
| 10:13:39 | 5 |
| 10:13:43 | 6 |
| 10:13:46 | 7 |
| 10:13:50 | 8 |
| 10:13:53 | 9 |
| 10:13:56 | 10 |
| 10:14:06 | 11 |
| 10:14:11 | 12 |
| 10:14:14 | 13 |
| 10:14:18 | 14 |
| 10:14:21 | 15 |
| 10:14:25 | 16 |
| 10:14:26 | 17 |
| 10:14:28 | 18 |
| 10:14:32 | 19 |
| 10:14:36 | 20 |
| 10:14:39 | 21 |
| 10:14:42 | 22 |
| 10:14:45 | 23 |
| 10:14:49 | 24 |
| 10:14:51 | 25 |

1 interrogatories about our affirmative defenses. This is an
2 omnibus interrogatory.

3 THE COURT: All right. Mr. Shaw, so tell me
4 what information that this one asks that you're not getting
5 from the other ones. I didn't go back and look at all the
6 interrogatories to make a determination.

7 MR. SHAW: We requested just six I believe, and
8 I'm looking through them now. I don't believe there are any
9 directed to affirmative defenses. There are ones directed
10 to explain why you don't infringe, explain why infringement
11 is not willful, identify noninfringing alternatives, so I'm
12 not sure that I agree that the interrogatories that have
13 been asked are duplicated if there already has been one
14 asked for each affirmative defense.

15 MR. SURRETTE: Judge -- I'm sorry, Mr. Shaw.

16 THE COURT: Go ahead.

17 MR. SHAW: If certainly that is the case, we
18 will be happy to reduce that number, we will talk to them
19 and if they say, that one is the same as the affirmative
20 defense, we don't need that extra interrogatory.

21 MR. SURRETTE: Your Honor, this is Mr. Surrette.
22 Noninfringement, invalidity, those are all affirmative
23 defenses and they're all separate interrogatories directed
24 towards those affirmative defenses.

25 THE COURT: So for this one, I agree that if

13

1 there is overlap that the Defendants don't have to say the
2 same thing again, though I'm not sure why it's so difficult
3 to just refer to another interrogatory on noninfringement or
4 willfulness, but in any event, you guys can talk and come to
5 an agreement on which ones are repetitive, but for the other
6 ones, I think that Defendants should respond with the
7 information that they have now and then they have a duty to
8 supplement as discovery goes forward.  So for interrogatory
9 number 5, I'm going to grant the request to the extent that
10 the affirmative defenses requested the information is
11 requested about that are not already requested in other
12 interrogatories should be answered.
13        Okay.  What about interrogatory number 6?
14        MR. BIDDINGER:  Your Honor, Brian Biddinger
15 again.  I'll address interrogatory number 6.  So
16 interrogatory number 6 is related to information concerning
17 alleged noninfringing alternative.  Defendants have not
18 contended that the discovery is irrelevant, they have agreed
19 generally that what's sought by the interrogatory should be
20 provided and the issue really is a matter of timing.  Their
21 current response states that discovery is ongoing and that
22 they would supplement as necessary after further discovery
23 including an explanation by Plaintiffs on how the accused
24 product infringes and a determination by the Court on claim
25 construction issues.

14

1        So our understanding is that it's not a matter
2 of them not having any information right now, it's a matter
3 of them not being willing to provide the information that
4 they have until a somewhat later point in the case.  So
5 similar to interrogatory number 5, we believe that they
6 should provide the information that they have now and they
7 can supplement if they discover additional information
8 later.  But identifying any noninfringing alternatives on
9 which they may rely is important for us to obtain so that we
10 can take discovery about those alleged noninfringing
11 alternatives including whether they are reasonable
12 alternatives or feasible alternatives.
13        THE COURT:  Mr. Surrette, is it you again?
14        MS. FRANTZEN:  Your Honor, this is actually
15 Sandra Frantzen for Sage.  I will handle this interrogatory.
16        THE COURT:  Okay.
17        MS. FRANTZEN:  So we agree that information on
18 noninfringing alternatives is relevant.  And it's usually
19 the subject of testimony later in discovery because the
20 parties really at this point have no way of determining what
21 constitutes a noninfringing alternative until the claims are
22 construed.  So generally speaking the noninfringing
23 alternatives will say, for example, a noninfringing
24 alternative might be something that doesn't have a
25 reservoir, a noninfringing alternative might be something

15

1 that doesn't have this element of a container.  The claim
2 construction is highly relevant especially when often times
3 noninfringing alternatives are hypothetical while based on
4 the market.  So coming up with every hypothetical element
5 that could be a noninfringing alternative is just kind of a
6 premature exercise at this point.
7        And a secondary point is that, you know, this
8 kind of interrogatory which is interrogatory number 6 that
9 we served, we served a request and asked them to identify
10 all of their versions of the PureWick device, and we
11 submitted an appendix in our brief an example of thirteen
12 that were just publicly shown on the internet.  They only
13 identified three and they don't know whether ten of them are
14 covered.  Ten of them are not covered, so ten of those are
15 noninfringing alternatives so we don't have that information
16 from them.
17        So I guess the point of noninfringing
18 alternatives is that it's always the case at this point to
19 start coming up with real noninfringing alternatives and
20 even hypothetical noninfringing alternatives until more has
21 happened especially considering that they don't even know
22 what their products are that are covered by their
23 patents-in-suit.
24        THE COURT:  Mr. Biddinger.
25        MR. BIDDINGER:  Yes, Your Honor.  I mean, I

16

1 think -- I don't really understand the notion that we need
2 to wait until after claim construction for them to formulate
3 positions about what they believe are noninfringing or not.
4 Whether the alternatives are truly noninfringing or not may
5 change I guess based on claim construction, but they
6 obviously have positions on what they believe is
7 noninfringing.  And, you know, we have a relatively short
8 time period for conducting discovery post claim
9 construction, postponing understanding what they allege to
10 be a noninfringing alternative until then puts us in a
11 pretty difficult position in terms of taking discovery on
12 the feasibility of the alternative, whether or not it was
13 available at the time of the hypothetical negotiation,
14 whether customers would accept it as a noninfringing
15 alternative, what the costs are associated with the
16 noninfringing alternative --
17        THE COURT:  Right.  So is it your position, I
18 just want to understand with respect to earlier prototypes
19 or earlier versions of the products here where you haven't
20 formulated a position on whether it is or is not covered by
21 the claims, what are they supposed to do with those?  You
22 want them to just make their own determination as to whether
23 it is or is not covered and is a noninfringing alternative,
24 is that what you expect?
25        MR. BIDDINGER:  Yes, I think on this issue, if

17

10:21:22 1   they believe that there is some earlier prototype version or
10:21:27 2   a third-party product or anything else that they believe is
10:21:33 3   an available noninfringing alternative, that would have been
10:21:38 4   acceptable to customers, then I think that is a position for
10:21:41 5   them to take.  If they don't believe that, then they don't
10:21:45 6   need to identify it.  If they haven't formed an opinion on
10:21:49 7   that, I don't think we can ask them to identify it at this
10:21:51 8   stage.  But to the extent that they have formed any opinion
10:21:55 9   about any noninfringing alternatives, that's what we're
10:22:00 10  asking them to provide on this date instead of at some
10:22:04 11  unspecified date in the future.
10:22:05 12          THE COURT:  Ms. Frantzen, anything you want to
10:22:07 13  add?
10:22:10 14          MS. FRANTZEN:  You know, Your Honor, I would say
10:22:11 15  this proves a point that it's premature, and this is why we
10:22:15 16  need the discovery on our interrogatory number 5.  We can't
10:22:19 17  formulate views on noninfringing alternatives when they
10:22:23 18  haven't even provided us with the information and are
10:22:27 19  relying on pictures on the internet.  Issue number one.
10:22:31 20          Issue number two with regard to tying up claim
10:22:33 21  construction, there is two months of time and this happens
10:22:36 22  in every case.  Noninfringing alternatives are usually
10:22:40 23  addressed after claim construction, at least on the cases I
10:22:42 24  have been involved in and they're usually addressed by the
10:22:45 25  experts who can explain them.  It's just conducting a

18

10:22:50 1   hypothetical exercise right now with no information and no
10:22:53 2   discovery, you know, is just I guess inappropriate at this
10:23:01 3   point.
10:23:01 4          THE COURT:  Okay.  So what I am going to do is
10:23:05 5   to say -- well, the point of interrogatories is to find out
10:23:13 6   broadly what is at issue in the case.  And in this District,
10:23:16 7   we encourage early contention interrogatories.  And I don't
10:23:21 8   think it makes sense to wait until after claim construction.
10:23:24 9   And I certainly don't think it is appropriate to say that
10:23:28 10  you're not going -- anyone is not going to identify or
10:23:31 11  address noninfringing alternatives until expert discovery
10:23:35 12  because I think everybody needs to have some opportunity to
10:23:39 13  explore those issues.  So what I'm going to say is that if
10:23:45 14  Defendants have in mind things that are noninfringing
10:23:49 15  alternatives, they should identify them.  If they don't have
10:23:53 16  any in mind currently, that's fine, you can say that, and
10:23:57 17  then supplement later if it turns out that you have
10:24:03 18  something in mind.  But just so everyone is clear, I don't
10:24:09 19  agree that we can identify noninfringing alternatives for
10:24:13 20  the first time in expert discovery.
10:24:17 21          Okay.  Now, we have a bunch of document requests
10:24:23 22  that are sort of thrown in here at the end of the letter.
10:24:28 23  What do we really need to discuss with respect to those?
10:24:32 24          MR. SHAW:  Your Honor, this is John Shaw.  I
10:24:37 25  have this grouping.

