IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PUREWICK CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1508-MN |
| | ) | |
| SAGE PRODUCTS, LLC, | ) | **REDACTED** |
| | ) | **VERSION** |
| Defendant. | ) | |

## LETTER TO THE HONORABLE MARYELLEN NOREIKA FROM JOHN W. SHAW

<div style="float:right">

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff*

</div>

OF COUNSEL:
Steven C. Cherny
Brian P Biddinger
Matthew A. Traupman
Nicola R. Felice
Jason C. Williams
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010

Athena Dalton
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400

Dated: June 9, 2021



John W. Shaw
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
(302) 298-0701 – Direct
jshaw@shawkeller.com

June 9, 2021

**BY CM/ECF & HAND DELIVERY**

The Honorable Maryellen Noreika                    **REDACTED VERSION**
United States District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:    *PureWick Corp. v. Sage Products LLC*, C.A. No. 19-1508-MN

Dear Judge Noreika:

PureWick moves to strike the expert report of Robert Sterne (Ex. A). Mr. Sterne is a practicing patent lawyer with no expertise in any technical area relevant to the patents-in-suit or in any area relevant to the assessment of damages. Mr. Sterne improperly opines regarding, *inter alia*, patent law and the application of that law to the facts in this case. To the extent the jury needs such direction that is the province of the Court, not an "expert" patent lawyer who will argue from the witness box regarding inferences that the jury should take from a prosecution history in which he did not participate. Mr. Sterne's "opinions" are not evidence that relate to the elements of any claim or defense here. For example, Mr. Sterne "opines" about whether prosecution counsel complied with their duty of candor. Although the duty of candor might pertain to an inequitable conduct defense before the Court, it is not relevant to any defense to be tried to the jury and Sage has not even asserted inequitable conduct. Patent law "experts" such as Mr. Sterne were a phenomenon of an earlier time and largely have disappeared from this Court. Every patent case involves prosecution of patents and yet countless juries have managed to render verdicts without hearing from patent law experts. PureWick respectfully asks that the Court strike Mr. Sterne's report so it need not incur the expense of hiring a responsive legal expert and deposing Mr. Sterne.

**I.    PureWick's Motion to Strike Is Timely**

Sage contends that PureWick may only challenge the Sterne report in a *Daubert* motion or motion *in limine*. But it also is appropriate to raise these issues as a motion to strike. *See B. Braun Melsungen AG v. Terumo Medical Corp.*, C.A. No. 09-347 (D. Del. Feb. 25, 2010) (Ex. B) (stating that a motion to strike may be used to challenge a patent law expert). Indeed, when Sage first sent a Protective Order undertaking for Mr. Sterne, PureWick tried to get ahead of this issue and asked Sage to explain the proposed subject matter of Mr. Sterne's testimony so that the parties could meet and confer and PureWick could raise the issue with the Court as early as possible. (Ex. C). Sage, inexplicably, refused to share this basic information. *Id*. And Sage refused to agree to postpone the deadline for any rebuttal report until after this issue is resolved. (Ex. D). The alternatives suggested by Sage would force PureWick to spend substantial time and money responding to Mr. Sterne's improper report, while providing no advantage to the Court.

**II.   Mr. Sterne's Report is Not Relevant to Any Claim or Defense in this Case**

***Nowhere does Mr. Sterne identify any claim or defense to which his report relates.*** Instead, Mr. Sterne contends that he was "asked to provide [his] opinions regarding relevant industry standards with respect to patent prosecution and U.S. Patent and Trademark Office

SHAW KELLER LLP

Page 2

("Patent Office" or "USPTO" or "Office") practice and procedures, both generally and as they relate specifically to the Patents-In-Suit." (Ex. A, ¶ 4). The patent "industry" is the province of the Court, not an "expert." He also contends he was "asked to provide [his] opinions on certain issues that would be understood or known to a reasonable attorney in the field of patent practice." *Id*. But experts are not allowed to testify regarding state of mind. Nor is there any defense in this case that implicates an attorney's knowledge or state of mind. Although recast in different words, the content of Mr. Sterne's report is identical to those routinely stricken in this District.

"[T]he judges in this District have a well-established practice of excluding the testimony of legal experts, absent extraordinary circumstances." *AstraZeneca UK Ltd. v. Watson Labs., Inc.*, C.A. No. 10-915, 2012 WL 6043266, at *1 (D. Del. Nov. 14, 2012); *Lannett Co, Inc. v. KV Pharm.*, C.A. No. 08-338, 2009 WL 10657988. This is due largely to the fact that "it is the Court's function to determine the applicable legal standards." *Lannett*, 2009 WL 10657988, at *4. Testimony of patent law experts that would "walk through" a patent's file history, or opine on how the Patent Office would have acted in certain circumstances, is commonly excluded. *See Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc.*, C.A. No. 05-700-JJF (transcript of pretrial conference), at 16-21 (D. Del. Feb. 7, 2008) (Ex. E); *Ondeo Nalco Co. v. Eka Chem., Inc.*, C.A. No. 01-537, 2003 WL 1524658, at *3 (D. Del. Mar. 21, 2003).

Mr. Sterne's report provides no "extraordinary circumstances" and contains the following categories of improper opinions and/or testimony: (1) a summary of patent prosecution rules concerning the duty of candor and materiality, and what "[p]atent practitioners understand" about these rules (Ex. A, ¶¶ 17-24), (2) a summary of patent law, including prior art, invalidity and claiming priority to earlier applications (¶¶ 25-37), (3) a walk-through of the file histories of the Patents-In-Suit (¶¶ 38-57), (4) Mr. Sterne's understanding of alleged facts relating to PureWick's product development activities (¶¶ 59-64), and (5) opinions about what Mr. Sterne thinks a "reasonably prudent patent practitioner" would have understood or should have done in the prosecution, including with respect to investigating prior art and disclosing that art to the patent office pursuant to the duty of candor (¶¶ 54-55, 58, 65-78).

