# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PUREWICK CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1508 (MN) |
| | ) | |
| SAGE PRODUCTS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM ORDER**

At Wilmington this 24th day of June 2021:

As announced at the hearing on June 17, 2021 (D.I. 177), IT IS HEREBY ORDERED that Plaintiffs' request to strike the expert report of Robert Sterne, Defendant's expert in patent procedure, is GRANTED-IN-PART and DENIED-IN-PART:

> . . . I have before me Plaintiff's motion to strike the expert report of Robert Sterne. I am going to grant the motion in part.
>
> Mr. Sterne is a practicing patent attorney without expertise in the subject matter of the patents-in-suit. He has submitted a 39-page report that offers opinions on the following issues: (1) patent prosecution rules, including the duty of candor and materiality, as well as what "[p]atent practitioners understand" about these rules; (2) patent law, including law about prior art, invalidity, materiality and claiming priority to earlier applications; (3) the contents of the prosecution histories of the patents-in-suit with opinions interspersed about what a reasonable patent attorney would understand about the statements made and interspersing testimony of PureWick's patent attorney; (4) opinions on whether some of PureWick's contentions in this litigation about its commercialization and awards its products have received make activities in development "material"; and (5) what individuals should have done in the prosecution, including with respect to investigating prior art and disclosing that art to the Patent Office pursuant to the duty of candor. Much of Mr. Sterne's report reads like a legal brief, applying law to the facts as he understands them as a lawyer – not as a person of skill in the art – and thus he is going

far beyond patent practices and is in essence giving an opinion that is a lawyer's argument in the guise of expert testimony.

For many years, "the judges in this District have [had] a well-established practice of excluding the testimony of legal experts, absent extraordinary circumstances"[1] because "it is the Court's function to determine the applicable legal standards."[2] And legal testimony on substantive issues of patent law or Patent Office procedure improperly substitutes the judgment of the expert for that of the Court.[3] I know that some judges may have allowed testimony of a patent expert explaining general information about patents or walking through the prosecution history in jury trials, but testimony of patent law experts that add a party's particular spin to disclosures in the prosecution or opine on how the Patent Office would have acted in certain circumstances have regularly been excluded.[4]

Here, Section VII of Mr. Sterne's report is a mix of instructions about patent law, patent regulations and arguments about what patent practitioners purport to understand. That testimony is unhelpful and inappropriate in that it substitutes the judgment of the expert for that of the Court, the latter of which is responsible for instructing the jury on the relevant law. Therefore, that testimony is excluded.

---

[1] *AstraZeneca UK Ltd. v. Watson Labs., Inc. (NV)*, No. 10-915, 2012 WL 6043266, at *1 (D. Del. Nov. 14, 2012); *see also Lannett Co. v. KV Pharm.*, No. 08-338, 2009 WL 10657988, at *4 (D. Del. Mar. 9, 2009).

[2] *Lannett*, 2009 WL 10657988, at *4.

[3] *See* Transcript of Oral Argument at 64, *F. Hoffmann-La Roche, Ltd. v. Igen Int'l, Inc.*, No. 98-318-JJF, (D. Del. Oct. 24, 2000) ("[I]n this district, when you get into that patent law/expert/ et cetera area, we have a very consistent view. And the view is that they are not helpful. And not only do we mostly exclude them on [b]ench trials, but in jury trials they are so severely limited, I can't figure out why anybody continues to propose them.").

[4] *See* Transcript of Oral Argument at 16-21, *Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc.*, No. 05-700-JJF, (D. Del. Feb. 7, 2008) (precluding testimony of the defendant's legal expert "because it is the proffer that it's a walk-through. I will leave that to counsel, and I want to be consistent in excluding patent law experts absent some matter that . . . truly requires an expert to testify."); *see also Syngenta Seeds, Inc. v. Monsanto Co.*, No. 02-1331-SLR, 2004 WL 2106583, at *2 (D. Del. Sept. 8, 2004) (excluding expert opinions concerning the prosecution histories of the patents-in-suit); *Ondeo Nalco Co. v. Eka Chem., Inc.*, No. 01-537, 2003 WL 1524658, at *3 (D. Del. Mar. 21, 2003).

Section VIII walks through the various patent applications. I suppose that, to the extent it simply states facts of what applications were filed, on what date, by whom, et cetera, it is not providing legal opinions and is simply trying to summarize a vast amount of information. It doesn't seem like an efficient use of limited trial time to use an expert for that given that the applications can be offered into evidence. That being said, if Sage wants to use its trial time for that, it may.

Section IX is entitled Prosecution History of the '989 Patent. This section walks through certain facts in the prosecution history but does so by offering Sage's spin on what happened, essentially making arguments that Sage's litigation counsel should make – not an expert on the stand. For example, that section offers an opinion not only on what PureWick said during prosecution, but also on what PureWick did not say and possible reasons for the "non-statements." It opines on what a practitioner would understand from what was said (and not said) that allow Mr. Sterne to opine that PureWick's statements were "misdirected." I suppose this is a nice way of saying they were "false" or "misleading." There is also testimony of witnesses, such as prosecution counsel sprinkled in, further straying from this being a simple factual "walk-through" of the prosecution and making it much more of a lawyer's argument. This is inappropriate for an expert witness.

Section X is the longest section of the report. Its title suggests that it is about commercialization efforts and awards PureWick asserts are relevant to issues in the case. This section, however, really reads like an attorney's argument or brief. It intersperses documents, contentions and testimony and offers conclusions about whether the patents are subject to an on-sale bar. It talks about what PureWick knew about things that were ostensibly material. It talks about what a "prudent patent practitioner" or a "reasonable" practitioner would have done and about PureWick's motivation in taking purported "unreasonable" positions or doing "unreasonable" things.[5] It talks about why prosecution counsel, or the examiner, did or did not do something.[6] Again, none of this is appropriate as expert testimony.

---

5   *See, e.g., AstraZeneca*, 2012 WL 6043266, at *2 (noting that expert witness are not allowed to testify as to "intent, motive, or state of mind, or evidence by which such state of mind may be inferred").

6   *See Brigham & Women's Hosp. Inc.*, No. 08-464, 2010 WL 3907490, at *2 (D. Del. Sept. 21, 2010) ("The law of this district is clear that experts in patent cases may not opine on whether a party engaged in inequitable conduct, discuss whether certain information was

3

In sum, I am striking Sections VII, IX and X of Mr. Sterne's report.  I am striking Section VIII to the extent it strays from factual representations about the applications.  And to the extent Mr. Sterne's summary in Section VI includes opinions in the stricken sections, that is also out.  Sage may put the applications and prosecution histories into evidence, may cross-examine witnesses on them and make the arguments it chooses through its litigation counsel.  But it may not use a "patent expert" on the stand to make arguments that its litigation counsel should be making.

Finally, let me just say in response to some of the arguments in the letters that I am not really sure whether this is properly a motion to strike or an early *Daubert* motion.  I certainly understand why it was raised now rather than later, but I am sensitive to the issue regarding page limits that Sage raised.  So I'll say that Plaintiff will have three fewer pages for its *Daubert* or combined *Daubert* / summary judgment motions than the limits in the scheduling order given that I have addressed one of the expert issues already.

The Honorable Maryellen Noreika
United States District Judge

---

material to a pending patent application, or otherwise provide legal conclusions on substantive issues of patent law." (internal quotation marks and citation omitted)).