# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

PUREWICK CORPORATION

       Plaintiff and Counterclaim Defendant,

v.

SAGE PRODUCTS, LLC,

       Defendant and Counterclaim Plaintiff.

REDACTED - PUBLIC VERSION

(Filed October 27, 2021)

C.A. No. 19-1508-MN



## SAGE'S ANSWERING BRIEF IN OPPOSITION TO PUREWICK'S MOTION TO EXCLUDE THE EXPERT OPINIONS OF DONALD SHELDON AND VINCENT THOMAS CONCERNING NON-INFRINGING ALTERNATIVES

OF COUNSEL:
Robert A. Surrette
Sandra A. Frantzen
Ryan J. Pianetto
MCANDREWS, HELD
& MALLOY, LTD
500 West Madison Street
Chicago, IL 60661
(312) 775-8000
bsurrette@mcandrews-ip.com
sfrantzen@mcandrews-ip.com
rpianetto@mcandrews-ip.com

Dated:  October 20, 2021

YOUNG CONAWAY STARGATT
   & TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Defendant/Counterclaim Plaintiff Sage Products, LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................................................ii

EXHIBIT REFERENCES AND ABBREVIATIONS .......................................................................iii

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................... 1

II.    NATURE AND STAGE OF PROCEEDING AND STATEMENT OF FACTS .......................................................................................................................... 1

III.    ARGUMENT.......................................................................................................................4

# TABLE OF AUTHORITIES

**CASES**

*EMC Corp. v. Pure Storage, Inc.*,
   154 F. Supp. 3d 81 (D. Del. 2016)...................................................................................5

*Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*,
   232 F. Supp. 3d 632 (D. Del. 2017)................................................................................5

*Oracle Corp. v. Parallel Networks, LLP*,
   No. CIV. 06-414-SLR, 2008 WL 6808433 (D. Del. Dec. 4, 2008)..................................5

*Vehicle IP, LLC v. AT&T Mobility LLC*,
   227 F. Supp. 3d 319 (D. Del. 2016)................................................................................6

## EXHIBIT REFERENCES AND ABBREVIATIONS

**"Pl. Ex. __"** refers to Exhibits 1 to 3 attached to Plaintiff's Opening Brief in Support of its Motion to Exclude the Expert Opinions Of Donald Sheldon and Vincent Thomas Concerning Non-Infringing Alternatives (D.I. 196.)

**"Def. Ex.__"** refers to exhibits submitted by Defendant in connection with the present summary judgment and *Daubert* filings including the following:

 **Def. Exs. 1-104** are attached to the Declaration of Sandra A. Frantzen filed in connection with Sage's summary judgment and *Daubert* motions. (D.I. 206 (Exs. 1-10), 207 (Exs. 11-19), 208 (Exs. 20-22), 209 (Exs. 23-27), 210 (Exs. 28-36), 211 (Exs. 37-104).)

 **Def. Exs. 110-115** are attached hereto.


\* Unless otherwise noted, all emphases herein have been added.  Citations and quotations in case citations have generally been omitted.

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Contrary to PureWick's assertions, Sage <u>fully disclosed</u> its noninfringing alternatives ("NIAs") to PureWick during fact discovery and PureWick investigated those alternatives, took extensive discovery on many of them, and did not seek further discovery. Until now, PureWick never even questioned Sage's responses after Sage provided them. Sage's experts Sheldon and Thomas properly discussed those disclosed alternatives and relied on deposition testimony <u>taken by PureWick</u>, and discussions with those same Sage witness <u>that PureWick deposed</u> (including about the alternatives). PureWick's motion should be denied.

## II.      NATURE AND STAGE OF PROCEEDING AND STATEMENT OF FACTS

On February 2, 2020, PureWick served an interrogatory (No. 6) seeking Sage's contentions on what would constitute NIAs. (*See* Pl.'s Ex. 1 at 78; D.I. 32.) Sage initially deferred answering as it was early in the case and Sage had not even received PureWick's infringement contentions. (Def. Ex. 115 at 19-20; *see* D.I. 38.) On July 29, 2020, PureWick filed a surprise motion (filed the same day Sage filed a motion to compel relating to the PureWick prior art products), seeking to compel Sage's responses to No. 6. (D.I. 66; *see* D.I. 64.) Sage was unable to file a written response due to the surprise. (D.I. 65, 66.) The parties nonetheless discussed the NIAs at the August 4 hearing. (D.I. 72 at 1, 13-18.) Sage explained that, because it was early in discovery, it was difficult to identify NIAs particularly given the lack of clarity from PureWick. (*Id.* at 15.) Contrary to PureWick's mischaracterization of the record, the Court did not make any sweeping rulings about NIAs, but rather asked Sage to identify NIAs it knew about (*id.* at 18):

