IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PUREWICK CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1508 (MN) |
| | ) | |
| SAGE PRODUCTS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **ORDER AFTER PRETRIAL CONFERENCE**

AND NOW, this 25th day of March 2022, after a Pretrial Conference and upon consideration of the Proposed Pretrial Order (D.I. 286) and the discussion at the March 21, 2022 Pretrial Conference (D.I. 296), IT IS HEREBY ORDERED that:

1.      The Proposed Pretrial Order is ADOPTED as modified by any discussion at the Pretrial Conference.

2.      A five-day jury trial will begin on March 28, 2022 at 9:30 a.m. with jury selection. Subsequent trial days will begin at 9:00 a.m.  Each side should be prepared to present its case until 4:30-4:45 p.m. each trial day, although the end of the trial day may, at the discretion of the Court, be earlier or later than 4:30-4:45 p.m.

3.      The trial will be timed.  Each side is allowed up to eleven (11) hours for its opening statement, its direct and cross-examination of witnesses, and argument of evidentiary issues.  Each side is allowed up to one (1) additional hour for closing arguments.[1]  Time during the trial day that

---

[1]      At Defendant's request, the Court is allocating to each party an additional hour for presentation of evidence.

does not neatly fit into one of the stated categories will be attributed to one side or the other as the

Court deems appropriate.

4.      Issues that need to be addressed outside the presence of the jury will be taken up at

8:15 a.m., at the lunch break, at the end of the day, or at such other time that the Court determines.

Those issues – including objections to anticipated exhibits or demonstratives – must be brought to

the attention of the Court's judicial administrator by 7:00 a.m. on the day on which the evidence

objected to will be adduced.  There will be thirty to forty-five minutes for lunch and a fifteen-

minute break in the morning and in the afternoon.

5.      Each side may have no more than six (6) people in the courtroom at any given time.

In its discretion, the Court may modify these limitations at any time or impose additional

restrictions to ensure the safety of court personnel, the jury, and all persons attending trial.

6.      For the reasons stated at the Pretrial Conference, Plaintiff's Motion *in Limine* No. 1

(D.I. 286, Schedule F1) is GRANTED,[2] Plaintiff's Motion *in Limine* No. 2 (D.I. 286, Schedule

F2) is GRANTED WITHOUT PREJUDICE,[3] Plaintiff's Motion *in Limine* No. 3 (D.I. 286,

---

[2]      As explained at the Pretrial Conference, Defendant is precluded from relying on evidence or argument that Sage's patents relate to the accused products in this litigation.

[3]      As explained at the Pretrial Conference, Defendant cannot rely on the PTAB's finding of unpatentability in the final written decision for U.S. Patent No. 8,287,508 ("the '508 Patent") to support its assertion that prior art invalidates the asserted patents in this litigation.  Because this motion is granted without prejudice, Defendant may again request to introduce the PTAB's findings at trial if Defendant believes there is a situation where these findings should be admitted.  Any requests shall be outside the presence of the jury. With this decision, however, the Court is not prohibiting Defendant from relying on specific statements made by Plaintiff or its experts in the PTAB proceeding to impeach contrary statements made during the trial.  If impeachment under these circumstances were to occur, Defendant cannot refer to the '508 Patent's IPR proceeding directly and instead must refer to any contrary statements "as being related to 'another matter,' without disclosing the nature, details, or results of the IPR[.]" *Pac. Biosciences of California, Inc. v. Oxford Nanopore Techs., Inc.*, No. CV 17-1353-LPS-CJB, 2020 WL 954938, at *2 (D. Del. Feb. 27, 2020).

Schedule F3) is DENIED-AS-MOOT, Defendant's Motion *in Limine* No. 1 (D.I. 286, Schedule F4) is GRANTED-IN-PART,[4] and Defendant's Motion *in Limine* No. 2 (D.I. 286, Schedule F5) is GRANTED-IN-PART.[5]

7.      As explained at the Pretrial Conference, the parties may not provide witness binders or physical copies of documents (demonstratives, deposition transcripts, etc.) to the Court (but must do so for the witnesses).  As instructed at the Pretrial Conference, the parties have provided electronic copies of ALL trial exhibits to the Courtroom Deputy and the Judicial Administrator. The trial exhibits must be labeled with JTX, DTX or PTX prefixes with exhibit numbers, and the trial exhibits must be organized in a single folder.  Additionally, at the beginning of each trial day, the parties shall provide to the Courtroom Deputy and the Judicial Administrator electronic copies of witness folders containing the exhibits and demonstratives (if any) to be used on direct examination and cross-examination of any witnesses expected to be called that day.

8.      At the Pretrial Conference, Plaintiff raised the issue of what Defendant's references to "brown tape product(s)" means.  It is apparent from arguments previously made, deposition testimony submitted, and Defendant's Exhibit 488 handed to the Court during the Pretrial Conference that there were different versions or prototypes of the "brown tape product" over time.

---

[4]      As explained at the Pretrial Conference, Plaintiff cannot rely on comparisons between the accused products and Plaintiff's product or the figures from the asserted patents to prove infringement.  The Court finds, however, that Plaintiff may be able to rely on these comparisons for other issues, such as copying and lost profits.  If a situation arises at trial where a comparison may be appropriate, Plaintiff must request the Court's permission to make that comparison outside the presence of the jury.

[5]      As explained at the Pretrial Conference, Plaintiff cannot argue that Defendant breached the confidentiality agreement.  The Plaintiff is not precluded, however, from relying on the existence of the confidentiality agreement or the information conveyed as part of the confidentiality agreement because this evidence may be relevant to Plaintiff's willful infringement and copying claims.

Thus, the Court instructed Defendant that it may not generally group together or reference unspecified products as the "brown tape product." It was, however, agreed that Defendant may assert that a particular brown tape product – the one provided to CONNECT (as depicted in the CONNECT video) – is prior art to the asserted claims. The Court asked for additional submissions about the "brown tape product(s)" used by DD, and Defendant provided that information on March 23, 2022. (D.I. 300). Having reviewed the materials submitted and again it being clear that multiple versions of the "brown tape product(s)" existed over time, Defendant may argue that one or more of the versions of products used by DD are invalidating prior art. To the extent that Defendant asserts that any given product (version) used by DD is prior art and is covered by the asserted claims, it must establish that that product (version) alone meets all the claim limitations. Defendant, however, may not use Plaintiff's response to Interrogatory No. 6 as a purported admission that any particular brown tape product (version) before "approximately September 2015" is covered by the claims without prior permission from the Court.[6]

9.      Any trial logistics should be coordinated through the Courtroom Deputy.

The Honorable Maryellen Noreika
United States District Judge

---

[6]    There is no admission in the response to Interrogatory No. 6 that any product (version) prior to "approximately September 2015" is covered by the asserted claims. Thus, in light of the multiple versions of the "brown tape products," the Court finds that use of the response to Interrogatory No. 6 as a purported admission that any earlier product(s) (version(s)) are covered by the claims without evidence that the earlier product(s) (version(s)) and the "brown tape wick" referenced in the interrogatory response are the same would be confusing to the jury and prejudicial to Plaintiff.