IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PUREWICK CORPORATION, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1508-MN |
| | ) | |
| SAGE PRODUCTS, LLC, | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

## **FINAL JURY INSTRUCTIONS**

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.     GENERAL ................................................................................................................1

    A.    INTRODUCTION ........................................................................................1

    B.    JURORS' DUTIES .......................................................................................2

    C.    EVIDENCE DEFINED ................................................................................3

    D.    DIRECT AND CIRCUMSTANTIAL EVIDENCE ................................................4

    E.    CONSIDERATION OF EVIDENCE ...............................................................5

    F.    CREDIBILITY OF WITNESSES ...................................................................6

    G.    EXPERT WITNESSES .................................................................................7

    H.    DEPOSITION TESTIMONY ........................................................................8

    I.    USE OF NOTES ........................................................................................9

    J.    BURDENS OF PROOF ..............................................................................10

II.    PATENT JURY INSTRUCTIONS ...............................................................................12

    A.    GENERAL ..............................................................................................12

    B.    THE CLAIMS OF A PATENT ....................................................................13

    C.    INFRINGEMENT – GENERALLY ...............................................................15

    D.    DIRECT, LITERAL INFRINGEMENT ..........................................................16

    E.    DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS ............18

    F.    INDIRECT INFRINGEMENT: ACTIVE INDUCEMENT ...................................19

    G.    INDIRECT INFRINGEMENT: CONTRIBUTORY INFRINGEMENT .............20

    H.    WILLFUL INFRINGEMENT – '376 AND '989 PATENTS ..............................21

    I.    INVALIDITY – GENERALLY ....................................................................22

    J.    PERSON OF ORDINARY SKILL IN THE ART ...............................................23

    K.    PRIOR ART – GENERALLY .....................................................................24

L.      INVALIDITY: ANTICIPATION ......................................................................25

M.      INVALIDITY: PRINTED PUBLICATIONS AND PRIOR PATENTS ..............26

N.      INVALIDITY: OBVIOUSNESS (GENERALLY)................................................27

O.      INVALIDITY: OBVIOUSNESS (SECONDARY CONSIDERATIONS)...........30

III.    DAMAGES.....................................................................................................................32

A.      DAMAGES – GENERALLY.................................................................................32

B.      DAMAGES – KINDS OF DAMAGES..................................................................34

C.      LOST PROFITS – "BUT FOR" TEST...................................................................35

D.      LOST PROFITS – TWO-SUPPLIER MARKET...................................................36

E.      LOST PROFITS – DEMAND ...............................................................................37

F.      LOST PROFITS – ACCEPTABLE NON-INFRINGING SUBSTITUTE
        PRODUCTS............................................................................................................38

G.      LOST PROFITS – CAPACITY.............................................................................40

H.      LOST PROFITS – AMOUNT OF PROFIT ..........................................................41

I.      REASONABLE ROYALTY – ENTITLEMENT .................................................42

J.      REASONABLE ROYALTY - DEFINITION ......................................................43

K.      REASONABLE ROYALTY: RELEVANT FACTORS TO THE
        HYPOTHETICAL NEGOTIATION.....................................................................45

L.      DAMAGES – APPORTIONMENT ......................................................................47

M.      REASONABLE ROYALTY – MULTIPLE PATENTS.......................................48

N.      REASONABLE ROYALTY:  TIMING ...............................................................49

O.      REASONABLE ROYALTY: AVAILABILITY OF NON-INFRINGING
        SUBSTITUTES .....................................................................................................50

P.      DATE OF COMMENCEMENT OF DAMAGES .................................................51

IV.     DELIBERATIONS AND VERDICT ...........................................................................52

A.      DELIBERATION AND VERDICT – INTRODUCTION ....................................52

B.      UNANIMOUS VERDICT ......................................................................................53

C.      DUTY TO DELIBERATE ....................................................................................54

D.      SOCIAL MEDIA ..................................................................................................55

E.      COURT HAS NO OPINION ...............................................................................56

I.      **GENERAL**

A.      **INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. Then we will hear the closing arguments. After that, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case. We will go over that later.

1

### B.    <u>JURORS' DUTIES</u>

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

### C.    **EVIDENCE DEFINED**

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, including deposition transcript testimony that has been played by video or read to you, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. They are offered solely as an aid to help you in your determination of the facts. The lawyers' questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record. You must ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way. Make your decision based only on the evidence, as I have defined it here, and nothing else.

**D.**     **DIRECT AND CIRCUMSTANTIAL EVIDENCE**

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence." I will now remind you what each means.