19

10:24:38 1          THE COURT:  Okay.
10:24:39 2          MR. SHAW:  These requests are grouped together
10:24:40 3   because Sage has the same response to all of them which is
10:24:44 4   we will only produce documents according to our affirmative
10:24:47 5   defenses and counterclaims.  The requests themselves are
10:24:52 6   ranging in a variety of ways are designed to capture factual
10:24:58 7   information that goes beyond just their affirmative defenses
10:25:02 8   and what their positions are and the objections that they're
10:25:05 9   making doesn't make sense in the context of these.  For
10:25:08 10  example, take the first two, they are focused on invalidity
10:25:11 11  issues, can be internal analyses on validity or invalidity
10:25:17 12  and aren't limited just to what their affirmative defenses
10:25:21 13  -- documents supporting their affirmative defenses.
10:25:23 14          33 and 41 deal with commercial success.  There
10:25:28 15  can be many documents on commercial success including
10:25:31 16  failure by Sage if it existed to come up with a similar
10:25:35 17  product.  Any skepticism internal to Sage that would be
10:25:41 18  captured by 33 which you typically see from the business
10:25:45 19  side or an analysis of strengths, weaknesses, threats,
10:25:50 20  opportunities.  It could be responsive to that and to 41.
10:25:56 21  The same is true, we can go through any of those, it can be
10:25:59 22  internal discussions by Defendant about noninfringement
10:26:02 23  which is 39 and so forth.
10:26:04 24          So really the issue here is to try and get -- to
10:26:12 25  not sustain this objection that they're making that they

20

10:26:15 1   only have to give us things that are responsive -- that are
10:26:18 2   supporting their affirmative defenses.
10:26:21 3          THE COURT:  All right.  Who is handling this one
10:26:23 4   for Sage?
10:26:26 5          MR. SURRETTE:  This is Robert Surrette, Your
10:26:28 6   Honor.  First of all, we told PureWick that we're not
10:26:32 7   withholding any documents responsive to these requests based
10:26:36 8   on a fact that a document would achieve our contentions and
10:26:40 9   positions.  In fact, in response to other requests we have
10:26:44 10  agreed to produce relevant documents related to the
10:26:49 11  development, structure, design, operation of the product,
10:26:50 12  the marketing of the product, all of those are not limited
10:26:51 13  to only things that would support our contentions, but just
10:26:54 14  related to the development.  We've also agreed to produce
10:26:59 15  documents relating to the patents-in-suit and we haven't
10:27:04 16  limited those to only documents supporting our contention.
10:27:09 17          Frankly our issue with it is we're not sure what
10:27:11 18  we would search for to refute our contentions.  What do I go
10:27:15 19  to my client and ask them to search for?  We're not
10:27:18 20  withholding something on the basis that it's a negative or
10:27:24 21  does not support our contentions.  But I don't know what I
10:27:27 22  tell my clients to search for.  That's frankly the issue we
10:27:31 23  have with the request.
10:27:36 24          THE COURT:  So I guess, Mr. Shaw, what is it
10:27:40 25  that you think is missing given the representation that we

21

10:27:45  1  just heard from Sage's counsel that they're not going and
10:27:51  2  hiding anything, they told you that they would produce
10:27:55  3  things even if they -- that they found even if they refuted
10:28:00  4  their contentions.  What am I supposed to do with this?
10:28:03  5         MR. SHAW:  For example, Your Honor, we can pick
10:28:06  6  any one, but we start with 32, starts any investigation
10:28:10  7  about invalidity, validity, infringement --
10:28:13  8         THE COURT:  You think this is going to be -- I
10:28:18  9  mean, not privileged, but okay.
10:28:22  10        MR. SHAW:  It might, Your Honor.  After
10:28:25  11 litigating this issue for a long time in front of Judge
10:28:29  12 Stark, yes, there be can be some that are nonprivileged.
10:28:33  13 Here I would go to the client and ask have you had
10:28:36  14 investigations on any of these issues and if you have, let's
10:28:39  15 see the documents.  Take 41, have you done any analysis,
10:28:44  16 done any commentary, have you looked at commercial success
10:28:47  17 of Purewick's products and if you have, they should be
10:28:51  18 produced.
10:28:52  19        On any of the commercial success factors, the
10:28:54  20 same thing, go in and ask the client, what have your
10:28:58  21 marketing folks done, the salespeople done or the scientists
10:29:02  22 done in terms of looking at the commercial success of
10:29:05  23 Purewick's products.  What have your folks done in terms of
10:29:09  24 failing to make the products?  How long did it take?  So
10:29:11  25 each of these categories have specific questions that can be

22

10:29:14  1  asked of clients and we want to make sure are asked instead
10:29:18  2  of just broad questions going in and saying give us things
10:29:21  3  about noninfringement.
10:29:26  4         MR. SURRETTE:  Your Honor, this is Mr. Surrette.
10:29:29  5  If we can take the first one we talked about which is
10:29:31  6  request number 32.  If you look at our response it
10:29:34  7  highlights, you know, the point I was trying to make.  We
10:29:38  8  say that we will produce documents that mention the patents
10:29:44  9  located after a reasonable search.  That's not limited to
10:29:48  10 things that support or refute our contentions.  We're going
10:29:52  11 to produce documents that relate to the patents-in-suit.
10:29:56  12 And as I said earlier, with respect to previous requests,
10:30:00  13 we've agreed to produce development documents and those
10:30:04  14 development documents will encompass not only -- well, could
10:30:10  15 encompass -- if they exist, could encompass things that
10:30:13  16 didn't work out for us and things that did work out for us
10:30:16  17 and we've agreed to produce those.  So I'm really not sure
10:30:20  18 what the dispute is about.
10:30:22  19        THE COURT:  All right.  So this one, I agree
10:30:24  20 with Mr. Surrette that you guys need to go back and discuss
10:30:30  21 this a little bit more.  It seems like there is not really a
10:30:35  22 dispute here that Defendants aren't withholding anything.
10:30:39  23 If Plaintiffs want to go back and talk and say look, we just
10:30:43  24 want to make sure that you have asked folks for this kind of
10:30:46  25 stuff, you can do that and go back and if there is

23

10:30:51  1  additional questions that you think that Defendants need to
10:30:54  2  ask, you can go back and ask them to do that.  And I expect
10:30:58  3  Defendants would be reasonable in doing that.  But I'm not
10:31:01  4  going to order them to do anything right now because it
10:31:04  5  sounds like what they have done is at least in how it's been
10:31:09  6  described is reasonable.
10:31:11  7         Okay.  Let's go to Defendant's issues.  Now we
10:31:20  8  have interrogatory number 6.
10:31:23  9         MR. SURRETTE:  Yes.  Your Honor, this is Robert
10:31:26  10 Surrette again on behalf of Sage.  So interrogatory 6 seeks
10:31:29  11 information related to versions or iterations of the
10:31:33  12 PureWick external female catheter.  And if you look at
10:31:40  13 Purewick's response, they ignore the first part of the
10:31:43  14 interrogatory.  The interrogatory had two parts to it.  The
10:31:46  15 first it ask to identify each version or iteration of the
10:31:54  16 female external catheter ever made, sold, offered for sale,
10:31:58  17 and then it ask for any other product that might be covered,
10:32:01  18 so there is two parts to the interrogatory.  Now --
10:32:05  19        THE COURT:  I have to say that I don't read that
10:32:08  20 from what you have excerpted in the letter.  Hold on.  Let
10:32:13  21 me just go back and look at this interrogatory.
10:32:22  22        So what I recall when I read this was that maybe
10:32:28  23 you asked if they had questions here in the interrogatory
10:32:34  24 because it does seem to me to be asking for every version of
10:32:38  25 the product which is covered.  That is where I -- I don't

24

10:32:45  1  see it as two different interrogatories, or two different
10:32:49  2  subparts.  Tell me how that works.
10:32:51  3         MR. SURRETTE:  All right.  So first of all, if
10:32:53  4  you actually look at interrogatory 6 --
10:32:57  5         THE COURT:  I have it in front of me.
10:32:59  6         MR. SURRETTE:  All right.  Each version or
10:33:01  7  iteration of the PureWick external female catheter product,
10:33:06  8  if you look at the definition which is on page 3, it defines
10:33:13  9  it as each model or iteration of any female external
10:33:17  10 catheter product or system ever made, offered for sale, or
10:33:21  11 sold by Plaintiff, and then it ask for, and any other
10:33:24  12 product and any other products which is covered by the
10:33:31  13 claims and then it later ask, if applicable, how each
10:33:36  14 product or system meets the limitations of the claim.  So
10:33:39  15 from our perspective it's clearly asking for two things,
10:33:43  16 it's asking for each version of the catheter that was ever
10:33:47  17 made, used, offered for sale, and two, any other product
10:33:53  18 that's covered by the patent, and if it is covered, how it's
10:33:57  19 covered.
10:34:00  20        THE COURT:  Okay.  Who is handling this one for
10:34:02  21 the Plaintiff?
10:34:04  22        MR. BIDDINGER:  Your Honor, this is Brian
10:34:06  23 Biddinger again for the Plaintiff.  So our reading of it is
10:34:09  24 consistent with I think what Your Honor's reading of it was,
10:34:13  25 and that's how we've responded to it.  We have identified