Mr. Sterne's "opinions" about the actions of a "reasonably prudent patent practitioner" (¶¶ 54-55, 58, 65-78) are merely a lawyer's interpretation of law and facts. Testimony of this nature is not admissible even when litigants allege inequitable conduct or assert that actions of prosecution counsel are relevant to a litigant's claims or defenses. Here, neither Sage's Answer nor its interrogatory responses concerning the bases for Sage's affirmative defenses, contain any mention of the actions of PureWick's prosecution counsel or what a reasonably prudent patent practitioner should have done. (D.I. 53; Ex. F [Sage 4th Supp. Response to Rog 5], pp. 34-78). Yet Sterne's report is replete with "opinions" about how a "reasonably prudent patent practitioner" should have acted. For example, Mr. Sterne proposes to testify that:

- "A **reasonably prudent patent practitioner** would have understood that it was further unreasonable for Mr. Simon [prosecuting attorney] to not have investigated whether there was prior art relevant to the August 29, 2016 priority date." (Ex. A, ¶ 71);
- "A **reasonably prudent patent practitioner** would understand that Mr. Simon should have responded and brought to the examiner's attention these . . . activities" (¶ 73);
- "Mr. Simon's knowledge of Plaintiff being a finalist for the Dare-to-Dream MedTech Design Challenge . . . **does not comport with his duty of disclosure** requirements." (¶ 76);

SHAW KELLER LLP

Page 3

- "This omitted commercialization, use and sale evidence, the *failure to sufficiently investigate* it by Marcus Simon (and the prior Cooley attorneys), and Marcus Simon's failure to respond to the Patent Examiner's statements that the priority date was August 29, 2016, *fundamentally and adversely impacted a proper examination*." (¶ 77).

These opinions impermissibly go toward the state of mind of both the examiner and the prosecuting attorney. *See, e.g., AstraZeneca*, 2012 WL 6043266 at *2 ("'expert witnesses are not permitted to testify regarding "intent, motive, or state of mind, or evidence by which such state of mind may be inferred."'"). There simply is no basis for attorney Sterne to offer opinions about why prosecution counsel, or the examiner, did or did not do something. *See Brigham & Women's Hosp. Inc.,* C.A. No. 08-464, 2010 WL 3907490, at *2 (D. Del. Sept. 21, 2010) ("The law of this district is clear that experts in patent cases may not opine on whether a party engaged in inequitable conduct, *discuss whether certain information was material to a pending patent application, or otherwise provide legal conclusions on 'substantive issues of patent law.'*" (emphasis added)). Nor does recasting a patent law expert's opinions as opinions about a "reasonably prudent patent practitioner" change the analysis.[1]

The remainder of Mr. Sterne's report contains his interpretations of the law and summaries of facts that are not relevant to any opinion expressed in Mr. Sterne's report. For example, Mr. Sterne discusses the law concerning prior art, invalidity, claiming priority to earlier applications, and the duty of candor owed to the Patent Office. (Ex. A, ¶¶ 19-24, 26-37). If any of this law is relevant, it will be provided by the Court in jury instructions. As for the summary of the prosecution history and PureWick's product development (¶¶ 38-53), if such facts are relevant to any claim or defense they should be admitted into evidence through a competent witness, or through an expert who is offering an admissible opinion based on them.[2] Mr. Sterne offers no relevant and admissible opinion relating to these facts and he should not be permitted to simply act as a conduit for the recitation of these facts to the jury. Put another way, Mr. Sterne's report is an improper attempt to offer lawyer opinions about what certain facts allegedly indicate about materiality, intent, and what the examiner might have done had circumstances been different. In line with the consistent practice of this Court (and many others), the Court should not permit Mr. Sterne to offer such testimony here. *See e.g.*, *S.O.I. TEC Silicon On Insulator Techs., S.A. v. MEMC Elec. Materials, Inc*., 745 F. Supp. 2d 489, 507 n.16 (D. Del. 2010) (denying the defendant's motion to admit the expert testimony of a patent law expert who proposed to testify regarding, *inter alia*, how the applicants misused certain PTO procedures, where the expert had no specific knowledge of the patent applicants at issue or the examiner's treatment of same).

---

[1] PureWick anticipates that Sage will cite to *Zimmer v. Stryker*, where Judge Andrews struck much of Mr. Sterne's report but allowed testimony to the Court on the competency of opinions of counsel and procedures relevant to certain unique facts in that case that are not present here. 365 F. Supp. 3d 466, 497 (D. Del. 2019).

[2] For example, Sage's validity experts reference the prosecution history in their analysis of the prior art, and certain facts concerning PureWick's product development in connection with opinions concerning the priority date of the patents. Mr. Sterne, however, has no technical expertise to offer opinions about the prior art or the priority date of the patents. *See Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1360-64 (Fed. Cir. 2008) (finding an abuse of discretion in the admission of testimony of patent law expert with no skill in the pertinent art).