> So what I'm going to say is that <u>if Defendants have in mind</u> things that are noninfringing alternatives, they should identify them. <u>If they don't have any in mind currently, that's fine</u>, you can say that, and then supplement later if it turns out that you have something in mind.

Consistent with the Court's Order, over <u>a year ago</u> *in September 2020*, Sage supplemented

and provided significant information on what Sage then knew including <u>identifying numerous</u> <u>"adult incontinence products"</u> including by name, e.g., "Depends, adult urine pads such as Pee Pads, Dignity Super Duty Pads, …; urinary pouches such as the Hollister…pouch, Xtop for men incontinence pouch, …; catheters such as … male condom catheters….;…portable urinary containers and collection devices such as the Go Girl, Tinkle Belle, Sani Fem Freshette Feminine urinary director device,. …." (Def. Ex. 110 at 41-43.) Sage also <u>identified several design options</u> for the PrimaFit and PrimoFit products <u>including all three design options addressed in Sage's</u> <u>expert reports,</u> namely, a urine collection device █████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████ (*Id.* at 41, 42.) Sage explained that these "variations are shown in the prior art of record and are standard features of the art in multiple prior art devices including, for example, as discussed in depth in Sage's Invalidity Contentions (see for example [citing numerous references].)" (*Id.* at 43.)

In ***October 2020***, Sage supplemented its Rule 26 disclosures and identified ██████████

██████████████████████████████ as knowledgeable about "<u>design options</u>" for the PrimaFit and PrimoFit products. (Def. Ex. 112 at 4-6.)

In ***February 2021***, after the Court's claim construction, Sage supplemented its response to Interrogatory No. 6 <u>again</u>, referencing, *inter alia*, PrimaFit 2.0 as a non-infringing alternative. (Def. Ex. 111 at 48.) Notably, the response specifically stated: "<u>Sage witnesses are knowledgeable</u> about this topic including <u>as set forth in Sage's Rule 26 disclosures</u>." (*Id.*)

On ***March 16, 2021***, Sage supplemented <u>yet again</u>, identifying more relevant documents including documents discussed and referenced at depositions. For example, with regard to

PrimaFit 2.0, Sage described documents "discussed during PureWick's depositions of Sage's witnesses: [documents identified]; and Plaintiff Exhibits 15, 33. 34, 36, 51, 72, 73, and 74. Sage further incorporates documents provided in the witness binders <u>provided by PureWick</u> during the deposition of Sage witnesses including for example ███ Tab 74, 75, and 76." (Pl. Ex. 1 at 83.)

PureWick never complained about Sage's NIA interrogatory responses during the discovery period. To the contrary, though PureWick fails to mention it in its motion, PureWick <u>deposed all three identified witnesses</u> ████████ including about the NIAs and including multiple depositions about the PrimaFit 2.0. (D.I. 103; *see, e.g.,* Def. Ex. 50 at 18-21, 23-26, 130-148; Def. Ex. 114 at 290-292; Def. Ex. 113 at 9-14, 84-87.)

In the meantime, even though <u>PureWick bears the burden of establishing the absence</u> of <u>NIAs</u> as part of its lost profits claim (*see* D.I. 204 at 27-28), <u>PureWick</u> failed to address the absence of NIAs in response to Sage's interrogatories. (Def. Ex. 11 at 33.) Instead, <u>PureWick declined to answer</u>, stating that the issue <u>should be deferred to expert reports</u>: "Plaintiff will disclose to Defendant expert testimony and evidence…relating to damages, on May 21, 2021 and July 23, 2021." (Def. Ex. 11 at 33.)  PureWick took no issue with Sage's NIAs. (*Id.*)

On ***May 21, 2021***, PureWick finally revealed its damages theories and, bearing the burden of establishing the absence of NIAs, referenced Sage's NIAs and half-heartedly addressed them. (*See, e.g.*, Def. Ex. 30 at ¶¶271-306; Def. Ex. 41 at pp. 7-11; Def. Ex. 38 at ¶¶40-43, 88-89.) Notably, PureWick's damages expert cited discussions with PureWick employees on a number of topics <u>including NIAs</u>. (*See, e.g.,* Def. Ex. 38 at ¶¶9, 45, 49 52-53, 56-67, and 94.)