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

### E.     <u>CONSIDERATION OF EVIDENCE</u>

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

F.       **CREDIBILITY OF WITNESSES**

You are the sole judges of each witness's credibility. You may believe everything a witness says, or part of it, or none of it. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at the trial in person or by deposition testimony played by video or read to you. You have the right to distrust such witness's testimony and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

G.      **EXPERT WITNESSES**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

**H.**     <u>**DEPOSITION TESTIMONY**</u>

During the trial, certain testimony was presented to you by playing the video excerpts or reading from a deposition. The deposition testimony may have been edited or cut to exclude irrelevant testimony as the parties have only a limited amount of time to present you with evidence. You should not attribute any significance to the fact that the depositions may appear to have been edited. Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

## I.     <u>USE OF NOTES</u>

You may have taken notes during trial to assist your memory. As I instructed you at the beginning of the case, you should use caution in consulting your notes. There is generally a tendency to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.

Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

J.      **BURDENS OF PROOF**

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof."

In a patent case such as this, there are two different burdens of proof. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." I told you about these two standards of proof during my preliminary instructions to you and I will now remind you what they mean.

PureWick has accused Sage of infringing claims of three patents and contends that the infringement of two of the patents was willful.  PureWick has the burden of proving its claims for infringement and willfulness and the amount of monetary damages by a preponderance of the evidence. This means PureWick has to produce evidence which, when considered in light of all the facts, leads you to believe that what PureWick claims is more likely true than not. To put it differently, if you were to put PureWick's and Sage's evidence on the opposite sides of the scale, the evidence supporting PureWick's claims would have to make the scales tip somewhat to its side. If the scale should remain equal or tip in favor of Sage, you must find for Sage.

In addition to denying PureWick's claims that it infringes, Sage asserts that all of the asserted patent claims are invalid. Sage has the burden of proving that the asserted claims are invalid and has to do so by clear and convincing evidence. Clear and convincing evidence is evidence that persuades you that what Sage seeks to prove is highly probable. Proof by clear and convincing evidence is thus a higher burden of proof than proof by a preponderance of the evidence.

You may have heard of the "beyond a reasonable doubt" burden of proof from criminal cases. That requirement is the highest burden of proof in our judicial system. It applies in criminal

cases, but does not apply to civil cases, like this one, and, therefore, you should put it out of your mind.

## II.  PATENT JURY INSTRUCTIONS

### A.  GENERAL

PureWick contends that Sage literally infringes claims 1, 5, and 9 of the '376 patent by making, using, offering to sell, and selling the PrimaFit device.  PureWick also contends that Sage indirectly infringes claims 1, 5 and 9 of the '376 patent by inducing or contributing to infringement by others.

PureWick also contends that Sage literally infringes claims 1 and 6 of the '989 patent by using the PrimaFit device. Further, PureWick contends that Sage indirectly infringes claims 1 and 6 of the '989 patent by inducing or contributing to infringement by others.

PureWick also contends that Sage literally infringes claims 1 and 2 of the '407 patent by making, using, offering to sell, and selling the PrimoFit device. PureWick also contends, alternatively, that Sage infringes claim 2 of the '407 patent under the doctrine of equivalents by making, using, offering to sell, or selling the PrimoFit device.

PureWick contends that Sage has willfully infringed the '376 and '989 patents.

Sage denies all of PureWick's infringement and willfulness contentions.  Sage also contends that claims 1, 5, and 9 of the '376 patent, claim 1 of the '989 patent and claims 1 and 2 of the '407 patent are invalid as anticipated by the prior art.  Sage also contends that claims 1, 5, and 9 of the '376 patent, claims 1 and 2 of the '989 patent and claims 1 and 2 of the '407 patent are invalid because they would have been obvious to a person of ordinary skill in the art.

Your job is to decide whether Sage has infringed each of the asserted claims and whether each asserted claim is invalid. You will also need to make a finding as to whether any infringement of the '376 and '989 patents was willful and calculate damages if appropriate.

### B.   THE CLAIMS OF A PATENT

Before you can decide this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of a patent.  The claims describe the invention and describe what the patent owner may prevent others from doing.

Patent claims may exist in two forms, referred to as independent claims or dependent claims. An independent claim does not refer to any other claim of the patent. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  For example, claim 1 of the '376 patent is an independent claim.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the limitations of the other claims or claims to which it refers, as well as the additional limitations of the dependent claim itself.  Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.  For example, claim 5 of the '376 patent is a dependent claim.  To determine what dependent claim 5 of the '376 patent covers, the words of that claim and the words of independent claim 1 of the '376 patent must be read together.