25

1  the products that we presently are aware of that are covered
2  by the claims, we have provided claim charts for those, and
3  that's what we thought was responsive to the interrogatory.
4       And, you know, above and beyond that we're
5  producing documents, the prototypes that were in Sage's
6  letter to the Court, that's the first time that's ever been
7  raised with us.
8       THE COURT:  Let me ask you this.  I think you
9  said in your responsive letter that you're agreeable to
10 giving them documents on all of the earlier products,
11 prototypes, let's say that Mr. Surrette has convinced me
12 that this interrogatory arguably ask for two things, every
13 iteration of the PureWick products, and any other products
14 that are covered that you guys claim are covered.  So can
15 you just -- what's the harm in producing that or responding
16 in that way?  You don't have to say if you think those other
17 products are covered if you don't have an opinion, you just
18 have to identify them.  What's the issue with that given
19 that you said you would give them the documents?
20      MR. BIDDINGER:  Sure, Your Honor.  Yeah, we
21 certainly are briefing and will produce documents relating
22 to anything concerning the prior versions, et cetera.  I
23 think the issue with identifying them is that, you know, our
24 understanding is that the founders of this company and the
25 inventors and the couple, married couple actually who made

26

1  these first products did this in their kitchen, their first
2  actual even commercial products were made in their kitchen.
3  And, you know, there are potentially dozens of different
4  individual prototypes that they made over the course of
5  several years.  And identifying -- we certainly can produce
6  any documents that exist about those, but trying to track
7  down each of those prototypes when the product was made,
8  used, it's extremely burdensome for us.  I don't know that
9  we can do that any more or less than they can based on the
10 documents as we produced them.
11      MR. SURRETTE:  Judge, this is Robert Surrette if
12 I may.
13      THE COURT:  Sure.
14      MR. SURRETTE:  Let me try and explain why this
15 is so vitally important.  So Purewick's own discovery
16 responses, they can evidence that the version of the female
17 external catheter was publicly disclosed at least as early
18 as 2014 which is well before the priority date of the '989
19 and the '376 Patents.  In response to interrogatory number 9
20 which is directed towards secondary considerations or
21 objective indicia of nonobviousness and in order for a
22 product to demonstrate that it has to fall within the scope
23 of the claims, they have identified that their product won
24 an award in 2014.  If that is true and that product is
25 within the scope of the claim, then that's an invalidating

27

1  disclosure.  And PureWick, not Sage, is in total control of
2  all of that information.  And if that product wasn't covered
3  by the claims of the patent, then it does not serve as
4  nonobjective or objective indicia of nonobviousness and then
5  would likely be a noninfringing alternative which we talked
6  about a little bit ago.
7       So either way they're the ones that are in
8  control of the information.  This is key prior art.  Not
9  only do we need to know an identification of the products
10 but when they were sold, used, made or disclosed.  And the
11 relevant discovery responses highlight the issue.
12      And if I could just add if you look at appendix
13 A, there are thirteen products there.  The fifth one in, the
14 -- excuse me the sixth one in is labeled 2013-2014.  And it
15 would seem to me that this is the type of thing that you do
16 before you file a lawsuit to determine if there are any
17 prior sales of the product, any prior disclosures of the
18 product.
19      THE COURT:  All right.  Okay.  I get it.
20      Mr. Biddinger, what is your response to that?  I
21 mean, it does seem to me that a lot of this information is
22 within your client's control and, you know, just getting
23 over documents and telling Defendants figure it out for
24 yourself when you have made some assertions in
25 interrogatories about things like secondary considerations,

28

1  why shouldn't you just have to identify the products and say
2  whether they were offered for sale ever and if so, when?
3  How can that be so burdensome?  We're talking about, you
4  just said, two people in a kitchen.
5       MR. BIDDINGER:  Yes.  Your Honor, we certainly
6  are willing to supplement this interrogatory as we discover
7  additional facts, if we discover additional facts.  What
8  we've given them right now is what we know about products
9  that were sold that are covered by any claim in the asserted
10 patent.  I don't believe that there was any other product
11 that was ever sold --
12      THE COURT:  All right.  So this is what I'm
13 going to do.  I'm going to order you to respond to the
14 interrogatory.  Further, to the extent that there were other
15 products that were manufactured and then if they weren't
16 sold, you can say that they weren't sold, but I think that
17 the interrogatory needs to be read a little bit more broadly
18 than just products that you contend are covered by claims of
19 the asserted patents.  So I think that you need to identify
20 the patented products that were made, used, or sold, if they
21 were sold or demonstrated publicly, then identify the date
22 on that.  Now, I understand that this is an ongoing process
23 and that that interrogatory may need to be supplemented, but
24 I think you have to give a little bit more information over
25 now.

29

10:41:17   1         Okay.  What's the next interrogatory we need to

10:41:20   2   deal with, or the next discovery dispute?

10:41:24   3         MR. SURRETTE:  Well, Judge, it's a series of

10:41:27   4   document requests relating to prior art.  And I think to

10:41:30   5   kind of short-circuit things here and try and reach some

10:41:37   6   resolution, the night before we filed our letter, PureWick

10:41:42   7   basically said that they were going to conduct a reasonable

10:41:44   8   search of sources that are likely to contain responsive and

10:41:48   9   relevant information.  And we understand that to encompass

10:41:52   10   the request that we're seeking here.  It may make some sense

10:41:56   11   for us to have a further discussion on it before we try and

10:42:04   12   resolve this with the Court.  The key issue that we had was

10:42:07   13   they told us that they were only going to provide cited

10:42:12   14   prior art to us, and I'm sure the Court is aware that

10:42:17   15   sometimes the most relevant art is art that wasn't cited to

10:42:21   16   the Patent Office.  And it now appears that they are

10:42:24   17   searching for that information.  So I'm not sure if there is

10:42:28   18   a dispute on this anymore, but it may behoove us to have a

10:42:32   19   conversation before we burden the Court with more argument

10:42:37   20   related to it.  I'm always happy to have the parties discuss

10:42:43   21   things further.  And the response that PureWick gave about

10:42:46   22   conducting a reasonable search does seem to be an

10:42:49   23   appropriate response and so I'll give you guys more time to

10:42:53   24   go back and talk and determine whether or not there actually

10:42:56   25   is a dispute.

30

10:42:59   1         MR. SURRETTE:  I guess the only thing I might

10:43:01   2   add, Your Honor -- I'm sorry, I didn't mean to interrupt

10:43:04   3   you -- is that we need this information timely.  We have got

10:43:08   4   invalidity contentions coming up later in the month.  We had

10:43:14   5   to prepare our first set of invalidity contentions, so there

10:43:21   6   is a timing issue that is part of this, obviously that is

10:43:25   7   part of this that is very important to us.

10:43:29   8         THE COURT:  Well, there is a bunch of discovery

10:43:31   9   that I have required the parties to go back and supplement,

10:43:35   10   so it seems to me that you all can go back and talk about

10:43:40   11   the timing of when the various supplementations should occur

10:43:51   12   so that folks can do whatever additional disclosures they

10:43:55   13   need to do.  I assume, Mr. Surrette, that's something that

10:44:01   14   you think the parties can discuss?

10:44:04   15         MR. SURRETTE:  Yes, Your Honor, absolutely.

10:44:09   16         THE COURT:  So I ask that you all do that.  I

10:44:12   17   think that's the end of the issues in the letters.  Is there

10:44:14   18   anything else that we need to discuss?

10:44:20   19         From the Plaintiff?

10:44:22   20         MR. SHAW:  Your Honor, it's John Shaw.  I

10:44:24   21   believe the answer is no.

10:44:25   22         THE COURT:  Okay.  Thank you.

10:44:26   23         And Mr. Surrette, anything from the Defendants?

10:44:29   24         MR. SURRETTE:  Nothing further, Your Honor.

10:44:31   25   Thank you for your time today.

31

10:44:33   1         THE COURT:  Thank you everyone.  Have a good

10:44:35   2   rest of the week.

  3         (Teleconference concluded at 10:44 a.m.)

  4

  5         I hereby certify the foregoing is a true and

      accurate transcript from my stenographic notes in the proceeding.