SHAW KELLER LLP
Page 4

Respectfully submitted,

*/s/ John W. Shaw*

John W. Shaw (No. 3362)

cc: Clerk of the Court (by Hand Delivery)
    All counsel of record (by CM/ECF and Email)

# Exhibit A
# Redacted In Its Entirety

Exhibit B

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

B. Braun Melsungen AG, et al.,                      :
                                                    :
                        Plaintiffs,                 :
                                                    :
            v.                                      :        C.A. No. 09-347-JJF-LPS
                                                    :
Terumo Medical Corporation, et al.,                 :
                                                    :
                        Defendants.                 :

## ORDER

Plaintiffs, B. Braun Melsungen AG & B. Braun Medical Inc. ("Braun"), "seek this Court's guidance regarding whether the Court intends to permit expert testimony and/or opinion regarding patent law, practice, procedure, and/or policy." (D.I. 135) Braun asserts that this question is presented due to a request by Defendants, Terumo Medical Corporation and Terumo Corporation ("Terumo"), pursuant to the protective order governing this case (D.I. 67), to share Braun's confidential information with an expert consultant, Nicholas Godici. According to Braun, Mr. Godici "has previously been retained as an expert in patent law, practice, and procedure and on issues relating to allegations of inequitable conduct." (D.I. 135) Terumo argues in response that Braun must – but cannot– show good cause for objecting to Terumo's disclosure of Braun's confidential information to Mr. Godici. (D.I. 136) Terumo refuses at this time to reveal the subjects, if any, on which it may offer Mr. Godici's expert opinion, although Terumo acknowledges that it is "familiar with the Court's typical approach" of precluding testimony from "so-called patent law experts" on substantive issues of patent law, practice, or procedure. (D.I. 136)

IT IS HEREBY ORDERED THAT Braun's objection to Terumo's request to share Braun's confidential information with Mr. Godici, pursuant to the terms of the protective order, is **OVERRULED**. Braun has failed to establish the necessary "good cause" for its objection. Braun's belief that Terumo will seek to offer Mr. Godici as an expert on matters that the Court will ultimately rule are not the proper subject of expert testimony is speculation on two levels. Consistent with the schedule in this case, Terumo has not yet identified its testifying experts or the subject of their proposed testimony; nor does the Court have before it a motion to strike any proposed testimony or a motion *in limine* to exclude such testimony.[1] There is no basis for the Court to make any further ruling at this point.

IT IS HEREBY FURTHER ORDERED THAT, the Court having resolved the dispute the parties intended to present during a scheduled teleconference, **the teleconference scheduled for February 26, 2010 is CANCELLED**.

Delaware counsel are reminded of their obligations to inform out-of-state counsel of this Order. To avoid the imposition of sanctions, counsel shall advise the Court immediately of any problems regarding compliance with this Order.

Dated: February 25, 2010

Hon. Leonard P. Stark
UNITED STATES MAGISTRATE JUDGE

---

[1]Braun cites to cases in which judges of this Court have apparently precluded such expert testimony. Braun further cites to guidelines issued by one of the judges of this Court to the same effect. It appears that Braun is referring to transcript rulings or unpublished orders or information that may be available on the internet. Counsel are advised that when citing to such materials they should provide a copy to the Court so that it may review such materials for itself.

Exhibit C

**Jason Williams**

| | |
|---|---|
| **From:** | Brian Biddinger |
| **Sent:** | Monday, May 3, 2021 11:34 AM |
| **To:** | Ryan J. Pianetto; Steven Cherny; Jason Williams; Nicola Felice; Athena Dalton; jshaw@shawkeller.com |
| **Cc:** | Bob Surrette; Sandra Frantzen; Christopher Scharff; Bryce Persichetti; agaza@ycst.com; swilson@ycst.com; Annette Vonder Mehden |
| **Subject:** | RE: PureWick Corporation v. Sage Products, LLC; Case No. 19-1508-MN |

Ryan,

We regret that you won't tell us why Sage believes it has a need to disclose PureWick's confidential information to two lawyer experts. Is it Sage's position that it has the unfettered right to disclose confidential information to anybody, regardless of their potential relevance to this litigation, so long as they sign the Protective Order? We believe that confidential information should only be revealed to experts and consultants who have a legitimate role to play, such as, for example, technical and/or financial experts. Given Delaware's well-known disfavor for using legal experts, and the fact that neither Mr. Sterne nor Prof. Lietzan seem to have any expertise in an area pertinent to this litigation, we are dubious that they have any relevant opinions to offer. In particular, to the extent that Sage plans to have them testify about the law, we object. Since you won't tell us what topics they plan to testify about, however, we leave it to you to decide how to proceed.

Regards,
Brian

**From:** Ryan J. Pianetto [mailto:RPianetto@mcandrews-ip.com]
**Sent:** Sunday, May 2, 2021 8:33 PM
**To:** Brian Biddinger <brianbiddinger@quinnemanuel.com>; Steven Cherny <stevencherny@quinnemanuel.com>; Jason Williams <jasonwilliams@quinnemanuel.com>; Nicola Felice <nicolafelice@quinnemanuel.com>; Athena Dalton <athenadalton@quinnemanuel.com>; jshaw@shawkeller.com
**Cc:** Bob Surrette <BSURRETTE@mcandrews-ip.com>; Sandra Frantzen <SFRANTZEN@mcandrews-ip.com>; Christopher Scharff <CSCHARFF@mcandrews-ip.com>; Bryce Persichetti <BPersichetti@mcandrews-ip.com>; agaza@ycst.com; swilson@ycst.com; Annette Vonder Mehden <AVONDERMEHDEN@mcandrews-ip.com>
**Subject:** RE: PureWick Corporation v. Sage Products, LLC; Case No. 19-1508-MN

**[EXTERNAL EMAIL]**

Brian:

We do not understand your email. We have cooperated in every respect and provided all the required information regarding Professor Lietzan and Mr. Sterne. You have identified no basis for objection or any reason why Professor Lietzan and Mr. Sterne would violate their obligations under the Protective Order, which they agreed to follow by signing Exhibit A. While you acknowledge that we are not required to disclose any expert opinions to you, your statement that you have concerns regarding the "relevance" of Professor Lietzan and Mr. Sterne's potential expert testimony is not a Protective Order issue. Your inquiry into whether any of these individuals is "currently representing" clients in the "medical device sellers or manufacturers" space is not relevant to an appropriate objection under the Protective Order. There has been no such requirement of disclosure for any attorneys on this case that have access to the other parties' confidential information, much less experts. Indeed, it appears that many of PureWick's Quinn attorneys seem to also represent medical device manufacturers. Moreover, we note that your current proposed expert,