On ***June 25, 2021***, Sage's experts, including Sheldon and Thomas, provided responsive reports and addressed some of the NIAs including the incontinence products on the market, PrimaFit 2.0, and the three design alternatives referenced above. (Pl. Ex. 2 at 171-188; Def. Ex.

27 at ¶¶ 66-86.) The reports cited to deposition testimony and, like PureWick's expert, referenced discussions with the three Sage witnesses deposed by PureWick. (*Id*.)

## III.    ARGUMENT

PureWick's motion fails to identify a single NIA addressed in Sage's expert reports that was not disclosed during discovery (multiple times). Sage's repeated responses to PureWick Interrog. No. 6 disclosed multiple NIAs including: (1) conventional incontinence products, widely available at every hospital in the country; (2) PrimaFit 2.0; and (3) design options for the accused products including the three referenced in the Sheldon and Thomas reports.[1] (Pl. Ex. 2 at 171-188; Def. Ex. 27 at ¶¶66-86; Pl. Ex. 1 at 80-84.) As discussed above, despite PureWick's claims, PureWick has known of those NIAs and the witnesses' knowledgeable about design options <u>for over a year</u> and has had extensive discovery about them. PureWick never complained about Sage's multiple responses during discovery or the depositions that it took of the three witnesses. Indeed, PureWick was clearly aware of the NIAs identified as its experts minimally addressed them in their opening reports. (*See, e.g.*, Def. Ex. 30 at ¶¶271-306; Def. Ex. 41 at pp. 7-11.)

After waiting a year, PureWick now complains. But it was not Sage that failed to respond to interrogatories on NIAs; <u>it was PureWick</u>. Despite bearing the burden of establishing the absence of NIAs (*see* D.I. 204 at 27-28), <u>PureWick</u> did not address them in response to <u>Sage's</u> interrogatories, but instead decided to reveal its theories during expert discovery. (Def. Ex. 11 at 33.) PureWick should be excluded from addressing NIAs—not Sage.

Sage's NIA evidence—disclosed more than a year ago—demonstrate that there are numerous NIAs to the PureWick products. Instead of addressing those issues on the merits, PureWick seeks exclusion. PureWick first attempts to feign confusion about the NIAs (Pl. Br. at

---

[1] Though the accompanying proposed order broadly references all NIAs in Sheldon and Thomas's report (D.I. 195-1), PureWick's motion only disputes the design option category (No. 3).

2-3), but ***Sage's descriptions were clear and readily understandable***. PureWick complains about the design option of ███████████████████████████████ (Pl. Br. at 2.) ████████████

██████████ and Sage's response gave examples, ████████████████████████████

██████████████████████ (Pl. Ex. 1 at 80.) PureWick's only other example of "confusion" relates to the NIA ██████████ (Pl. Br. at 2), but neither Sheldon nor Thomas offered an opinion on this NIA so the argument is a red herring. (Pl. Ex. 2 at 171-188; Def. Ex. 27 at ¶¶ 66-86.) If PureWick was confused, it should have asked for clarification <u>any time over the last year</u>. PureWick did not.

PureWick next takes issue with Sheldon and Thomas citing to depositions <u>that PureWick took</u> and conversations with the ████████████ that PureWick deposed ████████████

██████████ (Pl. Br. at 3.) But ***it is "common practice" in patent cases for experts to cite deposition testimony and rely on conversations with corporate employees***. *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 115, 117 (D. Del. 2016) (denying motion to exclude expert on NIAs because discussions with employees "follow common practice"); *Oracle Corp. v. Parallel Networks, LLP*, No. CIV. 06-414-SLR, 2008 WL 6808433, at *1 (D. Del. Dec. 4, 2008). Indeed, <u>PureWick's own damages expert cited to conversations</u> with PureWick employees in support of his opinions. (Def. Ex. 38, ¶¶ 9, 45, 49 52-53, 56-67, and 94.) Moreover, here, PureWick had the full opportunity to depose these witnesses on the topics that they now seek to exclude. *Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*, 232 F. Supp. 3d 632, 635 (D. Del. 2017).