It is my job as a judge to define the terms of the claims and to instruct you about the meaning.  You must apply my definitions to the issues that you are asked to decide. I have determined the meaning of the following terms of the asserted claims of the '376 and '989 patents:

- "casing having a fluid reservoir at a first end [and] . . ., a fluid outlet at a second end . . ." means "an outer cover having a fluid reservoir at a first end and a fluid outlet at a second end" ('376 Patent, claim 1; '989 Patent, claim 1);

- "wicking material" means "an article that moves moisture by capillary action from one surface of the article to the other" ('376 patent, claim 9). Wicking material in the '407 patent also has this same meaning ('407 patent, claim 1).

I have also determined the meaning of the following additional terms of the asserted claims of the '407 patent:

- "the chamber being defined at least partially by . . . the porous material and the . . . layer of impermeable material" will be its plain and ordinary meaning with the clarification that, to be at least partially defined by the porous material and the impermeable layer, the porous material and the impermeable layer must each touch the chamber at some point ('407 patent, claims 1).

You must accept my definition of these words as being correct.  It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and invalidity.

For any words in the claim for which I have not provided you with a definition, you should apply their ordinary meaning in the field of the patents. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

### C.   <u>**INFRINGEMENT – GENERALLY**</u>

I will now instruct you as to the rules you must follow when deciding whether PureWick has proven that Sage has infringed the patents-in-suit. The United States' patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented product or method in the United States during the term of the patent. Any person or company that has engaged in any of those acts without the patent owner's permission infringes the patent.

Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement of one claim but no infringement of another. In this case, there are three possible ways that a claim may be infringed. The three types are called: (1) direct infringement; (2) induced infringement; and (3) contributory infringement. Induced infringement and contributory infringement are referred to as indirect infringement.  PureWick alleges that Sage has directly infringed the asserted claims of the '407 patent. PureWick alleges that Sage has directly and indirectly infringed the asserted claims of the '376 and '989 patents.

### D.   **DIRECT, LITERAL INFRINGEMENT**

There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." In this case, both types of direct infringement are at issue. You must determine whether PureWick has proven literal infringement of the asserted claims of the '376, '989 and '407 patents.  For claim 2 of the '407 patent only, you must also determine whether PureWick has proven infringement under the doctrine of equivalents.

In order to prove literal infringement of the claims of the '376 and '407 patents, PureWick must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Sage made, used, offered for sale, or sold in the United States, a device that meets all of the requirements of the asserted claims of those patents. In order to prove literal infringement of the method claims of the '989 patent, PureWick must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Sage performed each of the steps of the asserted claims of the '989 patent.

You must determine, separately for each asserted claim of the '376, '989 and '407 patents whether or not there is infringement. There is one exception to this rule. If you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that claim. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the accused devices and methods meet additional requirements of any claims that depend from the independent claim to determine whether the dependent claims have also been infringed. Remember, a dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

To determine literal infringement of the device claims of the '376 patent, you must compare the PrimaFit device with each asserted claim of the patent to determine whether each and every one of the requirements of a given claim is satisfied.

To determine literal infringement of the method claims of the '989 patent, you must compare any alleged use by Sage of the PrimaFit device with each asserted method claim of the '989 patent to determine whether Sage performed each and every one of the requirements of a given method step.  The '989 patent's method claims are directly infringed by Sage only if Sage performs in the United States each and every step recited in the claims.

To determine literal infringement of the device claims of the '407 patent, you must compare the PrimoFit device with each asserted device claim of the '407 patent to determine whether each and every one of the requirements of a given claim is satisfied.

When performing these comparisons, you should not compare the accused Sage products with PureWick's products or the descriptions or figures in the '376, '989 and '407 patents.

The same element of the accused product may satisfy more than one element of a patent claim.

The presence of additional elements in an accused device or method of using a device does not mean that the device or method does not infringe a patent claim.  Whether or not Sage's products or use of the products represents an improvement either over the patent claims or over another device is not relevant to whether or not Sage infringes  PureWick's asserted patent claims. As long as the Accused Product includes all of the elements of an asserted patent claim, then that patent claim is infringed by the Accused Product even if that product also has additional elements.

You may find direct infringement based on one instance of the claimed product being made, used, offered for sale, or sold by Sage.  Proof of direct infringement may be based on circumstantial evidence.

## E.   DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

If a company makes, uses, sells, or offers to sell within the United States a product that does not literally meet all of the elements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product satisfies that claim under the "doctrine of equivalents." Here, as I have already mentioned, in addition to literal infringement, PureWick contends that Sage infringes claim 2 of the '407 patent under the "doctrine of equivalents."