  6

  7           _/s/ Dale C. Hawkins_

                Official Court Reporter

  8               U.S. District Court

  9

  10

  11

  12

  13

  14

  15

  16

  17

  18

  19

  20

  21

  22

  23

  24

  25

**'**

**'376** [1] - 26:19
**'989** [1] - 26:18

**/**

**/s** [1] - 31:7

**1**

**1** [2] - 3:13, 9:9
**10:00** [1] - 1:10
**10:44** [1] - 31:3
**19-1508(MN** [1] - 1:5

**2**

**2013-2014** [1] - 27:14
**2014** [2] - 26:18, 26:24
**2017** [2] - 5:3, 6:7
**2018** [1] - 5:3
**2019** [1] - 5:1
**2020** [1] - 1:10
**287** [2] - 6:10, 6:13

**3**

**3** [1] - 24:8
**30th** [1] - 3:5
**32** [2] - 21:6, 22:6
**33** [2] - 19:14, 19:18
**39** [1] - 19:23

**4**

**4** [1] - 1:10
**41** [3] - 19:14, 19:20, 21:15

**5**

**5** [6] - 9:11, 9:16, 11:17, 13:9, 14:5, 17:16

**6**

**6** [8] - 3:8, 13:13, 13:15, 13:16, 15:8, 23:8, 23:10, 24:4

**8**

**844** [1] - 1:12

**9**

**9** [1] - 26:19

**A**

**a.m** [2] - 1:10, 31:3
**absolutely** [1] - 30:15
**accept** [2] - 6:25, 16:14
**acceptable** [1] - 17:4
**according** [2] - 9:23, 19:4
**accurate** [1] - 31:5
**accused** [2] - 4:12, 13:23
**achieve** [1] - 20:8
**actual** [1] - 26:2
**add** [4] - 3:17, 17:13, 27:12, 30:2
**additional** [7] - 10:18, 10:19, 14:7, 23:1, 28:7, 30:12
**address** [4] - 3:7, 7:5, 13:15, 18:11
**addressed** [2] - 17:23, 17:24
**admit** [1] - 8:23
**admitted** [2] - 8:12, 8:21
**ago** [2] - 5:1, 27:6
**agree** [5] - 12:12, 12:25, 14:17, 18:19, 22:19
**agreeable** [1] - 25:9
**agreed** [6] - 7:18, 13:18, 20:10, 20:14, 22:13, 22:17
**agreement** [1] - 13:5
**ahead** [1] - 12:16
**allege** [1] - 16:9
**alleged** [3] - 6:8, 13:17, 14:10
**allow** [1] - 4:15
**allowed** [1] - 11:23
**alternative** [12] - 13:17, 14:21, 14:24, 14:25, 15:5, 16:10, 16:12, 16:15, 16:16, 16:23, 17:3, 27:5
**alternatives** [19] - 12:11, 14:8, 14:11, 14:12, 14:18, 14:23, 15:3, 15:15, 15:18, 15:19, 15:20, 16:4, 17:9, 17:17, 17:22, 18:11, 18:15, 18:19
**Amanda** [1] - 2:16
**AMANDA** [1] - 1:23
**analyses** [1] - 19:11
**analysis** [2] - 19:19, 21:15
**ANNE** [1] - 2:4
**Anne** [1] - 2:19

**answer** [2] - 11:6, 30:21
**answered** [1] - 13:12
**anticipate** [1] - 10:2
**anticipation** [1] - 10:16
**Antons** [1] - 2:16
**ANTONS** [1] - 1:23
**APPEARANCES** [2] - 1:18, 2:1
**appendix** [2] - 15:11, 27:12
**applicable** [1] - 24:13
**appropriate** [2] - 18:9, 29:23
**arguably** [1] - 25:12
**argument** [2] - 10:15, 29:19
**art** [5] - 27:8, 29:4, 29:14, 29:15
**aside** [2] - 4:11, 4:17
**assert** [2] - 11:21, 11:22
**asserted** [2] - 28:9, 28:19
**assertions** [1] - 27:24
**associated** [1] - 16:15
**assume** [1] - 30:13
**August** [1] - 1:10
**authority** [2] - 4:8
**available** [2] - 16:13, 17:3
**award** [1] - 26:24
**aware** [2] - 25:1, 29:14

**B**

**based** [4] - 15:3, 16:5, 20:7, 26:9
**basis** [7] - 4:5, 6:5, 6:6, 7:13, 9:20, 10:21, 20:20
**BEFORE** [1] - 1:15
**began** [3] - 4:2, 5:2, 6:9
**beginning** [1] - 5:11
**behalf** [5] - 2:20, 2:23, 5:15, 8:20, 23:10
**behoove** [1] - 29:18
**between** [1] - 5:22
**beyond** [4] - 3:17, 10:22, 19:7, 25:4
**bickering** [1] - 7:10
**BIDDINGER** [12] - 1:22, 3:19, 4:14, 4:25, 7:16, 10:24, 13:14, 15:25, 16:25, 24:22, 25:20, 28:5
**Biddinger** [8] - 2:16, 3:15, 7:17, 9:12,

**answer** 13:14, 15:24, 24:23, 27:20
**bit** [5] - 7:15, 22:21, 27:6, 28:17, 28:24
**BRIAN** [1] - 1:22
**Brian** [5] - 2:16, 3:15, 7:16, 13:14, 14:22
**BRICE** [1] - 2:7
**Brice** [1] - 2:21
**brief** [1] - 15:11
**briefing** [1] - 25:21
**briefly** [1] - 3:1
**broad** [1] - 22:2
**broadly** [2] - 18:6, 28:17
**bunch** [2] - 18:21, 30:8
**burden** [1] - 29:19
**burdensome** [2] - 26:8, 28:3
**business** [1] - 19:18
**BY** [7] - 1:20, 1:22, 1:23, 1:23, 2:4, 2:7, 2:7

**C**

**C.A** [1] - 1:5
**capture** [1] - 19:6
**captured** [1] - 19:18
**case** [16] - 8:4, 8:10, 8:11, 8:13, 8:14, 9:24, 10:1, 10:2, 10:8, 10:12, 11:3, 12:17, 14:4, 15:18, 17:22, 18:6
**cases** [1] - 17:23
**categories** [1] - 21:25
**catheter** [6] - 23:12, 23:16, 24:7, 24:10, 24:16, 26:17
**certainly** [5] - 12:17, 18:9, 25:21, 26:5, 28:5
**certify** [1] - 31:5
**cetera** [1] - 25:22
**change** [1] - 16:5
**charts** [1] - 25:2
**CHERNY** [1] - 1:23
**Cherny** [1] - 2:16
**circuit** [1] - 29:5
**cited** [2] - 29:13, 29:15
**claim** [14] - 8:4, 13:24, 15:1, 16:2, 16:5, 16:8, 17:20, 17:23, 18:8, 24:14, 25:2, 25:14, 26:25, 28:9
**claims** [10] - 7:22, 7:23, 7:24, 14:21, 16:21, 24:13, 25:2,

**26:23, 27:3, 28:18
**clear** [3] - 5:12, 7:6, 18:18
**clearly** [2] - 11:13, 24:15
**client** [3] - 20:19, 21:13, 21:20
**client's** [1] - 27:22
**clients** [2] - 20:22, 22:1
**coming** [3] - 15:4, 15:19, 30:4
**commentary** [1] - 21:16
**commercial** [7] - 4:13, 19:14, 19:15, 21:16, 21:19, 21:22, 26:2
**commit** [1] - 10:19
**company** [1] - 25:24
**compel** [1] - 6:11
**complaint** [3] - 5:1, 6:1, 7:20
**complied** [2] - 3:24, 8:16
**Conaway** [1] - 2:20
**CONAWAY** [1] - 2:3
**concerning** [2] - 13:16, 25:22
**concluded** [1] - 31:3
**conduct** [1] - 29:7
**conducting** [3] - 16:8, 17:25, 29:22
**confer** [4] - 3:1, 7:2, 7:4, 7:7
**considerations** [2] - 26:20, 27:25
**considering** [1] - 15:21
**consistent** [1] - 24:24
**constitutes** [1] - 14:21
**construction** [8] - 13:25, 15:2, 16:2, 16:5, 16:9, 17:21, 17:23, 18:8
**constructive** [2] - 6:10, 6:13
**construed** [1] - 14:22
**contain** [1] - 29:8
**container** [1] - 15:1
**contend** [1] - 28:18
**contended** [1] - 13:18
**contention** [2] - 18:7, 20:16
**contentions** [9] - 11:20, 20:8, 20:13, 20:18, 20:21, 21:4, 22:10, 30:4, 30:5
**context** [1] - 19:9
**CONTINUED** [1] - 2:1
**control** [5] - 11:1,