1

Dr. Yun, appears to consult and represent numerous medical device manufacturers including current work on urinary incontinence products — the subject matter of this litigation. Thus, based on your email, if any expert would raise a concern regarding disclosure of party technical information due to representation of medical device manufacturers and sellers, it would be Dr. Yun. Nevertheless, unlike Dr. Yun, we can confirm that neither Professor Lietzan nor Mr. Sterne currently represent any clients (in a technical or legal capacity) with regard to any urine collection or urinary incontinence products. Moreover, Professor Lietzan is on inactive status as an attorney.

Professor Lietzan and Mr. Sterne have signed Exhibit A to the Protective Order and agreed to its terms. Because you have identified no basis for objecting to them, we intend to proceed as noted below.

Regards,

Ryan



**Ryan Pianetto**
**Attorney**
McAndrews, Held & Malloy, Ltd.
500 W. Madison St., 34th floor | Chicago, IL 60661
P: 312-775-8000
RPianetto@mcandrews-ip.com
bio | v-card | website

**CONFIDENTIALITY NOTICE:**
This material is intended for the named recipient and, unless otherwise expressly
indicated, is confidential and privileged information. Any dissemination, distribution
or copying of this material is prohibited. If you received this message in error,
please notify the sender by replying to this message and then deleting it from your
system. Your cooperation is appreciated.

---

**From:** Brian Biddinger <brianbiddinger@quinnemanuel.com>
**Sent:** Saturday, May 1, 2021 4:14 PM
**To:** Ryan J. Pianetto <RPianetto@mcandrews-ip.com>; Steven Cherny <stevencherny@quinnemanuel.com>; Jason Williams <jasonwilliams@quinnemanuel.com>; Nicola Felice <nicolafelice@quinnemanuel.com>; Athena Dalton <athenadalton@quinnemanuel.com>; jshaw@shawkeller.com
**Cc:** Bob Surrette <BSURRETTE@mcandrews-ip.com>; Sandra Frantzen <SFRANTZEN@mcandrews-ip.com>; Christopher Scharff <CSCHARFF@mcandrews-ip.com>; Bryce Persichetti <BPersichetti@mcandrews-ip.com>; agaza@ycst.com; swilson@ycst.com; Annette Vonder Mehden <AVONDERMEHDEN@mcandrews-ip.com>
**Subject:** RE: PureWick Corporation v. Sage Products, LLC; Case No. 19-1508-MN

**CAUTION: External Email From:** brianbiddinger@quinnemanuel.com

Ryan,

We do not understand your unwillingness to cooperate to try to resolve this issue without Court intervention.  Please reconsider.  Lawyer experts present different issues than normal technical and financial experts.  We are trying to get sufficient information to see if PureWick needs to object.  We do not understand why you will not try to work this out by providing information that will come out anyway if Sage moves forward with these legal experts.

Unlike technical and financial experts, whose expertise and relevance usually are ascertainable from their CV's and the nature of the case, lawyer experts potential relevance is, at best, ambiguous.  So, we have asked for additional

information concerning the subject matter of the opinions that you expect to present from Mr. Sterne and Prof. Lietzan in order to help us evaluate the need for their access to all PureWick confidential information as compared to the risk of harm from any inadvertent use or disclosure of that information in connection with their work as attorneys.  We are not asking that you disclose the substance of any opinions at this time, but simply the topics of their proposed opinions.  PureWick is not aware of any issues in this case that would justify a need for expert testimony from a lawyer and, therefore, it is difficult to understand why Sage would need to disclose PureWick's confidential information – including technical information about PureWick products and product development, as well as financial information – to any lawyer who has not appeared as counsel, let alone two such lawyers.

Also, the additional information that we have requested is reasonable under the circumstances and intended to help PureWick understand whether there is a conflict of interest.  Although the disclosure of prior testimony and any prior employment or consulting arrangements with the parties would ordinarily be sufficient to evaluate potential conflicts with a technical or financial expert, the same is not true with respect to proposed lawyer experts.  It is possible, for example, that Mr. Sterne or Prof. Lietzan are representing, or have represented, clients whose interests currently are adverse to PureWick or its affiliates.  The information that you have disclosed to date would not reveal such a conflict, which is why we requested the additional information about their representations.  At the very least, can you tell us whether either lawyer currently is representing  other medical device manufacturers or sellers?  If the answer is no, then we likely can move past this issue.

Please reconsider our request for the additional information concerning Mr. Sterne and Prof. Lietzan so that we can hopefully resolve this issue without the need to involve the Court.