PureWick also complains that there is more detail in the expert reports including information about ████. Of course, there is more detail as ***interrogatories are not expert reports***. Contrary to PureWick's statements, Sage's employees were not "the sole source" of information on the topics at issue. Rather, Sheldon provided his own independent opinion on the cost, time to

implement, and other details regarding the design option alternatives, as well as cited to documents produced by Sage. (*See* Pl. Ex. 2 at 171-172, 174-175, 188.) And, if PureWick wanted more information about ███████████████ the alternatives, it could have raised the issue any time in the past year including by asking the three witnesses that it deposed.[2] In any case, additional detail in responsive reports does not warrant exclusion, particularly since PureWick had a full opportunity to reply (and did so). (*See* Def. Ex. 31 at ¶¶286-363; Def. Ex. 39 at ¶¶7-29, 52, 92). *See Vehicle IP, LLC v. AT&T Mobility LLC*, 227 F. Supp. 3d 319, 325-326 (D. Del. 2016) (refusing to exclude opinions on NIAs where defendant did not provide specificity until rebuttal reports).

Finally, PureWick falsely implies that Sage hid its theories and violated a Court Order. (Pl. Br. at 1, 2-3.) This serious allegation is astounding given the number of times Sage supplemented, the extensive discovery had on NIAs, PureWick's own failure to provide responses, and PureWick's failure to ever complain. As explained, Sage was to "identify" NIAs when aware of them (*supra*, p. 1), which Sage did (repeatedly). Sage did not identify any new NIAs during expert discovery. And PureWick never complained of any deficiency in Sage's numerous responses.

In sum, Sage experts provided proper expert testimony, and PureWick does not establish any prejudice. PureWick had the opportunity to depose Sage's fact and expert witnesses, offered lengthy opinions by their own experts, and even had reply reports, and PureWick will also have the opportunity cross-examine these persons at trial. *See Vehicle IP*, 227 F. Supp. 3d at 326 (no prejudice where one of the two NIAs was disclosed). The motion to exclude should be denied.

---

[2] PureWick cites an objection regarding costs (Pl. Br. at 3), but PureWick misrepresents Sage's response. "[C]osts associated with developing and/or implementing each [NIA]" are not relevant; what is relevant is costs associated with making the particular design change at issue. For example, ███████████████████████████████████████ (Pl. Ex. 2 at 181.) Moreover, Sage did provide ██████████████, and PureWick questioned Sage witnesses about it. (Pl. Ex. 1 at 83; Def. Ex. 50 at 26-29.)

Dated: October 20, 2021

YOUNG CONAWAY STARGATT
& TAYLOR, LLP


*/s/ Anne Shea Gaza*

Of Counsel:

Robert A. Surrette
Sandra A. Frantzen
Ryan J. Pianetto
McAndrews, Held & Malloy, Ltd
500 West Madison Street
Chicago, IL 60661
(312) 775-8000

Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Defendant/Counterclaim*
*Plaintiff Sage Products, LLC*

28734238.1

- 7 -

# EXHIBIT 110 REDACTED IN ITS ENTIRETY

# EXHIBIT 111 REDACTED IN ITS ENTIRETY

# EXHIBIT 112
# REDACTED IN ITS
# ENTIRETY

# EXHIBIT 113 REDACTED IN ITS ENTIRETY

# EXHIBIT 114
# REDACTED IN ITS
# ENTIRETY

# EXHIBIT 115

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PUREWICK CORPORATION, | |
| Plaintiff and Counterclaim Defendant, | |
| v. | C.A. No. 19-1508-MN |
| SAGE PRODUCTS, LLC, | |
| Defendant and Counterclaim Plaintiff. | |

**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF
INTERROGATORIES TO DEFENDANT (NOS. 1-6)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant and Counterclaim Plaintiff Sage Products, LLC ("Sage") hereby objects and responds to Plaintiff's First Set of Interrogatories to Defendant (Nos. 1-6).

**GENERAL OBJECTIONS**

1.      Sage objects to each of Plaintiff's interrogatories, instructions, and definitions to the extent they attempt to impose any obligations on Sage beyond and/or inconsistent with those set forth in the Federal Rules of Civil Procedure, the District of Delaware Local Rules, the Default Standard for Discovery Including Discovery of ESI ("Default Standard") including any modifications thereafter agreed upon by the parties, the Court's January 9, 2020 Scheduling Order ("Case Scheduling Order"), the Court's February 12, 2020 Stipulated Protective Order ("Protective Order"), or any Order of the Court. Sage further incorporates its objections and responses to PureWick's document requests.