Under the doctrine of equivalents, a product infringes a claim if the accused product contains elements that literally meet or are equivalent to each and every element of the claim. You may find that a structure in the accused product is equivalent to a claim element that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the claim element.

In deciding whether a claim element and structure of a device are equivalents, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the structure of the accused product with the claimed element. However, known interchangeability between the claim element and the structure in the accused product is not necessary to find infringement under the doctrine of equivalents.

In order to prove infringement by "equivalents," PureWick must prove the equivalency of the structure in the accused product to the claim element in claim 2 of the '407 patent that is not literally present by a preponderance of the evidence.

### F.     <u>INDIRECT INFRINGEMENT: ACTIVE INDUCEMENT</u>

PureWick also accuses Sage of actively inducing third parties, such as hospitals and patients, to directly infringe the asserted claims of the '376 patent and hospitals to directly infringe the asserted claims of the '989 patent.  As with direct infringement, you must determine whether there has been inducement on a claim-by-claim basis.

To find that Sage actively induced its customers to infringe, PureWick must prove by a preponderance of the evidence that:

1.     A third-party directly infringe the asserted claims;

and that Sage actively induced these acts of infringement by third parties, meaning that:

2.     Sage aided, instructed, or otherwise acted with the intent to cause acts by third parties that would constitute direct infringement of the asserted patents;

3.     Sage knew of the patent at that time; and

4.     Sage knew that the actions of third parties would infringe at least one asserted claim.

### G.      INDIRECT INFRINGEMENT: CONTRIBUTORY INFRINGEMENT

PureWick also asserts that Sage has contributed to direct infringement of the '376 patent by hospitals and patients and of the '989 patent by hospitals. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

To establish contributory infringement, PureWick must prove by a preponderance of the evidence that a third party directly infringes the claim.  You must also find that the following are met to establish contributory infringement:

1. Sage sold or offered for sale a component of a product or an apparatus for use in an infringing method during the time the 376 and 989 patents were in force;

2. the component or apparatus is not a staple article or commodity of commerce capable of substantial non-infringing use;

3. the component or apparatus constitutes a material part of the claimed invention;

4. Sage was aware of the particular patent at issue (376 patent, 989 patent); and

5. Sage knew that the component or apparatus was especially made or adapted for use as an infringement of the claim.

A "staple article or commodity of commerce capable of substantial non-infringing use" is something that has uses other than as a part or component of the patented product or in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

### H.   <u>WILLFUL INFRINGEMENT – '376 AND '989 PATENTS</u>

In this case, PureWick contends that Sage infringed the '376 and '989 patents willfully. If you find that Sage infringed a valid claim of the '376 and '989 patents, then you must also determine whether or not Sage's infringement was willful.

To show that Sage's infringement was willful, PureWick must prove by a preponderance of the evidence that Sage knew of the asserted patents and deliberately or intentionally infringed them. You may not determine that the infringement was willful just because Sage knew of PureWick's patents, without more.  In determining whether PureWick has proven that Sage's infringement was willful, you must consider all of the facts and circumstances and assess Sage's knowledge at the time the challenged conduct occurred.  Facts that may be considered include, but are not limited, to:

1.   whether Sage had knowledge of the '376 and '989 patents;

2.   whether or not Sage acted consistently with the standards of behavior for its industry;

3.   whether or not Sage intentionally copied a PureWick product that is covered by the asserted patents;

4.   whether or not Sage reasonably believed it did not infringe or that the patents were invalid;

5.   whether Sage knew, or should have known, that its conduct involved an unreasonable risk of infringement;

6.   whether or not Sage made a good-faith effort to avoid infringing these patents, for example, whether Sage attempted to design around these patents; and

7.   whether or not Sage tried to cover up its infringement.

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement.

21

## I.     <u>INVALIDITY – GENERALLY</u>

I will now instruct you on the rules you must follow in deciding whether or not Sage has proven that any asserted claims of the '376, '989, and '407 patents are invalid.

To prove that a claim of a patent is invalid, Sage must persuade you by clear and convincing evidence.

As I have already told you, Sage contends that certain of the asserted claims of the '376, '989, and '407 patents are invalid as anticipated by the prior art and all of them are invalid as obvious in view of prior art and the knowledge of a person of ordinary skill in the art.

You must determine whether each of the asserted claims is invalid on a claim-by-claim basis. For example, even if an independent claim is invalid, this does not mean that the dependent claims that depend from it are automatically invalid.