11:9, 27:1, 27:8,
27:22
**conversation** [1] -
29:19
**convinced** [1] - 25:11
**CORPORATION** [1] -
1:4
**costs** [1] - 16:15
**counsel** [1] - 2:12,
8:9, 21:1
**Counsel** [2] - 1:25, 2:8
**counted** [2] - 9:24,
10:17
**counterclaims** [1] -
19:5
**couple** [3] - 7:17,
25:25
**course** [1] - 26:4
**COURT** [46] - 1:1,
2:12, 2:17, 2:24,
3:11, 4:21, 5:4, 5:10,
5:18, 6:2, 6:15, 7:8,
8:18, 8:24, 9:5, 9:14,
9:17, 10:9, 10:23,
11:10, 11:18, 12:3,
12:16, 12:25, 14:13,
14:16, 15:24, 16:17,
17:12, 18:4, 19:1,
20:3, 20:24, 21:8,
22:19, 23:19, 24:5,
24:20, 25:8, 26:13,
27:19, 28:12, 30:8,
30:16, 30:22, 31:1
**Court** [10] - 1:15, 6:11,
7:5, 13:24, 25:6,
29:12, 29:14, 29:19,
31:7, 31:8
**covered** [19] - 11:17,
15:14, 15:22, 16:20,
16:23, 23:17, 23:25,
24:12, 24:18, 24:19,
25:1, 25:14, 25:17,
27:2, 28:9, 28:18
**crystalize** [1] - 7:3
**current** [2] - 4:6, 13:21
**custody** [2] - 11:1,
11:9
**customer** [3] - 6:6,
7:13, 7:15
**customers** [8] - 4:15,
7:21, 7:23, 7:25, 8:4,
8:6, 16:14, 17:4

### D

**Dale** [1] - 31:7
**data** [2] - 3:19, 4:5
**date** [7] - 4:13, 6:8,
6:24, 17:10, 17:11,
26:18, 28:21

**dates** [2] - 4:1, 4:11
**deal** [3] - 3:2, 19:14,
29:2
**dealing** [1] - 11:10
**decided** [1] - 7:5
**decision** [1] - 9:7
**dedicated** [1] - 10:20
**Defendant** [4] - 1:8,
2:8, 10:7, 19:22
**Defendant's** [3] - 3:6,
3:9, 23:7
**defendants** [1] - 13:17
**Defendants** [12] - 8:5,
8:10, 8:15, 9:6, 13:1,
13:6, 18:14, 22:22,
23:1, 23:3, 27:23,
30:23
**defense** [3] - 10:21,
12:14, 12:20
**defenses** [18] - 9:20,
10:1, 10:4, 11:5,
11:14, 11:21, 11:23,
12:1, 12:9, 12:23,
12:24, 13:10, 19:5,
19:7, 19:12, 19:13,
20:2
**defines** [1] - 24:8
**definition** [1] - 24:8
**DELAWARE** [1] - 1:2
**Delaware** [1] - 1:13
**demonstrate** [1] -
26:22
**demonstrated** [1] -
28:21
**denied** [1] - 6:11
**described** [1] - 23:6
**design** [1] - 20:11
**designed** [1] - 19:6
**despite** [1] - 6:6
**determination** [4] -
6:18, 12:6, 13:24,
16:22
**determine** [2] - 27:16,
29:24
**determining** [2] - 8:4,
14:20
**development** [4] -
20:11, 20:14, 22:13,
22:14
**device** [1] - 15:10
**different** [3] - 24:1,
26:3
**difficult** [2] - 13:2,
16:11
**direct** [4] - 4:16, 7:22,
8:1, 8:2
**directed** [4] - 12:9,
12:23, 26:20
**directly** [1] - 7:24
**disclosed** [2] - 26:17,

27:10
**disclosure** [1] - 27:1
**disclosures** [2] -
27:17, 30:12
**discover** [3] - 14:7,
28:6, 28:7
**discovery** [20] - 4:5,
4:16, 8:2, 9:8, 13:8,
13:18, 13:21, 13:22,
14:10, 14:19, 16:8,
16:11, 17:16, 18:2,
18:11, 18:20, 26:15,
27:11, 29:2, 30:8
**Discovery** [1] - 1:11
**discuss** [5] - 18:23,
22:20, 29:20, 30:14,
30:18
**discussion** [1] - 29:11
**discussions** [1] -
19:22
**dispute** [6] - 9:4,
22:18, 22:22, 29:2,
29:18, 29:25
**Dispute** [1] - 1:11
**disputes** [2] - 3:3, 3:4
**distinction** [1] - 8:11
**district** [1] - 9:23
**DISTRICT** [2] - 1:1, 1:2
**District** [3] - 1:15,
18:6, 31:8
**document** [3] - 18:21,
20:8, 29:4
**documents** [25] - 4:2,
5:6, 5:16, 5:17, 5:19,
6:7, 19:4, 19:13,
19:15, 20:7, 20:10,
20:15, 20:16, 21:15,
22:8, 22:11, 22:13,
22:14, 25:5, 25:10,
25:19, 25:21, 26:6,
26:10, 27:23
**done** [9] - 7:8, 11:2,
21:15, 21:16, 21:21,
21:22, 21:23, 23:5
**down** [2] - 11:24, 26:7
**dozens** [1] - 26:3
**duplicated** [1] - 12:13
**duty** [1] - 13:7

### E

**early** [3] - 10:2, 18:7,
26:17
**either** [2] - 5:2, 27:7
**element** [2] - 15:1,
15:4
**eleven** [3] - 10:7,
11:14, 11:15
**EMANUEL** [1] - 1:22
**Emanuel** [2] - 2:15,

3:15
**encompass** [4] -
22:14, 22:15, 29:9
**encourage** [1] - 18:7
**end** [4] - 5:2, 9:10,
18:22, 30:17
**especially** [2] - 15:2,
15:21
**ESQ** [8] - 1:20, 1:22,
1:23, 1:23, 2:4, 2:6,
2:7, 2:7
**essence** [1] - 11:15
**establish** [2] - 6:8,
6:12
**established** [3] - 6:9,
9:3, 9:8
**et** [1] - 25:22
**event** [1] - 13:4
**evidence** [3] - 3:23,
4:14, 26:16
**exactly** [4] - 4:22, 10:3
**example** [4] - 14:23,
15:11, 19:10, 21:5
**excerpted** [1] - 23:20
**excuse** [1] - 27:14
**exercise** [2] - 15:6,
18:1
**exist** [2] - 22:15, 26:6
**existed** [1] - 19:16
**expanded** [1] - 10:7
**expanding** [1] - 10:22
**expect** [3] - 6:19,
16:24, 23:2
**expert** [2] - 18:11,
18:20
**experts** [1] - 17:25
**explain** [4] - 12:10,
17:25, 26:14
**explanation** [1] -
13:23
**explore** [1] - 18:13
**extent** [4] - 10:5, 13:9,
17:8, 28:14
**external** [5] - 23:12,
23:16, 24:7, 24:9,
26:17
**extra** [1] - 12:20
**extremely** [1] - 26:8

### F

**face** [1] - 6:25
**fact** [4] - 6:6, 8:20,
20:8, 20:9
**factors** [1] - 21:19
**facts** [3] - 8:20, 28:7
**factual** [2] - 9:20, 19:6
**failing** [1] - 21:24
**failure** [2] - 6:12,
19:16

**fall** [1] - 26:22
**falling** [1] - 11:24
**far** [2] - 4:21, 4:23
**fascia** [1] - 3:23
**feasibility** [1] - 16:12
**feasible** [1] - 14:12
**female** [5] - 23:12,
23:16, 24:7, 24:9,
26:16
**fifth** [1] - 27:13
**fight** [2] - 6:2, 6:4
**figure** [1] - 27:23
**file** [1] - 27:16
**filed** [4] - 5:1, 5:23,
6:1, 29:6
**filing** [3] - 3:20, 5:21,
7:19
**financial** [4] - 5:17,
5:19, 5:24, 6:7
**financials** [1] - 3:19
**fine** [1] - 18:16
**first** [22] - 3:3, 3:8,
4:13, 5:8, 5:16, 5:17,
5:19, 5:23, 6:8, 7:18,
9:22, 18:20, 19:10,
20:6, 22:5, 23:13,
23:15, 24:3, 25:6,
26:1, 30:5
**flavors** [1] - 10:16
**focused** [1] - 19:10
**folks** [6] - 21:21,
21:23, 22:24, 30:12
**follow** [3] - 4:16, 7:6,
8:2
**follow-up** [2] - 4:16,
8:2
**FOR** [1] - 1:2
**foregoing** [1] - 31:5
**forgot** [1] - 5:11
**formed** [2] - 17:6, 17:8
**formulate** [2] - 16:2,
17:17
**formulated** [1] - 16:20
**forth** [2] - 7:11, 19:23
**forward** [1] - 13:8
**founders** [1] - 25:24
**frankly** [4] - 4:6, 7:1,
20:17, 20:22
**FRANTZEN** [4] - 2:7,
14:14, 14:17, 17:14
**Frantzen** [3] - 2:21,
14:15, 17:12
**front** [2] - 21:11, 24:5
**full** [1] - 4:20
**future** [2] - 11:3, 17:11

### G

**GAZA** [2] - 2:4, 2:19
**Gaza** [1] - 2:20

**generally** [2] - 13:19, 14:22
**given** [4] - 4:6, 20:25, 25:18, 28:8
**grant** [3] - 9:5, 9:9, 13:9
**grouped** [1] - 19:2
**grouping** [1] - 18:25
**guess** [6] - 7:12, 15:17, 16:5, 18:2, 20:24, 30:1
**guys** [4] - 13:4, 22:20, 25:14, 29:23