Regards,
Brian

---

**From:** Ryan J. Pianetto [mailto:RPianetto@mcandrews-ip.com]
**Sent:** Friday, April 30, 2021 6:16 PM
**To:** Brian Biddinger <brianbiddinger@quinnemanuel.com>; Steven Cherny <stevencherny@quinnemanuel.com>; Jason Williams <jasonwilliams@quinnemanuel.com>; Nicola Felice <nicolafelice@quinnemanuel.com>; Athena Dalton <athenadalton@quinnemanuel.com>; jshaw@shawkeller.com
**Cc:** Bob Surrette <BSURRETTE@mcandrews-ip.com>; Sandra Frantzen <SFRANTZEN@mcandrews-ip.com>; Christopher Scharff <CSCHARFF@mcandrews-ip.com>; Bryce Persichetti <BPersichetti@mcandrews-ip.com>; agaza@ycst.com; swilson@ycst.com; Annette Vonder Mehden <AVONDERMEHDEN@mcandrews-ip.com>
**Subject:** RE: PureWick Corporation v. Sage Products, LLC; Case No. 19-1508-MN

---

**[EXTERNAL EMAIL]**

---

Brian:

We disclosed Professor Lietzan and Mr. Sterne as experts under Paragraphs 5(c) and 10 of the Protective Order (not as co-counsel), and provided all the information required by the Protective Order, a provision that both parties agreed to. As we stated in our disclosure, neither Professor Lietzan nor Mr. Sterne had employment or consultancy relationships with PureWick or Sage in the last five years. We also provided a full list of their testimony over the last four years (and prior years). We are not required to give you details regarding any expert reports until they are due. The fact that Professor Lietzan and Mr. Sterne have law degrees is immaterial to what is required by the Protective Order and, as shown by their CVs and our disclosure, they have testified in a number of cases including in this District. No attorney in this case (much less an expert) has been required to disclose all their "current and prior representations" to determine whether they can proceed under the Protective Order.  It is not even clear whether such a request for all "current and prior representation" is ethically appropriate.

Both Professor Lietzan and Mr. Sterne signed Exhibit A and agreed to abide by its terms. Your email identifies no objection or any specific cause for "concern" related to the Protective Order. Please let us know if you have any grounds to object. If we do not hear from you by Monday, we will assume that you do not object.

Regards,

Ryan



**Ryan Pianetto**
**Attorney**
McAndrews, Held & Malloy, Ltd.
500 W. Madison St., 34th floor | Chicago, IL 60661
P: 312-775-8000
RPianetto@mcandrews-ip.com
bio| v-card | website

CONFIDENTIALITY NOTICE:
This material is intended for the named recipient and, unless otherwise expressly indicated, is confidential and privileged information. Any dissemination, distribution or copying of this material is prohibited. If you received this message in error, please notify the sender by replying to this message and then deleting it from your system. Your cooperation is appreciated.

**From:** Brian Biddinger <brianbiddinger@quinnemanuel.com>
**Sent:** Friday, April 30, 2021 1:26 PM
**To:** Ryan J. Pianetto <RPianetto@mcandrews-ip.com>; Steven Cherny <stevencherny@quinnemanuel.com>; Jason Williams <jasonwilliams@quinnemanuel.com>; Nicola Felice <nicolafelice@quinnemanuel.com>; Athena Dalton <athenadalton@quinnemanuel.com>; jshaw@shawkeller.com
**Cc:** Bob Surrette <BSURRETTE@mcandrews-ip.com>; Sandra Frantzen <SFRANTZEN@mcandrews-ip.com>; Christopher Scharff <CSCHARFF@mcandrews-ip.com>; Bryce Persichetti <BPersichetti@mcandrews-ip.com>;agaza@ycst.com; swilson@ycst.com; Annette Vonder Mehden <AVONDERMEHDEN@mcandrews-ip.com>
**Subject:** RE: PureWick Corporation v. Sage Products, LLC; Case No. 19-1508-MN

Ryan,

We have particular concerns about PureWick's confidential information being shared with attorneys who have not made an appearance as counsel in the case. Could you please let us know the issues on which you expect these two individuals will offer opinions, and why they need access to PureWick's confidential information? We also need information about their current and prior representations in order to evaluate whether there is a potential conflict. Please provide this information so that we can evaluate whether we have a need to raise an objection.

Regards,
Brian

**From:** Ryan J. Pianetto [mailto:RPianetto@mcandrews-ip.com]
**Sent:** Monday, April 26, 2021 8:14 PM
**To:** Steven Cherny <stevencherny@quinnemanuel.com>; Brian Biddinger <brianbiddinger@quinnemanuel.com>; Jason Williams <jasonwilliams@quinnemanuel.com>; Nicola Felice <nicolafelice@quinnemanuel.com>; Athena Dalton <athenadalton@quinnemanuel.com>;jshaw@shawkeller.com

**Cc:** Bob Surrette <BSURRETTE@mcandrews-ip.com>; Sandra Frantzen <SFRANTZEN@mcandrews-ip.com>; Christopher Scharff <CSCHARFF@mcandrews-ip.com>; Bryce Persichetti <BPersichetti@mcandrews-ip.com>;agaza@ycst.com; swilson@ycst.com; Annette Vonder Mehden <AVONDERMEHDEN@mcandrews-ip.com>
**Subject:** PureWick Corporation v. Sage Products, LLC; Case No. 19-1508-MN

<div style="background-color:#F7E9A0">

**[EXTERNAL EMAIL]**

</div>

---

Counsel:

Pursuant to ¶¶ 5(c) and 10 of the Stipulated Protective Order, Sage Products identifies Robert Sterne and Erika Lietzan. Mr. Sterne's and Ms. Lietzan's current CVs and executed Exhibit A's to the Protective Order are attached. Mr. Sterne and Ms. Lietzan have had no employment or consultancy relationships with PureWick or Sage within the last five (5) years. Mr. Sterne's deposition and/or trial testimony over the last four (4) years is found in his CV. Ms. Lietzan testified at deposition and/or trial as follows in the last four years:  *Fera Pharms., LLC v. Akorn, Inc.*, No. 12–cv–07694–LLS (S.D.N.Y.); *In re Androgel Antitrust Litig. (No. II)*, No. 1:09–MD–2084-TWT (N.D. Ga.);*FTC v. Actavis*, No. 1:09–CV–955–TWT (N.D. Ga.); *GlaxoSmithKline LLC & Smithkline Beecham (Cork) Ltd. v. Teva Pharms.*, No. 1:14–cv–00878 (D. Del.); and*GlaxoSmithKline LLC & Smithkline Beecham (Cork) Ltd. v. Glenmark Pharms.*, No. 1:14–cv–00877 (D. Del.).