2.      Sage objects to Plaintiff's interrogatories to the extent they seek information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other

privilege or protection afforded by law. Sage further objects to the extent that any interrogatory, definition, or instruction seeks logging of privileged information or communications generated after the filing of this lawsuit or any other category of information protected under Paragraph 1(d) of the Default Standard.

3.      Sage objects to Plaintiff's interrogatories to the extent they seek information not relevant to a claim or defense or to the subject matter of this litigation or not proportional to the needs of the case, considering the importance of the issues at stake, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

4.      Sage objects to Plaintiff's interrogatories as unduly burdensome to the extent that they seek discovery of information already within the possession, custody, and control of Plaintiff or Plaintiff's counsel or information that is available from public sources.

5.      Sage objects to each interrogatory to the extent it seeks identification of "all" documents or information and not identification of representative documents or information, making the interrogatories even more overly broad and unduly burdensome.

6.      Sage objects to Plaintiff's interrogatories to the extent they seek information that is subject to non-disclosure agreements, confidentiality agreements, court protective orders, or other obligations of confidentiality including, for example, patient medical records, to the extent Plaintiff's interrogatories seek such information in a manner inconsistent with such non-disclosure agreement, confidentiality agreement, court protective order, and/or another obligation of confidentiality. Sage will provide responsive, non-privileged, confidential information and documents pursuant to the Protective Order in accordance with its obligations of confidentiality.

7.      Sage objects to the definitions of "Sage" and "Defendant" as overly broad and unduly burdensome and to the extent the definitions and instructions attempt to impose an obligation on Sage to produce, identify, or locate information or documents not in its possession, custody, or control through inclusion of individuals and entities other than Sage Products, LLC in the definition. Sage will only provide information within the possession, custody, and control of Sage.

8.      Sage objects to the definition of "Accused Product" as vague, overly broad, and unduly burdensome to the extent that it includes products other than Sage's PrimaFit® product identified in Plaintiff's Amended Complaint (D.I. 9), as Plaintiff has not identified any other "Accused Product" with any specificity and has not provided any relevant disclosures pursuant to the Case Scheduling Order or the Default Standard. Sage further objects to Plaintiff's interrogatories as overly broad and unduly burdensome to the extent they seek technical information and documents for products not relevant to any claim or defense in this case. For example, "all versions and variations thereof" is vague and indefinite and overbroad and unduly burdensome. Sage is interpreting "Accused Product" to be the Sage product identified and depicted in Plaintiff's Amended Complaint, e.g., at Exhibit 4. Moreover, Sage incorporates by reference General Objection No. 13.

9.      Sage objects to the definition of "PureWick's Product" as vague and indefinite as PureWick has sold a variety of different products, including structurally different products, under the name "PureWick FEC Solution." Unless PureWick further clarifies its definition of "PureWick's Product," Sage is interpreting "PureWick's Product" to be the PureWick System including the PureWick Female External Catheter depicted on https://www.purewickathome.com/ as of March 23, 2020.

10.     Sage object to the definition of "Prior Art" as vague and indefinite. Sage will interpret "Prior Art" to the best of its understanding of the term as used in the context of patent law.

11.     Sage objects to Plaintiff's interrogatories to the extent they require Sage to review, search, identify, or collect information and documents from other litigations including documents and things in the possession of Sage's outside counsel.

12.     Sage objects to Plaintiff's interrogatories as overly broad and unduly burdensome to the extent they require searching and collection from custodians and data sources other than those identified in Sage's disclosures pursuant to Paragraph 3 of the Default Standard or any modification thereof agreed-upon by both Parties.

13.     Sage further objects to Plaintiff's interrogatories to the extent they are unbounded in time and therefore seek irrelevant information. For example, Sage objects to Plaintiff's interrogatories that seek information from prior to six years before the filing of the complaint to the extent such interrogatories are not in accordance with Paragraph 4(e) of the Default Standard. Sage further objects to the extent the interrogatories seek infringement-related or damages-related information regarding the PrimaFit® during a time period that predates the issuance of the Patents-In-Suit or prior to Sage receiving notice of the Patents-In-Suit by the filing of the Complaint. Sage will not provide infringement-related or damages-related information from prior to August 2019 at least until Plaintiff produces *prima facie* evidence of patent marking of the 508 Patent and 376 Patent.