## J.    PERSON OF ORDINARY SKILL IN THE ART

As I mentioned, aspects of invalidity are determined from the perspective of a person of ordinary skill in the art in the field of the invention at the time of the invention date.  Thus, prior art and other aspects of this case must be evaluated from the perspective of one of ordinary skill in the field of the invention as of the time of invention. You must determine the level of ordinary skill in the field of the invention.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

1.    the level of education and experience of persons actively working in the field at the time of invention, including the inventors;

2.    the types of problems encountered in the art at the time of invention;

3.    prior art solutions to those problems;

4.    rapidity with which innovations are made; and

5.    the sophistication of the technology in the art at the time of invention.

### K.      PRIOR ART – GENERALLY

Under the patent laws, a patent is valid only if the invention claimed in the patent is new and not obvious in light of what came before. That which came before is referred to as "prior art." Prior art includes items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention. To be prior art, the item or reference must have been made, known, used, published, or patented either before the invention was made or more than one year before the filing date of the patent application.

## L.    **INVALIDITY: ANTICIPATION**

An invention must be new to be entitled to patent protection under the U.S. patent laws. If a device or process has been previously invented and disclosed to the public, then it is not new, and therefore the claimed invention is "anticipated" by the prior art. To prove anticipation, Sage must prove that the claimed inventions are not new by clear and convincing evidence.

In this case, Sage contends that the asserted claims of the '376, '989, and '407 patents are anticipated. You must determine what is the prior art that may be considered in determining whether the asserted claims of the '376, '989, and '407 patents are new or anticipated.

Anticipation must be determined on a claim-by-claim basis. In order for a patent claim to be anticipated by the prior art, each and every limitation in the claim must be present in a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art.  Although you may not combine two or more items of prior art to find anticipation, you may find a single prior art reference anticipates if it incorporates by reference another prior art reference.

In determining whether every one of the elements of the claimed invention is found in the prior publications, patents, and devices identified by Sage, you should consider what a person of ordinary skill in the art would have understood from his or her review of those items.

A printed publication or patent will not anticipate a patent claim unless it contains a description of the invention covered by the patent claims that is sufficiently detailed that it teaches a skilled person how to make and use the invention without undue experimentation.

The same element of the prior art may satisfy more than one element of a patent claim.

## M.     INVALIDITY: PRINTED PUBLICATIONS AND PRIOR PATENTS

Sage contends that the asserted claims of the '376, '989, and '407 patents are invalid because the inventions defined in those claims were described in a printed publication or were patented in the United States or a foreign country before the filing date(s) of the asserted claims of the '376, '989, and '407 patents.  In this case, the application for the '989 patent was filed on September 8, 2016, and the application for the '376 patent was filed on June 1, 2017.  The application for the '407 patent was filed on August 16, 2016.

A patent claim is invalid if the invention defined by that claim was described in a publication or patent printed before the filing date of the patents.

N.     **INVALIDITY: OBVIOUSNESS (GENERALLY)**

Even though an invention has not been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made. Sage contends the asserted claims of the '376, '989, and '407 patents are invalid as obvious. Sage may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the pertinent art at the time of the invention of the patents-in-suit.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

In determining whether an asserted claim is obvious, you must consider the level of ordinary skill in the pertinent field that someone would have had at the time the invention was made, the scope and content of the prior art, the differences between the prior art and the claimed invention, and, if present, objective evidence or secondary considerations, which I will describe shortly.

The person of ordinary skill in the art is presumed to be aware of all of the pertinent prior art. A person of ordinary skill is also a person of ordinary creativity, not an automaton. Do not use hindsight; consider only what was known at the time of the inventions.

Common sense teaches, however, that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle. When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this

27

leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense. In that instance the fact that a combination was obvious to try might show that it was obvious.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. You must also consider the differences, if any, between the prior art and the claimed inventions. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the relevant time, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does. The motivation to modify the prior art to arrive at the claimed invention need not be the same motivation the inventor had. You may take into account such factors as: (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; and (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. In determining whether a reference teaches away from an invention, you must keep in mind that a reference does not teach away if it merely expresses a general preference. A reference does not teach away if it does not criticize, discredit or otherwise discourage investigation into the invention claimed. To find it rendered the claimed invention obvious, you must find that the prior

art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

### O.    INVALIDITY: OBVIOUSNESS (SECONDARY CONSIDERATIONS)

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

a.    Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure, advertising or similar activities);

b.    Whether the claimed invention satisfied a long-felt need;

c.    Whether others had tried and failed to make the claimed invention;

d.    Whether others copied the claimed invention;

f.    Whether the claimed invention achieved unexpected results;

g.    Whether others in the field praised the claimed invention;

h.    Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

i.    Whether others invented the claimed invention at roughly the same time;

j.    Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;

k.    Whether others sought or obtained rights to the patent from the patent holder; and

l.    Whether the inventor proceeded contrary to accepted wisdom in the field.