**H**

**handle** [1] - 14:15
**handling** [2] - 20:3, 24:20
**happy** [2] - 12:18, 29:20
**harm** [1] - 25:15
**Hawkins** [1] - 31:7
**hear** [2] - 3:3, 7:10
**heard** [1] - 21:1
**heart** [1] - 9:4
**HELD** [1] - 2:6
**Held** [1] - 2:22
**helps** [1] - 10:1
**hereby** [1] - 31:5
**hiding** [1] - 21:2
**highlight** [1] - 27:11
**highlights** [1] - 22:7
**highly** [1] - 15:2
**hold** [1] - 23:20
**Honor** [34] - 2:14, 2:19, 3:9, 3:14, 4:25, 5:8, 5:14, 7:1, 7:16, 8:9, 8:19, 9:13, 9:15, 10:5, 10:13, 11:12, 12:21, 13:14, 14:14, 15:25, 17:14, 18:24, 20:6, 21:5, 21:10, 22:4, 23:9, 24:22, 25:20, 28:5, 30:2, 30:15, 30:20, 30:24
**Honor's** [1] - 24:24
**HONORABLE** [1] - 1:15
**hundred** [1] - 11:22
**hypothetical** [5] - 15:3, 15:4, 15:20, 16:13, 18:1

**I**

**identical** [1] - 8:21
**identification** [2] - 7:20, 27:9
**identified** [5] - 8:23,

11:13, 15:13, 24:25, 26:23
**identifies** [1] - 3:25
**identify** [15] - 4:15, 4:18, 8:1, 12:11, 15:9, 17:6, 17:7, 18:10, 18:15, 18:19, 23:15, 25:18, 28:1, 28:19, 28:21
**identifying** [4] - 7:25, 14:8, 15:23, 26:5
**ignore** [1] - 23:13
**important** [8] - 7:21, 8:2, 8:3, 8:7, 8:11, 14:9, 26:15, 30:7
**IN** [1] - 1:1
**inappropriate** [1] - 18:2
**including** [4] - 4:13, 13:23, 14:11, 19:15
**indicia** [2] - 26:21, 27:4
**indirect** [1] - 4:14
**individual** [2] - 10:17, 26:4
**information** [38] - 3:18, 3:22, 4:3, 4:6, 4:7, 4:9, 4:11, 5:25, 6:5, 6:12, 7:14, 8:25, 10:22, 11:1, 11:4, 11:8, 11:16, 12:4, 13:7, 13:10, 13:16, 14:2, 14:3, 14:6, 14:7, 14:17, 15:15, 17:18, 18:1, 19:7, 23:11, 27:2, 27:8, 27:21, 28:24, 29:9, 29:17, 30:3
**infringe** [2] - 7:24, 12:10
**infringement** [7] - 4:13, 4:14, 4:16, 6:9, 7:22, 12:10, 21:7
**infringers** [2] - 8:1, 8:2
**infringes** [1] - 13:24
**instead** [2] - 17:10, 22:1
**Integrations** [2] - 6:10, 8:10
**internal** [3] - 19:11, 19:17, 19:22
**internet** [2] - 15:12, 17:19
**interrogatories** [17] - 4:4, 9:25, 10:3, 10:17, 10:20, 11:4, 11:16, 11:17, 12:1, 12:6, 12:12, 12:23, 13:12, 18:5, 18:7,

24:1, 27:25
**interrogatory** [43] - 3:8, 3:10, 3:13, 3:25, 4:20, 8:12, 9:9, 9:11, 9:16, 9:19, 10:6, 11:13, 11:17, 11:20, 12:2, 12:20, 13:3, 13:8, 13:13, 13:15, 13:16, 13:19, 14:5, 14:15, 15:8, 17:16, 23:8, 23:10, 23:14, 23:18, 23:21, 23:23, 24:4, 25:3, 25:12, 26:19, 28:6, 28:14, 28:17, 28:23, 29:1
**interrupt** [1] - 30:2
**invalidating** [1] - 26:25
**invalidity** [6] - 12:22, 19:10, 19:11, 21:7, 30:4, 30:5
**inventors** [1] - 25:25
**investigation** [1] - 21:6
**investigations** [1] - 21:14
**involved** [1] - 17:24
**irrelevant** [1] - 13:18
**issue** [16] - 3:17, 7:4, 13:20, 16:25, 17:19, 17:20, 18:6, 19:24, 20:17, 20:22, 21:11, 25:18, 25:23, 27:11, 29:12, 30:6
**issues** [11] - 4:13, 7:3, 7:5, 10:14, 10:15, 13:25, 18:13, 19:11, 21:14, 23:7, 30:17
**iteration** [4] - 23:15, 24:7, 24:9, 25:13
**iterations** [1] - 23:11

**J**

**John** [4] - 2:14, 9:15, 18:24, 30:20
**JOHN** [1] - 1:20
**joined** [1] - 2:20
**joining** [1] - 2:15
**judge** [2] - 12:15, 26:11
**Judge** [3] - 1:15, 21:11, 29:3
**July** [1] - 3:5

**K**

**KELLER** [1] - 1:19
**key** [2] - 27:8, 29:12
**kind** [4] - 15:5, 15:8,

24:1, 27:25
22:24, 29:5
**King** [1] - 1:12
**kitchen** [3] - 26:1, 26:2, 28:4

**L**

**labeled** [1] - 27:14
**last** [2] - 4:10, 7:4
**law** [1] - 9:24
**lawsuit** [4] - 3:20, 5:21, 5:23, 27:16
**least** [3] - 17:23, 23:5, 26:17
**legal** [1] - 9:20
**less** [1] - 26:9
**letter** [8] - 3:4, 3:12, 3:17, 18:22, 23:20, 25:6, 25:9, 29:6
**letters** [4] - 2:25, 3:1, 7:9, 30:17
**likely** [2] - 27:5, 29:8
**limit** [1] - 10:6
**limitations** [1] - 24:14
**limited** [4] - 19:12, 20:12, 20:16, 22:9
**listen** [1] - 7:8
**litigating** [1] - 21:11
**LLC** [1] - 1:7
**LLP** [2] - 1:19, 2:3
**located** [1] - 22:9
**look** [8] - 12:5, 22:6, 22:23, 23:12, 23:21, 24:4, 24:8, 27:12
**looked** [1] - 21:16
**looking** [3] - 3:11, 12:8, 21:22
**lost** [2] - 8:3, 8:6

**M**

**MALLOY** [1] - 2:6
**Malloy** [1] - 2:22
**management** [1] - 10:2
**manufactured** [1] - 28:15
**mark** [1] - 4:1
**marked** [7] - 4:19, 8:13, 8:14, 8:22, 8:23, 8:25, 9:3
**market** [1] - 15:4
**marketing** [2] - 20:12, 21:21
**marking** [11] - 3:24, 4:1, 4:11, 4:18, 5:7, 6:12, 6:16, 6:22, 7:1, 8:16, 9:7
**markings** [1] - 4:8
**married** [1] - 25:25

**MARYELLEN** [1] - 1:15
**matter** [5] - 8:24, 9:23, 13:20, 14:1, 14:2
**MCANDREWS** [1] - 2:6
**McAndrews** [1] - 2:22
**mean** [6] - 6:17, 11:21, 15:25, 21:9, 27:21, 30:2
**meet** [4] - 3:1, 7:2, 7:4, 7:6
**meets** [1] - 24:14
**mention** [1] - 22:8
**mentioned** [1] - 8:10
**method** [1] - 7:23
**might** [5] - 14:24, 14:25, 21:10, 23:17, 30:1
**mind** [3] - 18:14, 18:16, 18:18
**missing** [1] - 20:25
**model** [1] - 24:9
**month** [1] - 30:4
**monthly** [3] - 6:5, 7:13, 7:15
**months** [1] - 17:21
**morning** [7] - 2:12, 2:14, 2:17, 2:19, 2:21, 2:24, 3:14
**most** [1] - 29:15
**motion** [2] - 6:11, 9:9
**move** [1] - 7:12
**MR** [45] - 2:14, 3:9, 3:14, 4:25, 5:8, 5:14, 5:24, 6:4, 6:20, 7:16, 8:19, 9:2, 9:13, 9:15, 9:18, 10:12, 10:24, 11:12, 11:25, 12:7, 12:15, 12:17, 12:21, 13:14, 15:25, 16:25, 18:24, 19:2, 20:5, 21:5, 21:10, 22:4, 23:9, 24:3, 24:6, 24:22, 25:20, 26:11, 26:14, 28:5, 29:3, 30:1, 30:15, 30:20, 30:24
**MS** [4] - 2:19, 14:14, 14:17, 17:14
**multiple** [4] - 9:21, 9:24, 10:6, 10:14