Regards,

Ryan



**Ryan Pianetto**
**Attorney**
McAndrews, Held & Malloy, Ltd.
500 W. Madison St., 34th floor | Chicago, IL 60661
P: 312-775-8000
RPianetto@mcandrews-ip.com
bio| v-card | website

**CONFIDENTIALITY NOTICE:**
This material is intended for the named recipient and, unless otherwise expressly indicated, is confidential and privileged information. Any dissemination, distribution or copying of this material is prohibited. If you received this message in error, please notify the sender by replying to this message and then deleting it from your system. Your cooperation is appreciated.

Exhibit D

**Jason Williams**

| | |
|---|---|
| **From:** | Brian Biddinger |
| **Sent:** | Wednesday, May 26, 2021 9:42 AM |
| **To:** | Christopher Scharff; Bob Surrette; Sandra Frantzen; Bryce Persichetti; Ryan J. Pianetto; agaza@ycst.com; swilson@ycst.com; Annette Vonder Mehden |
| **Cc:** | Steven Cherny; Jason Williams; Nicola Felice; Athena Dalton; John Shaw |
| **Subject:** | RE: PureWick v Sage |

Chris,

We do not agree that these issues are premature and are disappointed that you seem unwilling to cooperate with us so that they can be promptly resolved.  Paragraph 14 of the Scheduling Order relates to dispositive motions and Daubert motions.  As indicated in my email we intend to move to strike, which is governed by Paragraph 9 of the Scheduling Order.  Furthermore, we believe it is important to resolve these issues now so that we can avoid the time and expense of responding to improper expert reports.  This is also why we asked you to agree to extend the deadline for any response to Mr. Sterne's report until after the Court rules on our motion.

Please let us know your availability to meet and confer today at 5:30 pm ET, or tomorrow between 11:30 am and 4 pm ET.

Regards,
Brian

**From:** Christopher Scharff [mailto:CSCHARFF@mcandrews-ip.com]
**Sent:** Tuesday, May 25, 2021 5:51 PM
**To:** Brian Biddinger <brianbiddinger@quinnemanuel.com>; Bob Surrette <BSURRETTE@mcandrews-ip.com>; Sandra Frantzen <SFRANTZEN@mcandrews-ip.com>; Bryce Persichetti <BPersichetti@mcandrews-ip.com>; Ryan J. Pianetto <RPianetto@mcandrews-ip.com>; agaza@ycst.com; swilson@ycst.com; Annette Vonder Mehden <AVONDERMEHDEN@mcandrews-ip.com>
**Cc:** Steven Cherny <stevencherny@quinnemanuel.com>; Jason Williams <jasonwilliams@quinnemanuel.com>; Nicola Felice <nicolafelice@quinnemanuel.com>; Athena Dalton <athenadalton@quinnemanuel.com>; John Shaw <jshaw@shawkeller.com>
**Subject:** RE: PureWick v Sage

**[EXTERNAL EMAIL from cscharff@mcandrews-ip.com]**

Brian,

Your request is premature. The Scheduling Order provides the timing for *Daubert* motions, in which expert testimony is addressed, and they may not be brought earlier than 10 days before September 20, 2021. See ¶14. Motions in limine are also not allowed to be separately filed and may only be filed as part of the proposed pretrial order.  *See* ¶16.  Indeed, we note that, with regard to your previous motion to strike PureWick prior art devices that was denied, Magistrate Judge Fallon specifically stated the dispute is "in the nature of a partial motion in limine or perhaps a Daubert motion" and was premature. (4/6/21 Tr. at 36). Of course, there are also page limits governing these motions, by which the parties must abide.

We are willing to further discuss these with you, including our own concerns about PureWick's reports, at the appropriate time in the case. However, right now, we are focused on working with our experts on response reports and preparing a Reply in the IPR.

Sincerely,

Chris



**Christopher Scharff**
**Attorney at Law**
McAndrews, Held & Malloy, Ltd.
500 W. Madison St.
Suite 3400 | Chicago, IL 60661
P: 312-775-8000
cscharff@mcandrews-ip.com
bio | v-card | website

CONFIDENTIALITY NOTICE:
This material is intended for the named recipient and, unless otherwise expressly indicated, is confidential and privileged information. Any dissemination, distribution or copying of this material is prohibited. If you received this message in error, please notify the sender by replying to this message and then deleting it from your system. Your cooperation is appreciated.

**From:** Brian Biddinger <brianbiddinger@quinnemanuel.com>
**Sent:** Monday, May 24, 2021 4:31 PM
**To:** Bob Surrette <BSURRETTE@mcandrews-ip.com>; Sandra Frantzen <SFRANTZEN@mcandrews-ip.com>; Christopher Scharff <CSCHARFF@mcandrews-ip.com>; Bryce Persichetti <BPersichetti@mcandrews-ip.com>; Ryan J. Pianetto <RPianetto@mcandrews-ip.com>; agaza@ycst.com; swilson@ycst.com; Annette Vonder Mehden <AVONDERMEHDEN@mcandrews-ip.com>
**Cc:** Steven Cherny <stevencherny@quinnemanuel.com>; Jason Williams <jasonwilliams@quinnemanuel.com>; Nicola Felice <nicolafelice@quinnemanuel.com>; Athena Dalton <athenadalton@quinnemanuel.com>; John Shaw <jshaw@shawkeller.com>
**Subject:** PureWick v Sage

**CAUTION: External Email From:** brianbiddinger@quinnemanuel.com

Counsel,

We intend to file a motion to strike the opening expert report of Robert Sterne on the grounds that the opinions set forth in the report are not relevant to any claim or defense in this case, and are not the subject of proper expert testimony.  Please also let us know if you will agree to extend the deadline for PureWick to file any response to Mr. Sterne's report until after the Court rules on the motion to strike.  To the extent that Sage will not agree to such an extension we will ask the Court for expedited resolution of the motion.