14.     Sage objects to Plaintiff's interrogatories as premature to the extent they seek information in advance of the timelines set forth in the Default Standard or the Case Scheduling

4

Order. For example, expert-related discovery will proceed as required by the Case Scheduling Order.

15. Sage objects to the premature service of these interrogatories (Nos. 1-6), which were served prior to the parties' Rule 26(f) conference in violation of Federal Rule of Civil Procedure 26(d). The parties have agreed that responses to these interrogatories (Nos. 1-6) will be due on March 23, 2020.

16. Sage's investigation and preparation for trial in the above-captioned litigation is continuing and discovery in this action has just commenced. All responses to the following interrogatories are based on information presently known to Sage after a reasonable effort to locate information called for by these interrogatories. Thus, Sage's responses are based on preliminary information in its possession and Sage reserves the right to supplement its responses to the extent Sage learns of additional information that may develop or come to Sage's attention at a later time. In addition, Sage's objections as set forth herein are made without prejudice to Sage's right to assert any additional or supplemental objections should Sage discover additional grounds for such objections.

17. Sage is willing to meet and confer to discuss its objections in a good faith attempt to resolve or narrow any differences between the parties.

## **INTERROGATORIES**

1. For each month and year that the Accused Product has been sold or otherwise distributed by or for Defendant, identify on a monthly basis by customer the total number of units sold, gross revenues, net revenues, gross profits, net profits, and costs.

**RESPONSE TO INTERROGATORY 1:**

In addition to the General Objections set forth above, Sage objects to this interrogatory as vague, ambiguous, indefinite, overly broad and unduly burdensome and to the extent it seeks

10. Plaintiff has suffered no damages.

11. This is an exceptional case, and Sage is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

Thus, the interrogatory is unduly compound and improper under established law.

Sage further objects to this interrogatory as premature because it seeks information that is the subject of ongoing discovery and investigation, both of which are in the early stages. Discovery has just started in this case and there has been no deposition discovery. Sage objects to this interrogatory to the extent it seeks information which is protected by any applicable privilege, including attorney-client privilege and/or work product immunity doctrine. Sage objects to this interrogatory because it attempts to impose obligations on Sage beyond and/or inconsistent with those set forth in the Federal Rules of Civil Procedure, the District of Delaware Local Rules, the Default Standard, the Case Scheduling Order, the Protective Order, or any Order of the Court.

This interrogatory is improper as explained above. Subject to and without waiving any general or specific objections, Sage will not further respond to this interrogatory until it is either narrowed or withdrawn. However, Sage hereby incorporates Sage's Answer, Defenses, and Counterclaims (D.I. 12), which explain the basis of its defenses as well as its Answering Brief in Opposition to PureWick's Motion to Dismiss and Motion to Strike (D.I. 19). Sage also incorporates its responses to Interrogatories Nos. 1-4 and 6, which relate to at least some of its affirmative defenses.

6.     For each of the Patents-in-Suit, identify and describe in detail any alleged non-infringing alternative that Defendant contends can be used as an alternative to each Patent-in-Suit, including but not limited to: (i) a description of each alleged non-infringing alternative; (ii) a description of when and how each alleged non-infringing alternative was developed; (iii) the identity of individuals involved in developing and/or most knowledgeable about each alleged non-infringing alternative (if applicable); (iv) costs associated with developing and/or implementing

each alleged non-infringing alternative; and (v) steps and the time required to develop and/or implement each alleged non-infringing alternative.

**RESPONSE TO INTERROGATORY 6:**

In addition to the General Objections set forth above, Sage objects to this interrogatory as vague, indefinite, ambiguous, overly broad and unduly burdensome and to the extent it seeks information that is not relevant to the claims or defenses of any party or not proportional to the needs of the case. Sage objects to this interrogatory as a premature contention interrogatory that has been served before a substantial amount of discovery has been completed. Discovery has just started in this case and there has been no deposition discovery. Moreover, as explained in response to Interrogatory No. 3, which is hereby incorporated by reference, Plaintiff has not even identified how the PrimaFit® infringes or even what claims are alleged to infringe. Sage objects to this interrogatory as premature to the extent it seeks information that is the subject of expert discovery, which will be provided according to the Case Scheduling Order. Sage also objects to this interrogatory as premature because the parties have not yet proffered their proposed constructions of the asserted claims, and the Court's final claim constructions may affect Sage's non-infringing alternative contentions. Sage objects to this interrogatory to the extent it calls for a legal conclusion regarding non-infringing alternatives to the alleged inventions claimed in the Patents-In-Suit.