If you find that any of these secondary considerations are present for an asserted claim, this may suggest that that asserted claim was not obvious.

A secondary consideration is relevant only if there is a connection, or nexus, between the secondary consideration and the inventive concept of a patent claim.  For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the products other than those required by a claim, then any commercial success may have no relation to the issue of that claim's obviousness.

Even if you conclude that some of the above secondary considerations have been established, those secondary considerations should be considered along with all the other evidence in the case in determining whether the asserted claims would have been obvious.

III.    **DAMAGES**

A.      **DAMAGES – GENERALLY**

I will next instruct you on damages. You must not take these instructions as implying my view about which party is entitled to your verdict in this case. Instructions regarding the measure of damages are given for your guidance in the event you find in favor of PureWick in the case in accordance with the other instructions.

I previously told you which products and methods PureWick accuses of infringing each of the patents. If you find that the PrimaFit infringes any of the asserted claims of the '376 patent or that the use of PrimaFit infringes any of asserted claims of the '989 patent, or if the PrimoFit infringes any of the asserted claims of the '407 patent, and that those infringed claims are not invalid, you must determine the amount of damages to be awarded to PureWick for the infringement. On the other hand, if you find that each of the asserted patent claims is invalid or is not infringed, then PureWick is not entitled to any damages and you should not consider damages in your deliberations.

PureWick must prove each element of its damages – including the amount of the damages – by a preponderance of the evidence, which means more likely than not.

If proven by Plaintiff, damages must be in an amount adequate to compensate PureWick for the infringement. The purpose of a damages award is to put PureWick in about the same financial position it would have been in if the infringement had not happened. But the damages award cannot be less than a reasonable royalty. You may not add anything to the amount of damages to punish an accused infringer or to set an example. You also may not add anything to the amount of damages for interest.

Damages are awarded on the sales of products that you find infringe or are used in a direct infringement.

While PureWick is not required to prove the amount of their damages with mathematical precision, PureWick must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

The fact that I am instructing you on damages does not mean that the Court believes that one party or the other should win in this case. My instructions about damages are for your guidance only in the event you find in favor of the PureWick. You will need to address damages only if you find that one or more of the asserted claims are both not invalid and infringed.

**B.**    **DAMAGES – KINDS OF DAMAGES**

There are several kinds of damages that are available for patent infringement.

One kind of damages is lost profits, that is, the additional profits that the patentee would have made if the defendant had not infringed. You may hear this referred to as the "but for" test – which means, "What profits would the patent owner have made 'but for' the alleged infringement?"

Another kind of patent damages is a reasonable royalty. A reasonable royalty is the amount that someone wanting to use the patented invention would have agreed to pay to the patent owner and that the patent owner would have accepted. A reasonable royalty is the minimum amount of damages that a patent owner can receive for an infringement.

In this case, for the '376 and '989 patents, PureWick seeks either (1) lost profits, with a reasonable royalty for PrimaFit products on which lost profits are not awarded, or (2) a reasonable royalty for all the alleged infringement of its '376 and '989 patents. For the '407 patent, PureWick seeks a reasonable royalty for the alleged infringement.

Regardless of the type of damages you may choose to award, you must be careful to ensure that an award is no more and no less than the value of the patented invention.

### C.      **LOST PROFITS – "BUT FOR" TEST**

PureWick is seeking lost profits damages in this case in connection with Sage's sales of the PrimaFit.

To prove lost profits, PureWick must show a causal relationship between the infringement and PureWick's loss of profit. In other words, PureWick must show that, but for the infringement, there is a reasonable probability that PureWick would have earned additional profits for the sale of its product. In this case, PureWick is alleging lost profit damages related to lost sales of its PureWick Female External Catheter product as a result of Sage selling the PrimaFit product. PureWick must prove this by a preponderance of the evidence, more likely than not. Part of your job is to determine what the parties who purchased the allegedly infringing product from Sage would have done if the alleged infringement had not occurred. It is important to remember that the profits I have been referring to are the profits allegedly lost by PureWick, not the profits, if any, made by Sage on the allegedly infringing sales.

PureWick has proven lost profits if you find that PureWick has proven each of the following four factors by the more likely than not standard:

1.      There was a demand for the patented product.

2.      There was no available, acceptable, noninfringing substitute products.

3.      PureWick had the manufacturing and marketing capacity to make any infringing sales actually made by Sage and for which the PureWick seeks an award of lost profits – in other words, that PureWick was capable of satisfying the demand.