**N**

**necessary** [1] - 13:22
**need** [19] - 4:15, 7:13, 7:15, 7:22, 9:1, 12:20, 16:1, 17:6, 17:16, 18:23, 22:20,

23:1, 27:9, 28:19, 28:23, 29:1, 30:3, 30:13, 30:18
**needed** [1] - 10:3
**needs** [2] - 18:12, 28:17
**negative** [1] - 20:20
**negotiation** [1] - 16:13
**next** [3] - 9:11, 29:1, 29:2
**night** [1] - 29:6
**noninfringement** [4] - 12:22, 13:3, 19:22, 22:3
**noninfringing** [30] - 12:11, 13:17, 14:8, 14:10, 14:18, 14:21, 14:22, 14:23, 14:25, 15:3, 15:5, 15:15, 15:17, 15:19, 15:20, 16:3, 16:4, 16:7, 16:10, 16:14, 16:16, 16:23, 17:3, 17:9, 17:17, 17:22, 18:11, 18:14, 18:19, 27:5
**nonobjective** [1] - 27:4
**nonobviousness** [2] - 26:21, 27:4
**nonprivileged** [1] - 21:12
**NOREIKA** [1] - 1:15
**note** [1] - 4:10
**notes** [1] - 31:5
**nothing** [1] - 30:24
**notice** [2] - 6:10, 6:13
**notion** [1] - 16:1
**number** [20] - 3:8, 3:13, 7:18, 9:9, 9:11, 9:16, 9:25, 12:18, 13:9, 13:13, 13:15, 13:16, 14:5, 15:8, 17:16, 17:19, 17:20, 22:6, 23:8, 26:19

## O

**objection** [2] - 11:7, 19:25
**objections** [3] - 9:21, 9:22, 19:8
**objective** [2] - 26:21, 27:4
**obtain** [1] - 14:9
**obviously** [2] - 16:6, 30:6
**obviousness** [1] - 10:16
**occur** [1] - 30:11
**OF** [1] - 1:2

**offered** [4] - 23:16, 24:10, 24:17, 28:2
**Office** [1] - 29:16
**Official** [1] - 31:7
**often** [1] - 15:2
**omnibus** [1] - 12:2
**one** [26] - 3:5, 6:23, 7:18, 8:8, 8:25, 9:11, 9:13, 9:18, 9:21, 10:14, 11:11, 11:24, 12:4, 12:13, 12:19, 12:25, 17:19, 20:3, 21:6, 22:5, 22:19, 24:20, 27:13, 27:14
**ones** [5] - 12:5, 12:9, 13:5, 13:6, 27:7
**ongoing** [2] - 13:21, 28:22
**operation** [1] - 20:11
**opinion** [3] - 17:6, 17:8, 25:17
**opponent** [1] - 10:25
**opportunities** [1] - 19:20
**opportunity** [1] - 18:12
**order** [4] - 8:5, 23:4, 26:21, 28:13
**outlined** [1] - 3:4
**overbroad** [1] - 11:13
**overlap** [1] - 13:1
**overruled** [1] - 11:7
**own** [2] - 16:22, 26:15

## P

**page** [1] - 24:8
**part** [5] - 9:25, 11:3, 23:13, 30:6, 30:7
**particular** [3] - 7:21, 7:23, 8:6
**particularly** [1] - 7:23
**parties** [4] - 14:20, 29:20, 30:9, 30:14
**parts** [2] - 23:14, 23:18
**party** [2] - 10:25, 17:2
**patent** [4] - 6:23, 24:18, 27:3, 28:10
**Patent** [1] - 29:16
**patented** [1] - 28:20
**patents** [5] - 15:23, 20:15, 22:8, 22:11, 28:19
**Patents** [1] - 26:19
**patents-in-suit** [3] - 15:23, 20:15, 22:11
**people** [1] - 28:4
**period** [3] - 4:24, 8:17, 16:8

**PERSICHETTI** [1] - 2:7
**Persichetti** [1] - 2:22
**perspective** [1] - 24:15
**pick** [1] - 21:5
**picture** [2] - 6:22, 6:23
**pictures** [1] - 17:19
**Plaintiff** [10] - 1:5, 1:25, 3:15, 7:12, 7:17, 8:12, 24:11, 24:21, 24:23, 30:19
**Plaintiff's** [2] - 3:6, 3:12
**Plaintiffs** [3] - 3:3, 13:23, 22:23
**point** [17] - 3:2, 4:4, 4:19, 6:14, 6:17, 7:2, 11:6, 14:4, 14:20, 15:6, 15:7, 15:17, 15:18, 17:15, 18:3, 18:5, 22:7
**position** [6] - 3:6, 3:21, 4:17, 5:5, 6:11, 16:17, 16:20, 17:4
**positions** [4] - 16:3, 16:6, 19:8, 20:9
**possession** [1] - 11:9
**post** [1] - 16:8
**postponing** [1] - 16:9
**potentially** [2] - 8:1, 26:3
**Power** [2] - 6:10, 8:10
**practice** [1] - 9:23
**practiced** [1] - 7:24
**premature** [2] - 15:6, 17:15
**prematurity** [1] - 11:7
**prepare** [1] - 30:5
**present** [1] - 2:23
**presently** [3] - 11:1, 11:8, 25:1
**pretty** [2] - 9:18, 16:11
**previous** [1] - 22:12
**prima** [1] - 3:23
**priority** [1] - 26:18
**privileged** [1] - 21:9
**proceeding** [1] - 31:5
**process** [3] - 7:2, 7:7, 28:22
**produce** [11] - 5:6, 19:4, 20:10, 20:14, 21:2, 22:8, 22:11, 22:13, 22:17, 25:21, 26:5
**produced** [9] - 5:9, 5:16, 5:19, 5:20, 5:22, 5:24, 6:7, 21:18, 26:10

**producing** [3] - 4:2, 25:5, 25:15
**product** [25] - 5:25, 6:23, 8:13, 8:14, 13:24, 17:2, 19:17, 20:11, 20:12, 23:17, 23:25, 24:7, 24:10, 24:12, 24:14, 24:17, 26:7, 26:22, 26:23, 26:24, 27:2, 27:17, 27:18, 28:10
**PRODUCTS** [1] - 1:7
**products** [24] - 4:12, 4:18, 8:22, 15:22, 16:19, 21:17, 21:23, 21:24, 24:12, 25:1, 25:10, 25:13, 25:17, 26:1, 26:2, 27:9, 27:13, 28:1, 28:8, 28:15, 28:18, 28:20
**profits** [1] - 8:4
**prototype** [1] - 17:1
**prototypes** [5] - 16:18, 25:5, 25:11, 26:4, 26:7
**prove** [1] - 8:5
**proved** [1] - 8:15
**proves** [1] - 17:15
**provide** [9] - 3:18, 3:22, 4:19, 6:21, 7:19, 14:3, 14:6, 17:10, 29:13
**provided** [8] - 3:23, 3:25, 4:3, 4:7, 6:21, 13:20, 17:18, 25:2
**publicly** [3] - 15:12, 26:17, 28:21
**PureWick** [12] - 2:15, 3:13, 3:24, 8:21, 15:10, 20:6, 23:12, 24:7, 25:13, 27:1, 29:6, 29:21
**PUREWICK** [1] - 1:4
**Purewick's** [4] - 21:17, 21:23, 23:13, 26:15
**put** [1] - 11:5
**puts** [1] - 16:10
**putting** [2] - 4:11, 4:17

## Q

**questions** [4] - 21:25, 22:2, 23:1, 23:23
**Quinn** [2] - 2:15, 3:15
**QUINN** [1] - 1:22

## R

**raised** [1] - 25:7

**ranging** [1] - 19:6
**reach** [1] - 29:5
**read** [4] - 7:8, 23:19, 23:22, 28:17
**reading** [2] - 24:23, 24:24
**real** [1] - 15:19
**really** [10] - 4:4, 5:6, 9:4, 13:20, 14:20, 16:1, 18:23, 19:24, 22:17, 22:21
**reason** [1] - 10:13
**reasonable** [6] - 14:11, 22:9, 23:3, 23:6, 29:7, 29:22
**reasons** [1] - 7:18
**reciprocally** [1] - 10:11
**record** [2] - 4:6, 5:13
**reduce** [1] - 12:18
**refer** [1] - 13:3
**refute** [2] - 20:18, 22:10
**refuted** [1] - 21:3
**regard** [1] - 17:20
**relate** [1] - 22:11
**related** [7] - 3:18, 5:17, 13:16, 20:10, 20:14, 23:11, 29:20
**relating** [3] - 20:15, 25:21, 29:4
**relatively** [2] - 4:25, 16:7
**relevant** [9] - 4:12, 6:14, 8:17, 14:18, 15:2, 20:10, 27:11, 29:9, 29:15
**rely** [1] - 14:9
**relying** [1] - 17:19
**repetitive** [1] - 13:5
**Reporter** [1] - 31:7
**representation** [1] - 20:25
**request** [7] - 3:7, 9:6, 13:9, 15:9, 20:23, 22:6, 29:10
**requested** [5] - 3:18, 12:7, 13:10, 13:11
**requesting** [1] - 5:20
**requests** [7] - 18:21, 19:2, 19:5, 20:7, 20:9, 22:12, 29:4
**required** [2] - 6:25, 30:9
**requirement** [1] - 8:17
**reservoir** [1] - 14:25
**resolution** [1] - 29:6
**resolve** [1] - 29:12
**respect** [3] - 16:18, 18:23, 22:12

respond [4] - 11:3,
  11:8, 13:6, 28:13
responded [1] - 24:25
responding [1] -
  25:15
response [11] - 3:25,
  4:20, 13:21, 19:3,
  20:9, 22:6, 23:13,
  26:19, 27:20, 29:21,
  29:23
responses [5] - 8:12,
  9:10, 10:15, 26:16,
  27:11
responsive [7] - 3:12,
  19:20, 20:1, 20:7,
  25:3, 25:9, 29:8
rest [1] - 31:2
reviewed [1] - 2:25
ROBERT [1] - 2:6
Robert [6] - 2:21,
  5:14, 8:19, 20:5,
  23:9, 26:11