Separately, we intend to move to strike the portions of Mr. Sheldon's report offering invalidity opinions based on PureWick's products (e.g., Section VIII) on the grounds that Sage failed to disclose those invalidity theories in its Invalidity Contentions.

Please let us know your availability to meet and confer regarding the above motions on either Tuesday May 25 between 12 pm and 2 pm ET, or 6 pm and 7 pm ET, or Wednesday after 1 pm ET.

Regards,
Brian

**Brian Biddinger**
**Quinn Emanuel Urquhart & Sullivan, LLP**
51 Madison Avenue, 22nd Floor
New York, NY 10010
212-849-7120 Direct
212-849-7000 Main Office Number
212-849-7100 FAX
brianbiddinger@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

Exhibit E

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                IN AND FOR THE DISTRICT OF DELAWARE

 3                            - - -

 4
     BOEHRINGER INGELHEIM         :   CIVIL ACTION
 5   INTERNATIONAL GMBH and       :
     BOEHRINGER INGELHEIM         :
 6   PHARMACEUTICALS, INC.        :
                  Plaintiffs,     :
 7                                :
                                  :
 8        vs.                     :
                                  :
     BARR LABORATORIES, INC.,     :
 9              Defendant.        :   NO. 07-500 (JJF)
                                  :   (CONSOLIDATED)
10   BOEHRINGER INGELHEIM         :
     INTERNATIONAL GHMB and       :
11   BOEHRINGER INGELHEIM         :   CIVIL ACTION
     PHARMACEUTICALS, INC.,       :
12              Plaintiffs        :
                                  :
13                                :
          vs.                     :
14                                :
     MYLAN PHARMACEUTICALS,       :
15   INC.,                        :
                Defendant         :   NO. 05-854 (JJF)
16

17                            - - -

18                           Wilmington, Delaware
                             Thursday, February 7, 2008
19                           10:02 o'clock, a.m.