Sage further objects to this interrogatory as vague and indefinite, at least to the extent that it requires a non-infringing alternative to be "developed." Sage further objects to this interrogatory as vague, indefinite and irrelevant at least because "costs" has not been defined by Plaintiff and is not reasonably susceptible to precise definition in this context and "costs associated with developing and/or implementing each alleged non-infringing alternative" is not relevant to a claim or defense or to the subject matter of this litigation. Sage further objects to Plaintiff's interrogatory as vague, indefinite and irrelevant because "steps and the time required to develop and/or

implement each alleged non-infringing alternative" has not been defined by Plaintiff and is not reasonably susceptible to precise definition in this context, and seeks information not relevant to a claim or defense or to the subject matter of this litigation. Sage also objects to this interrogatory to the extent it seeks information outside of Sage's possession, custody, or control. Sage objects to this interrogatory to the extent it seeks information which is protected by any applicable privilege, including attorney-client privilege and/or work product immunity doctrine. Sage objects to this interrogatory because it contains multiple discrete parts, which should be counted as separate interrogatories pursuant to Fed. R. Civ. P. 33.

Subject to and without waiving any general or specific objections, Sage states that discovery is ongoing and Sage will supplement its response to this interrogatory as necessary pursuant to Fed. R. Civ. P. 26(e) after further discovery has been conducted including an explanation by Plaintiff on how PrimaFit® infringes and a determination by the Court on claim construction issues. Sage expressly reserves the right to supplement, modify, or amend its responses contained herein.

Dated: March 23, 2020

*As to objections only,*

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


*/s/ Samantha G. Wilson*

Of Counsel:

Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

Robert A. Surrette
Sandra A. Frantzen
Christopher M. Scharff
Bryce R. Persichetti
McAndrews, Held & Malloy, Ltd
500 West Madison Street
Chicago, IL 60661
(312) 775-8000
bsurrette@mcandrews-ip.com
sfrantzen@mcandrews-ip.com
cscharff@mcandrews-ip.com
bpersichetti@mcandrews-ip.com

*Attorneys for Defendant and Counterclaim
Plaintiff Sage Products, LLC*

26191021.1

## <u>CERTIFICATE OF SERVICE</u>

I, Anne Shea Gaza, hereby certify that on October 27, 2021, I caused to be electronically

filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/

ECF, which will send notification that such filing is available for viewing and downloading to

the following counsel of record:

> John W. Shaw, Esquire
> Nathan R. Hoeschen, Esquire
> Shaw Keller LLP
> I.M. Pei Building
> 1105 North Market Street, 12th Floor
> Wilmington, DE 19801
> *jshaw@shawkeller.com*
> *nhoeschen@shawkeller.com*
>
> *Attorneys for Plaintiff/Counterclaim Defendant*

I further certify that on October 27, 2021, I caused the foregoing document to be served

via electronic mail upon the above-listed counsel and on the following counsel:

> Steven C. Cherny, Esquire
> Brian P. Biddinger, Esquire
> Matthew A. Traupman, Esquire
> Nicola R. Felice, Esquire
> Jason C. Williams, Esquire
> Quinn Emanuel Urquhart & Sullivan, LLP
> 51 Madison Avenue, 22nd Floor
> New York, NY 10010
> *stevencherny@quinnemanuel.com*
> *brianbiddinger@quinnemanuel.com*
> *matthewtraupman@quinnemanuel.com*
> *nicolafelice@quinnemanuel.com*
> *jasonwilliams@quinnemanuel.com*

Athena Dalton, Esquire
Quinn Emanuel Urquhart & Sullivan, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
*athenadalton@quinnemanuel.com*

*Attorneys for Plaintiff/Counterclaim Defendant*

Dated: October 27, 2021

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
*agaza@ycst.com*
*swilson@ycst.com*

*Attorneys for Defendant/Counterclaim Plaintiff
Sage Products, LLC*

2