4.      The amount of profit that PureWick would have made if it were not for Sage's infringement.

I will explain each of these factors shortly.

### D.     <u>LOST PROFITS – TWO-SUPPLIER MARKET</u>

PureWick contends that there were only two suppliers in the relevant market, those suppliers being PureWick and Sage.  Sage disagrees.

If you find that there were only two suppliers in the market, PureWick does not need to prove the first two factors from the preceding section.  The first step in the two-supplier market test is to define the relevant market.  To prove lost profits in a "two -supplier market," PureWick need only show:

> (1)     that the relevant market contains only two suppliers (PureWick and Sage);
>
> (2)     that PureWick had the manufacturing and marketing capability to make the sales that were diverted to Sage; and
>
> (3)     the amount of PureWick would have made if Sage had not infringed.

Therefore, if PureWick shows there were only two suppliers in the relevant market, that PureWick was capable of satisfying the demand, and the amount of profit PureWick would have made if Sage had not infringed, you may presume that PureWick satisfied the "but for" test and is entitled to lost profits.  Sage may, however, rebut this presumption by showing that PureWick reasonably would not have made some or all of the diverted sales "but for" the infringement. For example, the infringer may rebut the presumption by showing that it sold another available, noninfringing substitute in the relevant market.  The burden of persuasion remains with PureWick.

### E.     LOST PROFITS – DEMAND

The first factor asks whether there was demand for the patented product in the relevant market. PureWick can prove demand for the patented product by showing significant sales of PureWick's own patented product. PureWick also can prove demand for the patented product by showing significant sales of Sage's product that is covered by one or more of the asserted claims of the '376 or '989 patents.  To use sales of Sage's product as proof of this demand, however, PureWick's and Sage's products must be sufficiently similar to compete against each other in the same market or market segment.

### F.   LOST PROFITS – ACCEPTABLE NON-INFRINGING SUBSTITUTE PRODUCTS

The second factor asks whether non-infringing, acceptable substitutes for PureWick's product competed with Sage's infringing product in the marketplace and the impact of such substitutes on the marketplace absent the sale of Sage's products.  If you find that competitors other than PureWick (including Sage) would likely have captured some or all of the sales of the allegedly infringing products, even despite a difference in the products, then PureWick is not entitled to lost profits on those sales.

To be an acceptable, noninfringing substitute, a product must not infringe the patent and must have had one or more of the advantages of the patented invention that were important to people who purchased the infringing products.  The acceptable substitute may be a product that involved a modification of the infringing product to avoid infringement or the removal of at least one feature of the invention from the product.  The acceptable substitute must have been available during the damages period.  The acceptable substitute may be available despite not actually having been sold at that time.  But, if the acceptable substitute was not sold during the damages period, then Sage must show by a preponderance of the evidence that, during the damages period, a competitor or Sage had all the necessary equipment, materials, know-how, and experience to design and manufacture the acceptable substitute. If you determine that some of Sage's customers would just as likely have purchased an acceptable non-infringing substitute, then PureWick has not shown it lost those sales but for Sage's infringing sales.

If purchasers of Sage's products were motivated to buy that product because of features only available from that product and PureWick's patented product, then some other, alternative product is not an acceptable substitute, even if it otherwise competed with PureWick's and Sage's products. On the other hand, if the realities of the marketplace are that competitors other than

PureWick would likely have captured the sales made by Sage, despite a difference in the products, then PureWick is not entitled to lost profits on those sales.

Even if you find that PureWick's and Sage's products were the only ones with the advantages of the patented invention, PureWick is nonetheless required to prove to you that PureWick, in fact, would have made Sage's infringing sales.

Factors suggesting an acceptable substitute was not available include whether the material was of such high cost as to render the acceptable substitute unavailable and whether an alleged infringer had to design or invent around the patented technology to develop an alleged substitute.

### G.     <u>LOST PROFITS – CAPACITY</u>

The third lost profits factor asks whether PureWick had the manufacturing and marketing ability to actually make the sales it allegedly lost due to Sage's infringement.  PureWick must prove that it could have supplied the additional products needed to make the sales it said it lost, or that someone working with PureWick could have supplied the additional products. PureWick also must prove that it more likely than not had the ability to market and sell these additional products.

**H.      <u>LOST PROFITS – AMOUNT OF PROFIT</u>**

PureWick may calculate the amount of its lost profits by calculating its lost sales and subtracting from that amount any additional costs or expenses that PureWick would have had to pay to make the lost sales. The amount of lost profits cannot be speculative, but it need not be proven with unerring certainty.