**S**

sAGE [1] - 1:7
Sage [14] - 2:18, 2:20,
  2:23, 3:18, 5:5, 5:15,
  8:20, 14:15, 19:3,
  19:16, 19:17, 20:4,
  23:10, 27:1
Sage's [4] - 3:21, 9:20,
  21:1, 25:5
sale [2] - 23:16, 24:10,
  24:17, 28:2
sales [8] - 3:19, 4:5,
  4:6, 5:2, 7:20, 8:6,
  27:17
salespeople [1] -
  21:21
SANDRA [1] - 2:7
Sandra [2] - 2:21,
  14:15
satisfied [2] - 3:23,
  5:7
scientists [1] - 21:21
scope [2] - 26:22,
  26:25
search [6] - 20:18,
  20:19, 20:22, 22:9,
  29:8, 29:22
searching [1] - 29:17
second [1] - 10:1
secondary [3] - 15:7,
  26:20, 27:25
see [5] - 4:4, 4:8,
  19:18, 21:15, 24:1
seeking [1] - 29:10
seeks [1] - 23:10
seem [5] - 11:2, 23:24,

27:15, 27:21, 29:22
selling [3] - 4:23, 5:23,
  5:25
sense [6] - 3:2, 10:19,
  11:19, 18:8, 19:9,
  29:10
separate [2] - 11:15,
  12:23
series [1] - 29:3
serve [1] - 27:3
served [2] - 15:9
set [1] - 30:5
several [1] - 26:5
SHAW [14] - 1:19,
  1:20, 2:14, 9:13,
  9:15, 9:18, 10:12,
  12:7, 12:17, 18:24,
  19:2, 21:5, 21:10,
  30:20
Shaw [9] - 2:15, 9:15,
  9:17, 10:9, 12:3,
  12:15, 18:24, 20:24,
  30:20
Shaw's [1] - 3:4
SHEA [1] - 2:4
short [3] - 4:25, 16:7,
  29:5
short-circuit [1] - 29:5
show [2] - 4:16, 7:22
shown [2] - 6:16,
  15:12
side [1] - 19:19
similar [2] - 14:5,
  19:16
single [1] - 9:19
six [1] - 12:7
sixth [1] - 27:14
skepticism [1] - 19:17
sold [12] - 4:12, 7:25,
  8:5, 23:16, 24:11,
  27:10, 28:9, 28:11,
  28:16, 28:20, 28:21
sometime [1] - 5:3
sometimes [1] - 29:15
somewhat [1] - 14:4
sorry [8] - 3:11, 3:12,
  5:10, 5:14, 8:8, 9:14,
  12:15, 30:2
sort [1] - 18:22
sought [2] - 11:16,
  13:19
sounds [1] - 23:5
sources [1] - 29:8
speaking [1] - 14:22
specific [1] - 21:25
specifically [1] - 8:9
stage [1] - 17:8
STARGATT [1] - 2:3
Stark [1] - 21:12
start [5] - 3:13, 5:11,

5:13, 15:19, 21:6
started [8] - 4:18,
  4:22, 5:17, 5:23,
  5:25, 6:22, 6:24, 7:1
starts [1] - 21:6
statement [1] - 6:22
states [1] - 13:21
STATES [1] - 1:1
States [1] - 1:15
statute [1] - 3:24
stenographic [1] -
  31:5
Steve [1] - 2:15
STEVEN [1] - 1:23
still [1] - 7:4
stop [1] - 5:10
straightforward [1] -
  9:19
Street [1] - 1:12
strengths [1] - 19:19
structure [1] - 20:11
stuff [2] - 7:9, 22:25
sub [1] - 11:14
sub-defenses [1] -
  11:14
subject [1] - 14:19
submitted [1] - 15:11
subparts [1] - 9:22,
  10:6, 24:2
substance [1] - 3:2
substantive [1] - 9:7
success [6] - 4:14,
  19:14, 19:15, 21:16,
  21:19, 21:22
sufficiently [1] - 8:15
suit [3] - 15:23, 20:15,
  22:11
SULLIVAN [1] - 1:22
supplement [6] - 13:8,
  13:22, 14:7, 18:17,
  28:6, 30:9
supplemental [1] - 3:1
supplementations [1]
  - 30:11
supplemented [1] -
  28:23
support [4] - 4:3,
  20:13, 20:21, 22:10
supporting [3] -
  19:13, 20:2, 20:16
supposed [3] - 11:22,
  16:21, 21:4
SURRETTE [23] - 2:6,
  5:8, 5:14, 5:24, 6:4,
  6:20, 8:19, 9:2,
  11:12, 11:25, 12:15,
  12:21, 20:5, 22:4,
  23:9, 24:3, 24:6,
  26:11, 26:14, 29:3,
  30:1, 30:15, 30:24

Surrette [15] - 2:21,
  2:22, 5:15, 8:20,
  11:10, 12:21, 14:13,
  20:5, 22:4, 22:20,
  23:10, 25:11, 26:11,
  30:13, 30:23
sustain [1] - 19:25
system [2] - 24:10,
  24:14

**T**

TAYLOR [1] - 2:3
Teleconference [2] -
  1:11, 31:3
ten [7] - 10:7, 10:11,
  10:18, 10:19, 15:13,
  15:14
terms [3] - 16:11,
  21:22, 21:23
testimony [1] - 14:19
THE [48] - 1:1, 1:2,
  1:15, 2:12, 2:17,
  2:24, 3:11, 4:21, 5:4,
  5:10, 5:18, 6:2, 6:15,
  7:8, 8:18, 8:24, 9:5,
  9:14, 9:17, 10:9,
  10:23, 11:10, 11:18,
  12:3, 12:16, 12:25,
  14:13, 14:16, 15:24,
  16:17, 17:12, 18:4,
  19:1, 20:3, 20:24,
  21:8, 22:19, 23:19,
  24:5, 24:20, 25:8,
  26:13, 27:19, 28:12,
  30:8, 30:16, 30:22,
  31:1
themselves [1] - 19:5
third [1] - 17:2
third-party [1] - 17:2
thirteen [2] - 15:11,
  27:13
threats [1] - 19:19
three [2] - 8:22, 15:13
thrown [1] - 18:22
timely [1] - 30:3
timing [6] - 9:10, 9:22,
  10:24, 13:20, 30:6,
  30:11
today [2] - 6:3, 30:25
together [1] - 19:2
total [1] - 27:1
towards [3] - 5:2,
  12:24, 26:20
track [1] - 26:6
transcript [1] - 31:5
treated [1] - 10:14
true [4] - 10:18, 19:21,
  26:24, 31:5
truly [1] - 16:4

try [5] - 7:3, 19:24,
  26:14, 29:5, 29:11
trying [3] - 10:22,
  22:7, 26:6
Tuesday [1] - 1:10
turn [1] - 3:7
turns [1] - 18:17
two [14] - 8:22, 8:23,
  9:21, 17:20, 17:21,
  19:10, 23:14, 23:18,
  24:1, 24:15, 24:17,
  25:12, 28:4
tying [1] - 17:20
type [2] - 6:11, 27:15
typically [2] - 10:14,
  19:18

**U**

U.S [1] - 31:8
ultimately [1] - 4:3
under [4] - 6:10, 6:12,
  6:13
UNITED [1] - 1:1
United [1] - 1:15
unless [1] - 3:22
unspecified [1] -
  17:11
up [7] - 4:16, 8:2, 15:4,
  15:19, 17:20, 19:16,
  30:4
URQUHART [1] - 1:22

**V**

validity [3] - 10:16,
  19:11, 21:7
value [1] - 6:25
varies [1] - 10:1
variety [1] - 19:6
various [1] - 30:11
version [6] - 17:1,
  23:15, 23:24, 24:6,
  24:16, 26:16
versions [4] - 15:10,
  16:19, 23:11, 25:22
view [1] - 11:2
views [1] - 17:17
vitally [1] - 26:15

**W**

wait [6] - 5:10, 11:3,
  16:2, 18:8
warning [1] - 5:11
ways [1] - 19:6
weaknesses [1] -
  19:19
week [1] - 31:2
whole [2] - 3:16, 7:2

**willful** [1] - 12:11
**willfulness** [1] - 13:4
**willing** [2] - 14:3, 28:6
**Wilmington** [1] - 1:13
**withholding** [5] - 4:5, 4:9, 20:7, 20:20, 22:22
**won** [1] - 26:23
**works** [1] - 24:2

## Y

**year** [1] - 5:1
**years** [1] - 26:5
**Young** [1] - 2:20
**YOUNG** [1] - 2:3
**yourself** [1] - 27:24