20                            - - -

21   BEFORE:  HONORABLE JOSEPH J. FARNAN, JR., U.S.D.C.J.

22                            - - -

23

24                           Valerie J. Gunning
                             Official Court Reporter
25
```

14

1    THE COURT: I know. But that's all right.
2 Don't get upset.
3        This case probably isn't about infringement, but
4 it's okay.
5        Here's what this case is really about. This is
6 the hot issue in this kind of cases. Double-patenting.
7 That's what these cases are really all about. I've had a
8 few of them. I've actually had a chance to sit in the
9 Federal Circuit and learn nothing until I had lunch.
10        These cases -- I mean, that's where you are
11 going, but you could put your resources and your attention
12 wherever you want.
13        Again, you know, they want you to put on a
14 little bit of an infringement case. You make the record,
15 you get it in. They have no responding case. That probably
16 says a lot about the strength of noninfringement, don't you
17 think? I mean, you know, when you put on the robe, you
18 don't lose all your common sense.
19        It's like, did you ever think about how could a
20 patent be obvious if the inventor doesn't know how to
21 compound works? It's like penicillin. Think about that.
22 These kind of things, like, they're not rocket science.
23        So you have a good case here to litigate, to get
24 to the varsity of the Federal Circuit on double-patenting, I
25 think, and, you know, whatever else anybody wants to put on,

15

1 that's okay.
2        We're going to have a little infringement trial
3 here and we're going to have a validity trial,
4 double-patenting. And I'm going to set time that, in my
5 view, allows a full exposition of the double-patenting
6 issue, and we'll see how you present it, how you respond
7 to it, and then we'll get you on your way to where that
8 hot button issue can be addressed if you're the case that
9 they decide to pluck.
10        I don't know if you are, because I have not
11 heard your evidence yet, but that's what this case is really
12 all about, in my view.
13        So I'm going to -- so you under, I'm going to
14 set time in that regard. And I understand, you know, the
15 angst, stress, when people have kind of admitted
16 infringement, but don't you have an expert that can talk
17 about the other claims.
18        MR. BLUMENFELD: We do have an expert, your
19 Honor.
20        THE COURT: Okay. So double-patenting is what
21 we're really focused on in this case.
22        And does anybody else want to say any more about
23 issues in the case? Okay.
24        Let's look at -- and I mean, exhibit lists and
25 things, in a bench trial, you're going to have time. The

16

1 only thing I noted was you're concerned about do I want to
2 take bench time to have you read depositions.
3        In my world, most of what comes in by
4 depositions is interesting but not vital. If there's
5 something vital in a deposition, then you ought to read it
6 at the trial so that it's got a continuum in the record,
7 because you know how they get records at the Federal
8 Circuit. So if it's in that trial transcript, it will have
9 a better presentation for you.
10        And then all the other stuff that you would
11 read in through depositions because they are generically
12 supportive of some issue, you can put that in the record.
13 I wouldn't take your time or my time to get it done. I
14 would go to the vital deposition designations in your case,
15 and, again, I'm looking at this case as a double-patenting
16 case.
17        Let's take a look at 14, whether the testimony
18 of Mr. Hasshey --
19        MR. PFADENHAUER: Hoscheit, your Honor.
20        THE COURT: -- Hoscheit, Barr's patent law
21 expert, should be precluded on the grounds that expert
22 testimony from a patent law expert will not assist the trier
23 of fact.
24        Let me just ask them first. What does he have
25 to tell me that's so enlightening that you want to take your

17

1 time up?
2        MR. PFADENHAUER: I will explain, your Honor.
3        I think -- I understand clearly your Honor's
4 practice on patent experts and we don't intend to have them
5 talk about the law. We don't intend to give you legal
6 conclusions. We don't intend to apply legal concepts. The
7 only thing we would have Mr. Hoscheit do is walk through the
8 three prosecution histories so that we have in the trial
9 transcript the key events that occurred in the prosecution,
10 because for purposes of the double-patenting argument,
11 your Honor, there are going to be some key events that are
12 important in terms of deciding whether Section 121 is or is
13 not applicable in this case. And so it deals with the
14 restriction requirement in an earlier case, whether it was
15 carried over or not carried over, the sequence of events,
16 the chronology.
17        So I think it would be helpful for your Honor,
18 and, frankly, could be of assistance on appeal to have in
19 the trial transcript some of the key events from the
20 prosecution history, and we would offer Mr. Hoscheit to walk
21 through those file wrappers, testify about the events that
22 occurred.
23        We are not asking him to offer any opinions on
24 any ultimate issues in the case, to talk about any legal
25 concepts, but just to talk about the events that occurred,

18

1  the order in which they occurred, and what the file
2  reflects.
3      THE COURT: Mr. Blumenfeld?
4      MR. BLUMENFELD: Your Honor, it seems like we go
5  through this in every case these days, and just to put this
6  in context, these file histories -- I'm not sure why
7  Mr. Pfadenhauer thinks he can't explain it to you or why he
8  thinks you need an expert to understand it. But this
9  is the '812, the patent-in-suit file history. It is
10  double-sided. That's how thick it is. That's how
11  complicated it is (indicating).
12      It's not complicated at all. The parent and the
13  grandparent are not much thicker. These are easy filed
14  histories.
15      I don't think we need a patent lawyer to get on
16  the stand and say, this is what happened in the file
17  history. And if that's all they wanted, they wouldn't be
18  calling him. But if you look at his report, it's the normal
19  editorializing. It's not just, here's what happened, or
20  here's what happened, easy for Mr. Pfadenhauer to point you
21  to it. It's going to be in evidence. There won't be any
22  objections to that.
23      When you get to the things in his report where
24  he starts saying things like, in Paragraph 26, you know,
25  the claims submitted in the '821 patent are in these groups,

19

1  this is inconsistent with the election framework set forth
2  in the '947 restriction requirement, et cetera.
3      And then you get -- Mr. Pfadenhauer told me
4  they're not going past Paragraph 29 of his report, about his
5  misrepresentations and things like that, they're no longer
6  trying to put in. But you get to Paragraph 29 and it talks
7  about how, you know, what the applicant admitted, and
8  there's just no reason at all to put a lawyer on the stand
9  to tell you what a piece of evidence that he knew nothing
10  about, he wasn't involved in, says.
11      I mean, you read a few file histories in your
12  20-some years on the bench, and, you know, these are not
13  complicated and there's no reason we need a lawyer to be
14  arguing about them from the witness box as opposed to
15  Mr. Pfadenhauer telling you what he thinks they mean from
16  the podium, and just no reason to be taking our time,
17  your time, and putting an expert on to tell you, here's what
18  the Patent Office file history says.
19      THE COURT: All right.
20      Yes?
21      MR. PFADENHAUER: Your Honor, I think if you
22  look at the Paragraphs 1 through 29 in Mr. Hoscheit's
23  report, you will see that they are a recitation of the
24  events that occurred. There may be a word or two that
25  Mr. Blumenfeld wants to argue about the way he is

20

1  characterizing something, and, obviously, if that's not a
2  fair characterization, I'm sure Mr. Blumenfeld could point
3  that out.
4      But my arguing to you about the file history is
5  not the same as having evidence in the record about what is
6  in the file history, about the portions of the file history
7  that we think should be the focus of the trial, that are
8  relevant to the key double-patenting event.
9      This isn't the typical case where we're talking
10  about anticipation or obviousness, where the file history is
11  not of particular importance. This is a case where their
12  primary defense to our double-patenting case is Section 121,
13  which is a technical section that has a number of
14  requirements that have to be met, that all tie into what
15  did or didn't happen during the prosecution of the case.
16      This is a case where they got one patent
17  directed to methods of using compounds and then turned
18  around an got a second patent, which they didn't disclaim to
19  the very same compounds.
20      It's like getting a patent on using aspirin to
21  treat headaches and then saying, I can now go get another
22  patent on aspirin itself.
23      They have a limited defense on 121, and it's
24  going to require interpretation of precisely what occurred
25  during the file history. I think it's going to be helpful

21

1  for your Honor and for the Federal Circuit to have in the
2  record those events put through in through a witness.
3      We don't have the ability to have another
4  witness talk about the file history because the lawyer who
5  prosecuted the case testified at his deposition that he
6  didn't really remember anything about what happened during
7  the prosecution.
8      So this is our ability to put into the record,
9  your Honor, in a way that I think will be helpful both to
10  your Honor and on appeal, the key events from the file
11  history that underpin the response to our double-patenting
12  defense, and I think it would be helpful to the Court.
13  We're happy to take our time out of our allotted hours to do
14  it. We're not going to waste your Honor's time with things
15  that we don't think are important and we're not going to
16  have them editorialize or offer comments.
17      I will represent to the Court, we will have him
18  factually present what's in the file history and the
19  relevant events that occurred.
20      THE COURT: All right. I'm going to preclude
21  his testimony because it is the proffer that it's a
22  walk-through. I will leave that to counsel, and I want
23  to be consistent in excluding patent law experts absent
24  some matter that is truly -- truly requires an expert to
25  testify.

Exhibit F
Redacted In Its
Entirety