## I.       <u>REASONABLE ROYALTY – ENTITLEMENT</u>

PureWick is seeking damages in the amount of a reasonable royalty on Sage's PrimoFit product.  PureWick is seeking both lost profits and a reasonable royalty for Sage's PrimaFit product.

If you find that a patent claim is infringed and not invalid, PureWick is entitled to at least a reasonable royalty to compensate it for that infringement.

For the PrimaFit product for which PureWick is seeking both lost profits and a reasonable royalty, if you find that PureWick has not proven its claim for lost profits or has proven its claim for lost profits for only a portion of the infringing sales, then you must award PureWick a reasonable royalty for all infringing sales for which it has not been awarded lost profit damages.

**J.**     <u>**REASONABLE ROYALTY - DEFINITION**</u>

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the royalty payment that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the infringement began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been if they had entered into an agreement at that time, and if they had acted reasonably in their negotiations. In determining this, you must assume that both parties to the hypothetical negotiation believed the patent was valid and infringed and that both parties were willing to enter into an agreement. You should also presume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. No one fact is dispositive and you should consider the evidence that has been presented to you in this case. You may also consider any other factors that in your mind would have increased or decreased the royalty the alleged

infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

### K. REASONABLE ROYALTY: RELEVANT FACTORS TO THE HYPOTHETICAL NEGOTIATION

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1. Any royalties received by the licensor for the licensing of the Asserted Patents, proving or tending to prove an established royalty.

2. The rates paid by Sage to license other patents comparable to the Asserted Patents.

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6. The effect of selling the patented product in promoting other sales of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7. The duration of the Asserted Patents and the term of the license.

8. The established profitability of the product made under the Asserted Patents; its commercial success; and its popularity.

9. The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

11.     The extent to which Sage has made use of the invention; and any evidence that shows the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.     The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor (such as PureWick) and a licensee (such as Sage) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.     Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of the factors. You may also consider any other factors that in your mind would have increased or decreased the royalty the infringer would have been willing to pay, and the patent holder would have been willing to accept, acting as normally prudent business people.

46

## L.    <u>DAMAGES – APPORTIONMENT</u>

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, PureWick's size or market position.  A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more.  The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment.  When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

**M.**     **REASONABLE ROYALTY – MULTIPLE PATENTS**

If you find that Sage infringed multiple patents, even by a single infringing act, and if you award a reasonable royalty for infringement, then you may award separate royalties to PureWick for each patent that was infringed.  You also may consider evidence of the number of patent licenses that are needed for the allegedly infringing product and the effect on the hypothetical negotiation of having to pay a royalty for each of those licenses.

**N.**     **REASONABLE ROYALTY:  TIMING**

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and non-infringing alternatives.

## O.   REASONABLE  ROYALTY:  AVAILABILITY  OF  NON-INFRINGING SUBSTITUTES

In  determining  a  reasonable  royalty,  you  may  also  consider  evidence  concerning  the availability  and  cost  of  acceptable  non-infringing  substitutes  to  the  patented  invention.  An acceptable substitute must be a product that does not infringe the patent.

**P.      <u>DATE OF COMMENCEMENT OF DAMAGES</u>**

In determining the amount of damages, you must determine when the damages began. Damages commence on the date that Sage has both infringed and been notified of the alleged infringement of an asserted patent.

If you find that PureWick has proven that Sage has infringed a valid claim of the '376 patent and is entitled to damages for the '376 patent, the date that damages would begin for that patent is August 12, 2019.

If you find that PureWick has proven that Sage has infringed a valid claim of the '989 patent and is entitled to damages for the '989 patent, the date that damages would begin for that patent is August 27, 2019.

If you find that PureWick has proven that Sage has infringed a valid claim of the '407 patent and is entitled to damages for the '407 patent, the date that damages would begin for that patent is January 1, 2020.

Now we will have closing arguments and I will read the rest of the instructions to you after that.

*          *          *

IV.    **DELIBERATIONS AND VERDICT**

A.    **DELIBERATION AND VERDICT – INTRODUCTION**

Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

**B.**   **UNANIMOUS VERDICT**

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you.  I will review it with you in a minute.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and my deputy will read aloud your verdict.

And I will remind you that nothing said in these instructions, and nothing in the verdict form, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

### C.     <u>**DUTY TO DELIBERATE**</u>

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that – your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So, you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

**D.**     **<u>SOCIAL MEDIA</u>**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, iPad, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, Snapchat or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

### E.   <u>**COURT HAS NO OPINION**</u>

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.