IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PUREWICK CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1508-(MN) |
| | ) | |
| SAGE PRODUCTS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## **<u>MEMORANDUM OPINION</u>**

John W. Shaw, Andrew E. Russell, SHAW KELLER LLP, Wilmington, DE; Steven C. Cherny, Raymond Nimrod, Brian P. Biddinger, Matthew A. Traupman, Nicola R. Felice, Jason C. Williams, Bianca Fox, QUINN EMANUEL URQUHART & SULLIVAN, LLP, New York, NY; Athena Dalton, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Chicago, IL – Attorneys for Purewick Corporation

Anne Shea Gaza, Samantha G. Wilson, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; Robert A. Surrette, Sandra A. Frantzen, Christopher M. Scharff, Deborah A. Laughton, Ryan J. Pianetto, Bradley P. Loren, MCANDREWS, HELD & MALLOY, LTD., Chicago, IL – Attorneys for Sage Products, LLC

March 31, 2023
Wilmington, Delaware

NOREIKA, U.S. DISTRICT JUDGE

The Court presided over a five-day jury trial from March 28, 2022 to April 1, 2022. (*See* D.I. 326, 327, 328, 329, 330).  At the end, the jury found that Sage Products, LLC ("Defendant" or "Sage") willfully infringed claims of three patents of PureWick Corporation ("Plaintiff" or "PureWick"):  U.S. Patent Nos. 10,226,376 ("the '376 patent"), 10,390,989 ("the '989 patent") and 10,376,407 ("the '407 patent") (collectively, "the Asserted Patents") and, further, that Defendant failed to prove any of the asserted claims invalid.  (*See* D.I. 316).  The Court entered judgment in Plaintiff's favor.  (D.I. 320).

Presently before the Court are post-trial motions addressing numerous issues.  From Defendant are renewed motions for judgment as a matter of law ("JMOL") and a new trial on infringement and validity of the Asserted Patents, renewed JMOL and a new trial on willfulness for the '376 and '989 patents, renewed JMOL and a new trial, or a remittitur, on damages and a "conditional" motion to amend the judgment on any claims for which PureWick did not provide evidence at trial.  (D.I. 331).  From Plaintiff are motions seeking enhanced damages, a permanent injunction, ongoing royalties on PrimoFit, supplemental damages, pre- and post-judgment interest and judgment on Defendant's counterclaims of unenforceability and invalidity.  (D.I. 333).  The motions have been fully briefed.  (D.I. 332, 334, 335, 337-339, 344-53).  For the reasons set forth below, the Court will DENY Defendant's motions for JMOL, new trial and remittitur, DENY Plaintiff's motion for enhanced damages, DENY Plaintiff's motion for injunction with leave to renew if necessary, GRANT-IN-PART Plaintiff's motion for ongoing royalty and GRANT Plaintiff's motions for supplemental damages, pre- and post-judgment interest and judgment on Defendant's counterclaims.

## I.    **BACKGROUND**

Plaintiff and Defendant sell external vacuum-assisted urine collection devices.  (*See* D.I. 44 ¶¶ 8-26, D.I. 286 at 3).  Plaintiff sells the PureWick™ FEC Solution ("the PureWick"), a female external catheter, and Defendant sells PrimaFit™ and PrimoFit™ products, external catheters for females and males, respectively.  (*See* D.I. 44 ¶¶ 8-26; D.I. 286 at 3).

On August 12, 2019, Plaintiff filed suit alleging that Defendant's PrimaFit infringes U.S. Patent No. 8,287,508 ("the '508 patent")[1] and the '376 patent.  (*See* D.I. 1).  On October 2, 2019, Plaintiff filed an amended complaint, adding a claim for infringement of the '989 patent.  (*See* D.I. 9).  On May 18, 2020, Plaintiff filed a second amended complaint, adding a claim for infringement of the '407 patent by PrimoFit.  (*See* D.I. 44).  Defendant denied infringement and asserted numerous defenses and counterclaims.  (*See* D.I. 53).

From March 28, 2022 to April 1, 2022, the Court presided over a jury trial.  (*See* D.I. 326, 327, 328, 329, 330).  The jury found that Plaintiff had proved that Defendant willfully infringed claims 1, 5 and 9 of the '376 patent and claims 1 and 6 of the '989 patent with PrimaFit and that Defendant infringed claims 1 and 2 of the '407 patent with PrimoFit.  (*See* D.I. 316 at 2-3).  In addition, the jury found that Defendant failed to prove that any of the asserted claims is invalid. (*See id*. at 4).  The jury awarded Plaintiff $26,215,545 in lost profits for sales of PrimaFit and $1,799,193 as a royalty for sales of PrimoFit.  (*See id*. at 5).

On April 7, 2022, the Court entered judgment on the jury verdict under Rule 58(b) of the Federal Rules of Civil Procedure. (D.I. 320).  On May 5, 2022, the parties filed the pending motions.

---

[1]    On February 14, 2022, the Patent Trial and Appeal Board ("PTAB") issued a Final Written Decision finding all asserted claims of the '508 patent invalid as anticipated and obvious. (D.I. 277 at 1 and Exhibit 1).  Thereafter, the Court stayed the litigation proceedings as to that patent.  (D.I. 287 at 3-4).

## II.     LEGAL STANDARDS

### A.     Judgment as a Matter of Law

JMOL may be entered against a non-moving party if the Court "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [an] issue." FED. R. CIV. P. 50(a)(1).  JMOL is appropriate "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).[2]  Entry of JMOL is a remedy to be invoked only "sparingly."  *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 383 (3d Cir. 2004).

Following a jury trial, a renewed motion for JMOL under Rule 50(b) may be granted only if the movant demonstrates "that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (alteration in original) (internal quotation marks omitted).  Substantial evidence is such relevant evidence that a reasonable mind might accept it as adequate to support the finding under review.  *See Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 407 (Fed. Cir. 2018).  In determining whether substantial evidence supports the jury verdict, the Court may not make credibility determinations, weigh the evidence or substitute its own conclusions for

---

[2]     "The grant or denial of a JMOL motion is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*, 375 F.3d 1126, 1133 (Fed. Cir. 2004).

that of the jury where the record evidence supports multiple inferences.  *See Lightning Lube*, 4 F.3d at 1166.[3]

The standards that govern a Rule 50(b) motion, however, "vary according to whether the movant has the burden of proof."  *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976).  For the party having the burden of proof, entry of JMOL after a jury verdict "is rare[] [and] reserved for extreme circumstances."  *Id.*  To grant JMOL in favor of a party with the burden of proof, the court "must be able to say not only that there is sufficient evidence to support the finding [sought by the moving party] . . . but additionally that there is insufficient evidence for permitting any different finding."  *Id.* (quoting 9 WIGMORE ON EVIDENCE § 2495 at 306 (3d ed. 1940)); *see also Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1333 (Fed. Cir. 2019) ("[W]here the movant b[ears] the burden of proof on an issue, JMOL is only granted where 'there is insufficient evidence for permitting any different finding.'" (quoting *Fireman's Fund*, 540 F .2d at 1177)); *Deere & Co. v. Agco Corp. et al*, C.A. No. 18-827-CFC (D. Del. March 28, 2023).

### B.   <u>Motion for a New Trial</u>

"A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  FED. R. CIV. P. 59(a). Common reasons for granting a new trial are: (1) the jury's verdict is against the clear weight of the evidence and a new trial is necessary to prevent a miscarriage of justice; (2) there exists newly discovered evidence that would likely alter the outcome of the trial; (3) improper conduct by an

---

[3]        The parties disagree on the standard of review and whether the Court must limit its review to Plaintiff's case-in-chief or if it is permitted to review the record as a whole.  "[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record," and the Court will therefore not limit the inquiry to Plaintiff's case-in-chief.  *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000).

attorney or the Court unfairly influenced the verdict; or (4) the jury's verdict was facially inconsistent.  *See Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, 85 F. Supp. 3d 768, 775 (D. Del. 2015).

The decision of whether to grant a new trial is a question committed to the Court's discretion.  *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980).  Unlike the standard for JMOL, the Court need not view the evidence in the light most favorable to the verdict winner when ruling on a motion for a new trial.  *See Ateliers*, 85 F. Supp. 3d at 775.  "[N]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience."  *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991).

## III.    DISCUSSION

### A.    Defendant's Motions

Defendant moves for JMOL and a new trial on infringement and validity of the '376, '989 and '407 patents and on willfulness for the '376 and '989 patents.  It also moves for JMOL and a new trial, or a remittitur, on damages and, "to the extent that PureWick asks the Court to amend or alter the judgment to reference defenses that were narrowed before trial, Sage moves for an amended judgment of non-infringement on any claims for which PureWick did not provide evidence at trial."  (D.I. 331).  The Court addresses the issues below.

#### 1.    Patent Infringement

"To prove infringement, the patentee must show that an accused product embodies all limitations of the claim either literally or by the doctrine of equivalents."  *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1340 (Fed. Cir. 2013).  "A two-step analysis is employed in making an infringement determination."  *Intell. Ventures I, LLC v. Canon Inc.*, 104 F. Supp. 3d 629, 637-

38 (D. Del. 2015) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995)). "First, the court must construe the asserted claims to ascertain their meaning and scope." *Id.* Second, the trier of fact must "compare the properly construed claims with the accused infringing product" to determine whether the product embodies the claims as construed. *Id.* "This second step is a question of fact." *Id.* (citing *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998)).

The jury found that Defendant infringed claims 1, 5 and 9 of the '376 patent, claims 1 and 6 of the '989 patent and claims 1 and 2 of the'407 patents. Defendant argues that "[n]o reasonable jury could find infringement of the patents-in-suit and its findings were against the weight of the evidence."[4] (D.I. 332 at 4). The Court disagrees.

### a.    Infringement of the '376 and '989 Patents

#### i.    Direct Infringement of the '989 Patent

Defendant argues that there was "no evidence" of direct infringement of claims 1 and 6 of the '989 patent by any entity (and particularly none after August of 2019) when the '989 patent issued. (D.I. 332 at 4). Specifically, Defendant asserts that Plaintiff "failed to identify a single instance of direct infringement – a prerequisite for indirect infringement" and "never introduced evidence that any method step was (1) actually performed, let alone (2) by a single entity (3) after August 2019." (D.I. 332 at 4-5).

As to Defendant's assertion that Plaintiff must show "specific instances of direct infringement," the Federal Circuit has held that "where an alleged infringer designs a product for use in an infringing way and instructs users to use the product in an infringing way, there is sufficient evidence for a jury to find direct infringement." *C.R. Bard Inc. v. AngioDynamics, Inc.*,

---

[4]    Notwithstanding the different standards to be met, Defendant largely lumps its JMOL and new trial arguments together in arguing what the evidence shows.

979 F.3d 1372, 1379 (Fed. Cir. 2020).  This is true "even when there is no direct evidence of a specific person doing so."  *Id.*  Here, evidence at trial showed that Defendant has sold thousands of PrimaFit products to hospitals since the '989 patent issued.  (DTX-199).  Defendant designed that product to be used in an infringing manner.  (*See, e.g.*, PTX-597.2 (describing PrimaFit "design origin and evolution"); PTX-486.12, 19; PTX-42; Tr. 401:7-16 (Dr. Yun's testimony on how PrimaFit is used with patients)).  The record also established that Defendant provided hospitals with the PrimaFit Instructions for Use ("IFU") on product packaging and that Defendant trains hospital personnel to use PrimaFit in accordance with the IFU.  (*See* PTX-34; JTX-14; Tr. 692:23-693:1; *see also* Tr. 339:1-4, 363:25-364:4, 691:20-693:13).  The jury heard testimony that use of PrimaFit in accordance with the IFU infringes the '989 claims.  (Tr. 452:6-12, 459:10-460:10, 469:1-470:1).  Thus, there was ample evidence to find direct infringement by Defendant's customers.  *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1335 (Fed. Cir. 2016).[5]

Similarly, as to Defendant's argument that there is no evidence that a "single entity" performed each method step (D.I. 332 at 4-5),[6] the Federal Circuit has found that, when a medical device maker sells its device to a hospital, the patentee need not prove that a single person performs every step of a claimed method.  *Bard*, 979 F.3d at 1379-80.  This is because even if multiple persons at the hospital perform the various method steps, they do so "as part of the same 'entity,'" *i.e.*, the hospital.  *Id.*  Here, the evidence of use at hospitals in accordance with the IFU is sufficient

---

[5]    The evidence also sufficed for the jury to conclude that Defendant directly infringed.  For example, Defendant's employees conducted PrimaFit trials at hospitals and trained hospital personnel after the '989 patent issued in August 2019.  (Tr. 472:5-20, 692:23-693:9; PTX-53).

[6]    Defendant argues that it "requested a jury instruction on single-entity infringement, which was denied."  (D.I. 332 at 5, n.2).  Defendant neglects to mention, however, that it later agreed to the Court's proposed changes to the instructions on this issue.  (Tr. 1002:14-1004:18).

for a jury to "reasonably conclude that, sometime during the relevant period[,] more likely than not one [entity] somewhere in the United States" performed each of the claim steps. *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1366 (Fed. Cir. 2012) (cleaned up).

      ii.      Literal Infringement of the '376 and '989 Patents

Defendant asserts that no reasonable jury could have found infringement because PrimaFit lacks three elements required by claims 1, 5 and 9 of the '376 patent and claims 1 and 2 of the '989 patent: a "fluid permeable support [that] is distinct from and at least proximate to the fluid reservoir," a "longitudinally elongated opening," and a "fluid impermeable casing." (D.I. 332 at 5-8).

As to the "fluid permeable support," Defendant asserts that the support in PrimaFit extends into the reservoir and is thus not "distinct from and at least proximate to" the fluid reservoir. (D.I. 332 at 6). At trial, Plaintiff's expert, Dr. Collins, testified that the PrimaFit had an "inner batting material" that was the support and a "reservoir area" distinct from, but proximate to, the inner batting. (Tr. 457:3-6). The jury also had physical samples of the PrimaFit to aid its evaluation. Although Defendant's expert testified that he believed the batting material extended into the reservoir (Tr. 768-770), the jury was entitled to assess credibility and believe Plaintiff's expert over Defendant's.

Defendant does not dispute the evidence but instead argues based on portions of the prosecution history[7] that the recited reservoir cannot "include" or "contain" any portion of the permeable support. Defendant then argues that "[n]o reasonable jury could find PrimaFit satisfies the limitation because the reservoir in PrimaFit ***does include*** and ***does contain*** the support." (D.I. 332 at 6) (emphasis in original). There are at least two problems with this argument. First,

---

[7]      Defendant cites to JTX-5 at 424 and JTX-6 at 587-88 (D.I. 332 at 6). None of the cited pages of those exhibits is in evidence.

Defendant never advanced that construction prior to trial.[8]  Therefore, the jury was free to rely on the plain and ordinary meaning of the term, which is "a space where urine can collect," in deciding infringement.  *See ePlus, Inc. v. Lawson Software, Inc.,* 700 F.3d 509, 520 (Fed. Cir. 2012). Second, Defendant's proposed construction is contrary to the specification, which shows at least one embodiment in which the support extends into the area Sage designates as the reservoir.  (*E.g.*, '989 Patent, Fig. 32).

As to the "longitudinally elongated opening," Defendant argues that no reasonable jury could have found such an "opening" because there is a fabric sewn to the "casing" where Plaintiff alleged the "elongated opening" is.  (D.I. 332 at 7).  Plaintiff argues that the claims require an opening for fluid entry, not a physical structure, and the fabric is permeable.  (D.I. 345 at 6).  The parties did not seek to construe "elongated opening" and the jury was thus free to determine as a factual matter whether the "opening" for fluid in PrimaFit meets the ordinary meaning of the term. Had Defendant wanted to limit the definition of an opening as it now proposes, it could have sought a construction to that effect.  *See ePlus*, 700 F.3d at 520.  It did not.

Moreover, the record contains sufficient evidence to support the jury's finding.  Dr. Collins testified that the opening allows fluid to enter the device.  (Tr. 455:9-14).  Defendant's expert testified that there is no opening because the edges of the PrimaFit product are sewn together, and he would not be able to insert a finger into any opening.  (Tr. 772-773).  As noted above, the jury

---

[8]      Neither party sought to construe "reservoir" in this case.  (*See* D.I. 80).  The parties identified "fluid reservoir" / "reservoir" as a term to be construed in the subsequent case *PureWick Corporation v. Sage Products, LLC*, C.A. No. 22-102-MN ("*PureWick II*").  The Court has construed the term to have its plain and ordinary meaning, which is "a space where urine can collect." *See PureWick II*, D.I. 131.  The Court's construction of "fluid reservoir" / "reservoir" in *PureWick II* is consistent with the meaning of the term as used before the jury in this case.  (*Id.* at 7).

was entitled to assess credibility and believe Plaintiff's expert over Defendant's to determine that PrimaFit product did in fact have an "opening" as required by the claims.

Finally, as to "fluid impermeable casing," Defendant contends that the "various unrelated components" of the PrimaFit do not comprise a "casing" and the "alleged casing is not 'impermeable' because the PrimaFit was intentionally designed with a number of openings that are liquid **permeable**."  (D.I. 332 at 7-8) (emphasis in original).  The jury, however, heard testimony from Plaintiff's expert, Dr. Collins, that the combined components are a casing and also testimony from Defendant's expert, Mr. Sheldon, that the components do not constitute a casing. (Tr. 771:13-19, 454:8-9).  Once again, the jury was entitled to credit Plaintiff's expert over Defendant's.  Thus, the Court finds that there was substantial evidence to support the jury's finding of infringement of the '376 and '989 patents.

### iii.    Indirect Infringement of the '376 and '989 Patents

Defendant seeks JMOL or a new trial on indirect infringement of the asserted claims of the '376 and '989 patents, asserting that Plaintiff failed to prove knowledge of those patents and knowledge of infringement.  (D.I. 332 at 8).  The substance of Defendant's argument on these points is in the section of its brief addressing willfulness.  (*Id.*).  As discussed below in section III.A.3, there is sufficient evidence from which the jury could find knowledge of the patents and knowledge of infringement.  Defendant's renewed motion for JMOL or a new trial on indirect infringement will be denied.

### iv.    Improper Comparisons

Defendant contends that a new trial is warranted because Plaintiff "attempted to prove infringement [of the '376 and '989 patents] and improper copying by comparing PrimaFit with patent figures and PureWick's products."  (D.I. 332 at 8).  Defendant points to at least seven instances that it alleges constitute improper comparisons by Plaintiff.  (D.I. 332 at 10-11).  Notably

of those, Defendant only objected to two at trial.[9]  (*Id*. at 10; *see also* Tr. 114-116, 536-540).  Thus, the Court finds Defendant's characterization that it objected "multiple times," was overruled and thus Plaintiff was "completely unfettered" in improperly comparing patent figures to the PrimaFit to prove infringement to be substantially overstating the facts and the purported prejudice to Defendant.

Defendant contends that Plaintiff's expert, Dr. Collins, "interwove" discussions of the PrimaFit product, the patent figures, and the PureWick device during his direct testimony. (D.I. 332 at 10).  Knowing that it did not timely object, Defendant now complains that it was not permitted to address the alleged comparisons because it was "precluded from providing evidence to the jury of what the patent said that figures disclose."  (D.I. 332 at 11).  The citation Defendant uses to support its argument, however, related to a claim construction issue that the Court had already decided.  (*See* Tr. 533-540).  Indeed, to the extent that Plaintiff had acted improperly at trial, the response to that should have been an objection, and not a presentation to the jury rearguing a failed claim construction position.

In any event, the Court instructed the jury that, for infringement, it "should not compare the accused Sage Products with PureWick's products or the [patent] descriptions or figures." (Tr. 1112:13-16).  "A jury is presumed to have followed the instructions it was given," and the Court is not persuaded by Defendant's argument that it suffered prejudice entitling it to a new trial. *Power Integrations v. Fairchild Semicond., et al*, No. 04-01371-JJF, slip op. at 17 (D. Del. Dec. 12, 2008) (citing *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1356 (Fed. Cir. 2007)).

---

[9]     The Court overruled the objections because Plaintiff was not discussing infringement on those occasions.  (Tr. 114-16 (overruling the objection because Plaintiff was discussing copying, not infringement); Tr. 536-540 (overruling the objection because the question was not about infringement)).

b.      Infringement of the '407 Patent

Defendant asserts that no reasonable jury could have found infringement of claims 1 and 2 of the '407 patent because the PrimoFit lacks two elements required by the asserted claims:  a "wicking material" and a "chamber of void space positioned . . . between the flexible layer of porous material and the flexible layer of impermeable material, the chamber . . . having a port for receiving a tube to transport urine."  (D.I. 332 at 12).

As to "wicking material," the Court construed that term to mean "an article that moves moisture by capillary action from one surface of the article to another."  (Tr. 1108, D.I. 128). Defendant contends that "[n]o reasonable jury could have found that" the PrimoFit's microclimate layer is the "wicking material" as Plaintiff argued at trial.  (D.I. 332 at 12).  The crux of Defendant's argument is that the microclimate layer cannot be a "wicking material" because it is water-repellant material that does not use wicking.  (*Id*.).  In support, Defendant cites to its expert's testimony that testing indicated the material did not wick liquid at all.  (*Id*. at 13).

The jury, however, also heard substantial evidence to the contrary.  First, at trial, Plaintiff's expert, Dr. Collins, testified that the microclimate layer has a hydrophilic treatment making it a wicking material.  (Tr. 485:10-486:18).  Second, the jury heard testimony regarding a marketing sheet that describes PrimoFit's "ultra-soft wicking fabric," which "diverts urine away from the skin."  (PTX-95; Tr. 486:19-487:2).  Finally, the jury also heard from another one of Plaintiff's experts, Mr. Jezzi, who testified that he conducted testing showing that liquid "wicked through the surface of the PrimoFit spun bond layer" and that "the material was wicking."  (Tr. 947:24-949:5). The jury was entitled to credit the testimony of Plaintiff's experts.[10]

---

[10]      Defendant notes that the PTAB found Mr. Jezzi to lack credibility in its Final Written Decision on the stayed '508 patent.  (D.I. 352 at 6, n.4).  The PTAB's analysis of an expert's opinion on a different patent in a different proceeding does not undermine a jury verdict

As to "a chamber of void space," Defendant contends that "no reasonable jury could have found that PureWick satisfied its burden of proving PrimoFit infringes" because Plaintiff only relied on one statement from its expert and the chamber does not have a port for receiving a tube. (D.I. 332 at 14-15).  It is unclear why one answer to a question and reasonable inferences from that answer could not suffice.  But in any event, the jury had more.  It had access to documents and the PrimoFit product itself from which it could determine the characteristics of a visible structural feature.  (Tr. 407:19-408:1, 643:4-10).

Defendant also asserts that the chamber, which includes the port, must be formed by a porous layer and impermeable layer, but that Plaintiff's expert testified that the port is formed solely by the impermeable material.  (D.I. 332 at 15).  Plaintiff responds that the claim only requires the chamber to be partially defined by the porous layer and impermeable layer, meaning the part where the port is located can be defined by only the impermeable layer.  (D.I. 345 at 12).  The jury heard testimony from both parties' experts on this issue and had the PrimoFit product itself to aid in its evaluation of infringement.  In sum, the jury had substantial evidence to support its finding that the PrimoFit product infringed the '407 patent.  Therefore, the Court will deny Defendant's motion for judgment as a matter of law on infringement of the '407 patent.

### 2.      Patent Validity

An issued patent is presumed valid.  *See* 35 U.S.C. § 282.  To overcome this presumption, a party must show by clear and convincing evidence that the patent is invalid.  *See Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1467 (Fed. Cir. 1990).  Defendant challenged the validity of the asserted claims of the '376, '989 and '407 patents.  Defendant now argues that the jury's findings were influenced by irrelevant and prejudicial arguments and that no reasonable

___

supported by substantial evidence.  Indeed, to do so would improperly substitute the PTAB's conclusions for that of the jury's.  (*See* D.I. 296 at 10-17).

jury could have found that Defendant failed to meet its burden with respect to anticipation and obviousness.  (D.I. 332 at 15-20).  For the reasons set forth below, the Court disagrees.

a. <u>State of the Art</u>

Defendant asks the Court to grant a new trial because it alleges Plaintiff made prejudicial and legally incorrect arguments regarding the relevant state of the art.  (D.I. 332 at 16).  First, Defendant asserts that Plaintiff argued to the jury that prior art must result in a commercial product to invalidate a patent.  (*Id*. citing Tr. 633, 709-710, 832-844; Tr. 1175:15-1176:6 ("This is where the real world comes in as well and this comes to obviousness . . . this actually shows you how hard the problem was")).  Reading the cited transcript portions, however, Plaintiff was addressing the failure of others and did not argue that prior art must be commercialized to be invalidating. Defendant was not prejudiced by such statements.

Defendant also argues that it was prejudiced by Plaintiff's introduction of Dr. Sanchez's invention story.  (D.I. 332 at 16-17).  Defendant claims that Dr. Sanchez's invention story was improper because it related to the '508 patent, which was found to be invalid in an IPR, and Plaintiff did not point to anything "[Dr.] Sanchez invented (or did) in connection ***with the patents-in-suit***."  (D.I. 352 at 10) (emphasis in original).  Once again, however, Defendant did not object to the testimony and arguments it now cites as improper, save for PDX1.22, which the Court overruled because it was an excerpt from a joint trial exhibit.  (Tr. 3:5-20).  Defendant's current objections are therefore waived.[11]  Second, Dr. Sanchez is a named inventor on the '376 and '989 patents.  As Plaintiff points out, Plaintiff "did not have a burden to prove the contributions of each

---

[11] Defendant also withdrew its objections to Dr. Sanchez's deposition testimony played at trial.  (Tr. 18, 91-92).

14

inventor," and the jury is entitled to credit the testimony of a named inventor.  (D.I. 345 at 13).

Therefore, there was no prejudice and Defendant's request for a new trial will be denied.

b.   Anticipation and Obviousness

A patent claim is invalid as anticipated if "the claimed invention was patented, described

in a printed publication, or in public use, on sale, or otherwise available to the public before the

effective filing date of the claimed invention."  35 U.S.C. § 102(a).  A patent claim may also be

invalid as obvious.  35 U.S.C. § 103(a).  "Obviousness is a question of law with several underlying

factual inquiries: (1) the scope and content of the prior art; (2) the differences between the prior

art and the claims at issue; (3) the level of ordinary skill in the field of the invention; and (4)

objective considerations such as commercial success, long felt but unsolved need, and the failure

of others." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d

1340, 1347 (Fed. Cir. 2012).   The jury found that Defendant had not shown, by clear and

convincing evidence, that claims 1, 5 and 9 of the '376 and claim 1 of the '989 patent were

anticipated or that any of the seven asserted claims of the Asserted Patents was obvious.

Defendant argues that the jury did not have sufficient evidence to come to that conclusion

because Plaintiff did not present a rebuttal witness on the Van Den Heuvel reference anticipating

or rendering obvious the claims of the '376 and '989 patents and Plaintiff's expert presented no

evidence that the '407 patent was not obvious.  (D.I. 332 at 17-19).  As discussed below, the Court

disagrees.

i.   Anticipation and Obviousness of the '376 and '989 Patents

Defendant argues that its expert, Mr. Sheldon, is the only expert who opined about whether

Van Den Heuvel anticipates or renders obvious the asserted claims of the '376 and '989 patents,

and thus his opinions should carry the day.  (D.I. 332 at 17-18).  Plaintiff does not dispute that it

did not present its own witness on this issue.  (D.I. 13-14).  Contrary to Defendant's assertion,

however, this does not mean that Defendant must prevail. Defendant had the burden of proving invalidity by clear and convincing evidence, and the jury could have reasonably concluded that Defendant failed to meet its burden. For example, on cross examination, Mr. Sheldon testified that Van Den Heuvel's U.S. counterpart, which has the same disclosure, was before the Patent Office during prosecution. (Tr. 845:1-858:10). Mr. Sheldon also conceded on cross that Van Den Heuvel does not include a "fluid permeable membrane" and also testified that he added the feature to the figures in his demonstratives. (*Id.*). And, as Plaintiff notes, Mr. Sheldon relied on "tapered end 4" as the "reservoir" in Van Den Heuvel, but never testified that urine could accumulate there.[12] (D.I. 345 at 14-15). The jury could have reasonably found either or both of these elements missing when evaluating Van Den Heuvel for anticipation and obviousness.[13] The jury also heard evidence from Plaintiff on secondary considerations of nonobviousness, including long-felt need, failure of others, and copying from which it could reject an obviousness challenge. (Tr. 832-844, 1175-1176, 433-446, 211).

ii.   Obviousness of the '407 Patent

Defendant argues that "[t]he evidence at trial regarding obviousness of the '407 patent was likewise one-sided." (D.I. 332 at 18). According to Defendant, its expert, Dr. Newman, explained that Suzuki rendered obvious the asserted claims of the '407 patent because it would have been obvious to replace Suzuki's top layer with a wicking material, but Plaintiff's expert, Mr. Jezzi, focused on whether the top layer was a wicking material rather than whether it was obvious. (*Id.*).

---

[12]   Defendant argues that Plaintiff never explained why a "reservoir" requires fluid accumulation. (D.I. 352 at 8). As noted above, the parties never sought to construe the term "reservoir" in this case, but in the second case, the Court construed the term to have its plain an ordinary meaning, *i.e.*, "a space where urine can collect." *See supra* n.8.

[13]   Defendant did not offer another reference or argument at trial that would fill in these missing limitations for obviousness or anticipation.

Mr. Jezzi, however, testified that using a wicking material in Suzuki was not obvious because it would have defeated the purpose of what Suzuki was attempting to accomplish.  (Tr. 944:16-20).  He also explained that the purported "wicking layer" in Suzuki is not "disposed on the first side of the flexible layer of porous material" as required by the claims.  (Tr. 943:6-945:8).  The jury was entitled to credit Mr. Jezzi's testimony over Dr. Newman's and had sufficient evidence to support the verdict.

### 3.  Willfulness

A determination of willfulness requires a finding of "deliberate or intentional" infringement.  *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021).  Plaintiff must show that "the accused infringer knew of the patent-in-suit, and knowingly or intentionally infringed the patent after acquiring that knowledge." *Jackson v. Seaspine Holdings Corp.*, No. 20-1784-RGA, 2022 WL 610703, at *7 (D. Del. Feb. 14, 2022) (citing *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378-79 (Fed. Cir. 2020)).  The jury found that Defendant willfully infringed the '376 and '989 patents.  (*See* D.I. 316 at 3).  Defendant asks the Court to grant JMOL or a new trial on the jury's willfulness finding.  (D.I. 332 at 20).  For the reasons set forth below, the Court denies Defendant's request.

Defendant first argues that there was "no evidence in the record that Sage acted willfully after having knowledge of the patents." (*Id.*).  The Court disagrees.  Defendant's primary contention is that Plaintiff's willfulness case relied on years-old pre-issuance acts, which it contends are inadmissible for purposes of showing willfulness.  This is not entirely correct.  For example, although a party may lawfully copy unpatented products, pre-issuance copying may still be "relevant evidence to support a theory of willfulness." *Nox Med. Ehf v. Natus Neurology Inc.*, No. 15-709-RGA, 2018 WL 6629704, at *2 (D. Del. Apr. 12, 2018).

Here, the jury heard evidence that Defendant was aware of the pending patent application that matured into the '989 patent, and Greg Davis, a director of engineering at Sage who knew of the application, "dictated product design . . . continually [bringing] PrimaFit's development back to PureWick." (D.I. 342 at 21). Defendant also learned of the '376 and '989 patents the day they issued and Defendant does not dispute this. (*Id*. at 22; Tr. 886:20-24). The jury additionally heard evidence that Defendant had access to and tested Plaintiff's product pre-issuance, which Plaintiff argued is covered by the '376 and '989 patents and is relevant to Defendant's state of mind after issuance. (D.I. 342 at 22). The totality of this evidence is sufficient to support the jury's finding that Defendant (a) had knowledge of the patents and (b) knowledge of infringement.[14] The jury was entitled to assess credibility and infer willfulness from the evidence presented. This is thus not a case "where the verdict, on the record, cries out to be overturned." *Williamson*, 926 F.2d at 1353.

In addition, Defendant argues that a new trial on willfulness is warranted because Plaintiff's "inappropriate copying allegations permeated the entire trial on every issue, prejudicing the jury," namely that Plaintiff compared the PrimaFit with the patent figures and Plaintiff's products. (D.I. 332 at 26). First, as noted above, the jury heard substantial other evidence on which it could properly base its finding. Defendant points to nothing that suggests the verdict was the result of improper prejudice. Second, the Court allowed such comparisons with respect to copying, but not for infringement, and Plaintiff adhered to the Court's order during trial. Given

---

[14]    Defendant asserts that it acted consistently with industry standards and conducted routine competitive intelligence as a defense to Plaintiff's copying assertion in a footnote. (*See* D.I. 332 at 24, n.11). This does not preclude a finding of willfulness, and regardless, "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered [forfeited]." *Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755 (3d Cir. 2023) (quoting *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997)).

the evidence in support of the jury's finding of willfulness, the Court denies Defendant's motion for a new trial on willfulness, as well as on indirect infringement.

### 4.   **Damages**

The jury awarded $26,215,545 in lost profits for sales of the PrimaFit.  Defendant challenges the jury award of lost profits and requests a new trial to identify a royalty, or in the alternative, seeks remittitur of the jury's award.  (D.I. 332 at 27-30).

### a.   Lost Profits

To be entitled to lost profits, Plaintiff must "show a reasonable probability that, but for the infringement, [they] would have made the sales made by" Defendant.  *Presidio Components, Inc. v. Am. Tech. Ceramics*, 875 F.3d 1369, 1380 (Fed. Cir. 2017).  The Federal Circuit "has not restricted patentees to any one particular method of proving 'but for' causation."  *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003).  "The *Panduit* and two-supplier market tests are recognized methods of showing 'but for' causation."  (*Id.*).  At trial, Plaintiff sought to establish lost profits using the *Panduit* factors and two-supplier market test.  (Tr. 541-552).  "The *Panduit* test requires the patentee to show: (1) 'demand for the patented product'; (2) 'absence of acceptable noninfringing substitutes'; (3) 'manufacturing and marketing capability to exploit the demand'; and (4) 'the amount of profit that . . . would have [been] made.'"  *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1240-41 (Fed. Cir. 2017) (quoting *Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)).  "[U]nder the two-supplier test, a patentee must show: 1) the relevant market contains only two suppliers, 2) its own manufacturing and marketing capability to make the sales that were diverted to the infringer, and 3) the amount of profit it would have made from these diverted sales."  *Micro Chem*, 318 F.3d at 1124.

Defendant challenges the lost profits award, arguing that (a) there was insufficient evidence for the jury to find an absence of non-infringing alternatives and (b) there was "no evidence that demand was driven by a patented feature . . . [a]nd [Plaintiff]'s lost profits claim was never apportioned." As to non-infringing alternatives, Defendant argues that Plaintiff "never refuted non-infringing PrimaFit design modifications." (D.I. 332 at 27). As Plaintiff notes, however, once it established a two-supplier market, the burden of going forward shifted to Defendant to rebut the but-for causation by demonstrating that the design-around was available and acceptable. (D.I. 345 at 24).[15] The jury heard substantial evidence of a two-supplier market, including testimony and documents that Defendant itself considered Plaintiff as its only competitor in the market. (*See, e.g.*, Tr. 364:13-365:12; PTX-35; PTX-597.2). The jury also heard testimony from Plaintiff's expert, Dr. Leonard, that PrimaFit and PureWick were the only two products on the market and that they compete head-to-head. (Tr. 196:10-13, 402:22-24, 550-556). The jury therefore had substantial evidence to determine that a two-supplier market exists and the burden shifted to Defendant to show that its design-around of the PrimaFit was available and acceptable.

Defendant argues that the two-supplier market does not apply because non-infringing alternatives exist. (D.I. 352 at 14). "Mere existence of a competing device does not make that device an acceptable substitute." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1361 (Fed. Cir. 2012) (quoting *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 901 (Fed. Cir. 1986)). Rather, whether a competing device should be considered an acceptable substitute is a question of fact for the jury. *See Minnesota Min. & Mfg. Co. v. Johnson & Johnson*

---

15    Citing *Micro Chem*, 318 F.3d at 1125 ("If the patentee shows two suppliers in the relevant market, capability to make the diverted sales, and its profit margin, that showing erects a presumption of 'but for' causation. Although the burden of persuasion remains with the patentee, the burden of going forward then shifts to the infringer.")

*Orthopaedics, Inc.*, 976 F.2d 1559, 1577 (Fed. Cir. 1992). Here, the jury heard evidence and testimony from both parties' experts that alternatives were unacceptable and the PrimaFit and PureWick products were designed to address the issues of such unacceptable alternatives. (*See* PTX-107.22; PTX-597.2; PTX-42.3; PTX-42.4; PTX-482; Tr. 413-414, 350-352, 399-400, 411-414, 550-560). Much of Defendant's argument centers around the evidence that some customers did not want to use Plaintiff's patented product and instead chose the alternatives. (D.I. 332 at 28). The jury, however, heard evidence that the PureWick may be a standard of care that filled a gap where there were no other solutions. (Tr. 379:12-23). Based on this evidence, the jury could reasonably have found that Plaintiff met its burden in proving the absence of acceptable non-infringing alternatives.[16]

Defendant also cites to evidence it presented at trial showing its alternative design was acceptable, available and non-infringing. (D.I. 332 at 27-28). As Plaintiff asserts, however, that Defendant had the burden of showing that the design-around was acceptable, and that Defendant "had all the necessary equipment, materials, know-how, and experience to design and manufacture the acceptable substitute." (D.I. 345 at 24). The jury, however, only heard conclusory testimony from Defendant's expert of the acceptability of the design-around, and no evidence of its availability. (Tr. 829:7-11). Thus, the jury was entitled to reject Defendant's evidence that the PrimaFit design-around was an acceptable and available non-infringing alternative.[17]

---

[16] Defendant contends that the jury believed there were non-infringing alternatives because the jury noted on the verdict form of "15% on nonusing facilities." (D.I. 332 at 29, n.14). Defendant does not ask the Court to do anything on this issue and, as mentioned *supra*, arguments presented in footnotes are disfavored.

[17] Defendant cites to *Integra* for its contention that the jury cannot ignore unrebutted evidence. *Integra Lifesciences I, Ltd. v. Merck KGaA*, 496 F.3d 1334, 1345 (Fed. Cir. 2007). In that case, however, the plaintiff did not challenge defendant's evidence at trial. Here, Plaintiff makes no such concession and "although the court should review the record

Defendant's argument that Plaintiff is not entitled to lost profits because it "did not prove demand for its product or apportion for the patented features" (D.I. 332 at 29) fails as a matter of law. A patentee is not required to provide direct evidence that customers bought the infringing products because of the patented technology to be entitled to an award of lost profits. *See Panduit*, 575 F.2d at 1156 (establishing elements patentee is required to show for an award of lost profits). Regarding apportionment, Plaintiff asserts that Defendant failed to move for JMOL under Rule 50(a) of no lost profits on the ground that Plaintiff failed to apportion, and, thus, that argument is waived. Defendant responds that it argued "features that drove demand were not covered by the patent," which is apportionment. (Tr. 655). Assuming that Defendant moved based on apportionment, the jury was instructed on apportionment and lost profit damages, including the *Panduit* test and found that Plaintiff established that it should be awarded lost profits for the PrimaFit product. As explained above, substantial evidence supports the jury's findings as to the prongs of the *Panduit* test. Under Federal Circuit law, "[a] showing under the four-factor *Panduit* test establishes the required causation" for lost profit damages. *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1264 (Fed. Cir. 2013); *accord Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*) ("When the patentee establishes the reasonableness of this inference, *e.g.*, by satisfying the *Panduit* test, it has sustained the burden of proving entitlement to lost profits due to the infringing sales."). Thus, by satisfying the *Panduit* test, Plaintiff met its burden of proving causation and its entitlement to lost profits. (*See id*.).

Defendant cites to *WesternGeco* as authority for its contention that, after a party has satisfied *Panduit*'s four-factor test and established entitlement to lost profits, a further

---

as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id*. (internal citations omitted).

apportionment of profits is required.[18]   *WesternGeco L.L.C. v. ION Geophysical Corp.*, 913 F.3d 1067 (Fed. Cir. 2019).   The Court is not convinced.   In that case, WesternGeco held patents directed to marine seismic survey technology for controlling the movement and positioning of long streamers towed by a ship and sued defendant ION for infringement.   *Id.* at 1070.   WesternGeco and ION both had devices for steering the streamers, but WesternGeco did not sell its device, instead using it to perform the surveys.   *Id.*   In contrast, ION did not perform the surveys, but rather sold the device to customers who would then perform their own surveys.   *Id.*   A jury found the patents infringed and not invalid, awarding WesternGeco a reasonable royalty and lost profits.   *Id.* In contesting the lost profits award, ION contended that ION and WesternGeco did not compete in the same market because WesternGeco only sold surveys and ION only sold devices.   *Id.* at 1072.   The Federal Circuit rejected that argument but stated that this difference "may be relevant to the ***computation*** of lost profits" because "WesternGeco had two categories of lost profits:  the profits attributable to providing the patented device and the profits attributable to providing other aspects of the surveys (*e.g.*, the ship for towing the streamers)."   *Id.* at 1073 (emphasis in original).

Here, there is no separate "category" of lost profits – only profits attributable to the patented device.   Defendant points to the Federal Circuit's statement that further apportionment is needed where the "application of the *Panduit* factors does not result in the separation of profits attributable to the patented device and the profits attributable to providing other aspects of the surveys (*e.g.*, the ship for towing the streamers)."   *Id.*   The Federal Circuit, however, appears to be making a

---

[18]      Defendant also cites to *Ericsson* generally holding that "'apportionment is required even for non-royalty forms of damages.'"  (D.I. 332 at 30 (quoting *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)); *see also* D.I. 352 at 15).  But *Ericsson* did not involve lost profit damages and importantly, never holds, to the extent there is an apportionment requirement for all forms of damages, that satisfaction of the *Panduit* test does not satisfy that requirement.

distinction between the lost profits of the patented device and the lost profits from the distinct act of conducting the survey and not, as Defendant suggests, implying that satisfaction of the *Panduit* test does not satisfy the apportionment requirement for the patented device itself. *Cf. Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-3428 PSG, 2013 WL 10601009, at *2 n.12 (N.D. Cal. May 15, 2013) (noting that the Federal Circuit has suggested "that apportionment – at least as consumer demand stands as a way of showing apportionment – is unnecessary under *Panduit*" (citing *Versata*, 717 F.3d at 1265 ("[T]he *Panduit* factors place no qualitative requirement on the level of demand necessary to show lost profits."))).

In sum, the Court rejects Defendant's arguments that the jury's damages award cannot stand because Plaintiff failed to properly apportion its requested damages. *Cf. Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326, 1328 (Fed. Cir. 2014) ("[W]e have never required absolute precision in [assigning value to the patented feature]; on the contrary, it is well-understood that this process may involve some degree of approximation and uncertainty."). Accordingly, the Court denies Defendant's motion for JMOL of no lost profits and for a new trial on the issue of lost profit damages, or in the alternative, remittitur.

### 5.   "Blue Silicone Shell" Product

Defendant asks the Court to grant JMOL to confirm that Plaintiff's "blue silicone shell" product is not covered by the '376 and '989 patents because the product does not have "a tube having a first end disposed in the reservoir" and there was insufficient evidence of a "fluid impermeable layer coupled to the fluid reservoir." (D.I. 332 at 30; D.I. 352 at 15). Plaintiff contends that there was sufficient evidence presented at trial supporting the jury's implied finding that the blue silicone shell product is covered by the '376 and '989 patents. The Court finds there was legally sufficient evidence to support a finding that the blue silicone shell product is covered by the '376 and '989 patents and thus denies the motion.

Defendant argues that the blue silicone shell product does not have a tube disposed in the reservoir, as required by the '376 and '989 patents, but rather that the tube terminates short of the reservoir. (D.I. 332 at 30). Defendant also argues that Plaintiff never proffered any evidence that the blue silicone shell product has a fluid impermeable layer coupled to the fluid reservoir as required by claim 1 of the '376 and '989 patents. (*Id*.). Plaintiff asserts that the testimony of its expert, Dr. Collins, was sufficient evidence for the jury to find that the blue silicone shell product does have these limitations. (D.I. 345 at 29-30 (citing Tr. at 431:14-19, 433:8-11, 433:2-12 440:5-446:12)). Plaintiff also asserts that the jury had access to the product to examine and draw its own conclusions. The Court agrees with Plaintiff that the jury had sufficient evidence to find that the blue silicone shell product is covered by the '376 and '989 patents.

### 6.   New Trial

For infringement, validity, willfulness and damages, Defendant requests a new trial in the alternative to JMOL. Although not always clearly articulated, Defendant's request for a new trial is apparently based on the argument that the jury's verdict was against the weight of the evidence. In connection with Defendant's request for JMOL, the Court has already found that substantial evidence supports the jury verdict on each of the asserted causes of action. For the same reasons, the Court concludes that the jury's verdict was not against the weight of the evidence, even without viewing the evidence most favorably to Plaintiff. That is, Defendant has failed to show that "a miscarriage of justice would result if the verdict were to stand," that the verdict "cries out to be overturned" or that the verdict "shocks [the] conscience." *Williamson*, 926 F.2d at 1352-53. Therefore, Defendant's motion for a new trial based on the weight of the evidence is denied.

### 7.      Contingent Motion to Amend the Judgment

In a "contingent motion," Defendant asks the Court to enter judgment of noninfringement on claims Plaintiff withdrew before trial if judgment is entered on its counterclaims.  (D.I. 344 at 30, D.I. 332 at 30).  The sum total of Defendant's argument is

> Sage does not believe that the judgment should be amended to include claims and defenses withdrawn for case narrowing purposes.  But if PureWick seeks such an amendment (D.I. 321, 2), the judgment should be amended to include a finding of noninfringement on claims not asserted at trial (376 Patent, claims 2-4, 6-8, 10-14; 989 Patent, claims 2-5; 407 Patent, claims 3-16).[19]

Defendant cites to no case law indicating that it would be entitled to such judgment.  Nor does it provide any context to the claims not asserted at trial (such as when or how they were dropped). The Court has reviewed the docket and it appears that the majority of claims that are the subject of the "contingent motion" were not included in the pretrial order and neither party set forth any arguments or evidence on the merits of infringement of those claims.  *Alcon Research Ltd. v. Barr Lab'ys, Inc.*, 745 F.3d 1180, 1193 (Fed. Cir. 2014).  Thus, having no been given no basis to grant Defendant's motion, the Court will deny it.

### B.      Plaintiff's Motions

Plaintiff moves for enhanced damages, an injunction, ongoing royalty, supplemental damages, pre- and post-judgment interest and judgment on Defendant's counterclaims.  The Court addresses each of those issues in turn.

### 1.      Enhanced Damages

Plaintiff requests that the Court award enhanced damages under 35 U.S.C. § 284.  (D.I. 337 at 2).  Whether to award enhanced damages is committed to the Court's discretion.  *Halo Elecs.,*

---

[19]      In its reply brief (D.I. 352 at 15), Defendant added:  "PureWick cites no authority for its theory that the Court should enter judgment on Sage's defenses withdrawn for case narrowing, but not do so on PureWick's claims."

*Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103 (2016).  Enhanced damages are "designed as a 'punitive' or 'vindictive' sanction" that is "generally reserved for egregious cases of culpable behavior."  *Id.* at 103-04.  "The sort of conduct warranting enhanced damages has been variously described . . . as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or – indeed – characteristic of a pirate."  *Id.*  Enhanced damages should not be awarded in "garden-variety cases."  *Id.* at 109.  "A jury's finding of willful infringement is a prerequisite to enhancement of damages but is not by itself sufficient."  *Nox Med. Ehf v. Natus Neurology Inc.*, No. 15-00709-RGA, 2018 WL 6427686, at *1 (D. Del. Dec. 7, 2018) (citing *Halo*, 579 U.S. at 103-04).

As an initial matter, the Court does not find that this case involves conduct suggesting willful, wanton, malicious or other nefarious behavior on the part of Defendant.  Plaintiff sued Defendant on the '376 patent five months after issuance and added the '989 patent after this litigation began.  (*See* D.I. 9).  This was a hard-fought litigation and, although Plaintiff ultimately prevailed before the jury, it was not a slam-dunk case.  Indeed, Defendant defeated a motion for summary judgment of infringement of the '376 patent.  (D.I. 279, D.I. 344 at 24).

Nonetheless, Plaintiff argues that the factors articulated in *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992), favor an award of enhanced damages in the present case.  Although not required, courts may turn to the *Read* factors to guide their analysis.  *Presidio Components*, 875 F.3d at 1382.  Those factors are: "(1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed"; (3) "the infringer's behavior as a party to the litigation"; (4) "defendant's size and financial condition"; (5) "closeness of the case"; (6) "duration of defendant's misconduct"; (7) "remedial action by the defendant"; (8) "defendant's motivation for harm"; and (9) "whether

defendant attempted to conceal its misconduct." *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209,1225 (Fed. Cir. 2006) (citing *Read*, 970 F.2d at 826-27).

Plaintiff primarily relies on the third *Read* factor, arguing that Defendant's litigation conduct "was nothing short of vexatious." (D.I. 337 at 8). Plaintiff points to instances that it contends show Defendant's misconduct during litigation. The purported misconduct includes that (1) Defendant alleged invalidating public use of and prior sale of "PureWick's Prior Art Devices," but that Defendant never specified which device it was relying on, instead generally asserting "prior art brown tape products" were prior art (*id.* 8-10); (2) Defendant's strategic withdrawal of the PrimaFit 2.0 as a noninfringing alternative burdened the Court and the parties (*id.* at 11); (3) Defendant attempted to re-litigate claim construction on the term "casing" (*id.* at 11-12); (4) two of Defendant's expert reports were improperly served and struck (*id.* at 12); (5) Defendant dropped its equitable counterclaims of unenforceability late in the litigation;[20] (*id.* at 12, D.I. 244 at 23); (6) Defendant relied on the Van Den Heuval prior art as a primary reference, which had already been considered by the PTO (*id.* at 12-13) and (7) Defendant did not tell the Court or Plaintiff that it had stopped selling the PrimaFit product by November 2021 until May 4, 2022 (*id.* at 13). For each of these issues, Defendant has a response (see D.I. 344 at 16-23), and for at least some of the issues, Defendant's position rings true to the Court. Moreover, considering Defendant's litigation conduct as whole, the Court is unpersuaded that it rose to the level of "malicious" behavior required to support an award of enhanced damages. This case was fiercely fought, with both sides' conduct contributing to the occasionally heated nature of the proceedings. Therefore, this factor is, at most, neutral.

---

[20]  Plaintiff requests entry of judgment on Defendant's dropped unenforceability counterclaims, which the Court addresses below. *Infra* Section III.B.6.

Turning to the other *Read* factors.   For factor one, Plaintiff argues that Defendant deliberately copied its invention, relying on the jury's willfulness finding and citing to evidence presented at trial.  (D.I. 337 at 4).  Although "the jury was free to find that [Defendant] copied, the evidence of copying is not overwhelming, nor is there any evidence of particularly egregious copying."  *Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*, No. 16-284-LPS, 2019 WL 3240521, at *8 (D. Del. July 18, 2019).  Moreover, although Plaintiff presented evidence that Defendant had the opportunity to copy its product, Defendant presented evidence that it was critical of Plaintiff's design and sought to design a better product.  (D.I. 344 at 15).  Therefore, the Court concludes that this factor is neutral.

Regarding factors two,[21] five, six, seven, eight, and nine, Plaintiff fails to cite any evidence of "egregious conduct" on the part of Defendant that rises to the level of "malicious" behavior required to support an award of enhanced damages.  These factors thus weigh against Plaintiff.

Regarding factor four, Plaintiff offers no information about Defendant's size or financial condition, but instead focuses on Defendant's parent company, Stryker.  Plaintiff, however, did not sue Stryker, and has not shown that this factor supports enhanced damages. *See Nox Medical Ehf v. Natus Neurology Inc.*, 2018 WL 4062626, *5 (D. Del. 2018), *modified in part*, 2018 WL 6427686, *2 (D. Del. Dec. 7, 2018) (finding that Plaintiff had not met its burden of showing the fourth factor favored enhanced damages because it did not offer any information on Defendant's size or financial condition, but rather only offered information on Defendant's parent company).

---

[21]    Plaintiff argues that Defendant failed to form a good-faith belief of invalidity or non-infringement because Defendant did not offer evidence of policies about freedom to operate or advice of counsel opinions.  (D.I. 337 at 8).  However, "failure of an infringer to obtain the advice of counsel . . . or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent." 35 U.S.C. § 298.

In sum, none of the factors weighs in favor of enhanced damages.  Given the lack of evidence of egregious conduct by Defendant, the Court is not persuaded that this is a case that warrants enhanced damages and will deny Plaintiff's motion.

### 2.   Injunction

Plaintiff asks the Court to permanently enjoin Defendant "with respect to the PrimaFit product and any products that are not more than colorably different." (D.I. 337 at 16).  According to Defendant, the PrimaFit product is no longer manufactured for sale.  (D.I. 344 at 4).  As Plaintiff notes, "[t]here is a difference between manufacture and sale, because, for example, [Defendant] could have stockpiled PrimaFits."  (D.I. 351 at 8).  Plaintiff also points to Defendant's website advertising the PrimaFit product, indicating continuing sales.  (*Id.*).  The Court agrees with Plaintiff that it is unclear whether there is in fact anything to enjoin.  Thus, the Court will deny Plaintiff's motion for an injunction with leave to renew subject to clarification of the status of PrimaFit sales.[22]

### 3.   Ongoing Royalties

Plaintiff requests ongoing royalties for PrimoFit "and all products that are not more than colorably different" of 13%.  (D.I. 337 at 23).  Defendant argues that the royalty should be limited to the jury's rate and Plaintiff's request for a royalty on products no more than colorably different from the PrimoFit is inappropriate where no products have been identified.  (D.I. 344 at 28).

---

[22]   If Defendant has stopped manufacturing and selling the infringing PrimaFit devices, it should be that the parties can agree to language of an injunction to the extent Plaintiff has concerns about future manufacturing and sales of that product.  To the extent, however, that Plaintiff seeks an injunction in this case that could be used to enjoin the manufacture and sale of the PrimaFit 2.0, which is currently being litigated in a separate case, the Court views the better course to be allowing the infringement issue to be decided based on a full record in that case.

It is within the Court's equitable discretion to determine whether an ongoing royalty need be imposed. *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314-15 (Fed. Cir. 2007). Although an ongoing royalty is not automatic, "the Federal Circuit has indicated that a prevailing patentee should receive compensation for any continuing infringement." *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-00630-LHK, 2014 WL 6687122, at *7 (N.D. Cal. Nov. 25, 2014) (citing *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1379 (Fed.Cir.2010)). Defendant dedicates just one sentence to arguing that an ongoing royalty would be inappropriate in this case. (*See* D.I. 244 at 26 ("[A]n ongoing royalty is inappropriate because PrimoFit does not infringe and the 407 patent is invalid.")). Defendant has provided no substantive reasons for why an ongoing royalty would be inappropriate in this case, and thus the Court will use its equitable discretion to grant an ongoing royalty.

In determining the ongoing royalty rate, the Court must consider: (i) the "change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability"; (ii) "changed economic circumstances, such as changes related to the market for the patented products"; and (iii) any other "post-verdict factor" that would impact "what a hypothetical negotiation would look like after the prior infringement verdict." *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1297 (Fed. Cir. 2018). "Generally, the jury's damages award is a starting point for evaluating ongoing royalties." *Apple, Inc.*, 2014 WL 6687122, at *14 (citing *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 670 F.3d 1171, 1193 (Fed. Cir. 2012), *vacated on other grounds*, 467 F. App'x 747). In addition, the Court may consider the *Georgia-Pacific* factors. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1370 (Fed. Cir. 2017) (citing *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)).

The jury awarded Plaintiff a royalty of 6.5% for sales of the PrimoFit product. Plaintiff argues that, post-verdict, the royalty should be doubled because the jury's award is only a starting point, Plaintiff's "bargaining position post-verdict has been substantially strengthened by the jury's findings," and "[Defendant]'s continued infringement following the verdict is willful." (D.I. 337 at 24). Plaintiff does not cite to the *Georgia-Pacific* factors or any other support for doubling the jury's royalty rate.

The Court is not persuaded that the factors Plaintiff points to indicate that it would be entitled to a higher royalty rate than the rate determined by the jury. Plaintiff cites to several cases where courts have increased the jury's royalty rate going forward. (D.I. 337 at 24-25). In those cases, however, there was evidence of changed economic circumstances, in addition to the patentee being in a stronger bargaining position. (*See* D.I. 344 at 28 n. 11); *see also Telcordia Techs., Inc. v. Cisco Sys., Inc.*, No. 04-876-GMS, 2014 WL 1457797, at *5 (D. Del. Apr. 14, 2014) (taking into account a maturing market, post-verdict licenses, and measures to eliminate infringement); *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 2010 U.S. Dist. LEXIS 144259, at *26 (D. Ariz. Sept. 9, 2010) (taking into account an award of enhanced damages, attorneys' fees, and various "economic factors, such as Bard and Gore's direct competition, the high profitability of Gore's infringing products, the fact that Gore faces stiffer losses – which might include a permanent injunction – in the event of a second lawsuit, and that Bard seeks adequate compensation and lacks incentive to accept a below market deal"). Although Plaintiff may be in a stronger bargaining position post-verdict,[23] Plaintiff points to no other circumstances that indicate it would be able to negotiate a rate higher than the rate determined by the jury.

---

[23]    Plaintiff relies on the Federal Circuit's statement that in determining an ongoing royalty rate, "[t]here is a fundamental difference . . . between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement." *Amado v. Microsoft Corp.*, 517

The Court agrees with Defendant regarding an ongoing royalty on products not more than colorably different from the PrimoFit product and declines Plaintiff's request.  No other product has been identified or evaluated, and only the PrimoFit product was at issue in this case.  The Court will thus grant Plaintiff's request for ongoing royalties at a rate of 6.5% for the PrimoFit product.

### 4.    Supplemental Damages

Plaintiff requests supplemental damages for sales that occurred up to the time of entry of the judgment but not reflected in the jury's verdict.  (D.I. 337 at 25).  The jury awarded damages for PrimaFit sales through November 20, 2021, and PrimoFit sales through December 31, 2021.  Judgment was entered on April 7, 2022.  (D.I. 320).  "District courts have discretion to award damages for periods of infringement not considered by the jury."  *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 38 (Fed. Cir. 2012).  Defendant does not yet appear to have produced additional sales data for either the PrimaFit or PrimoFit.[24]  Plaintiff requests 6.5% as a reasonable royalty rate for sales of the additional PrimoFit and $3.91 per unit of the additional PrimaFit sold through entry of final judgment.  (D.I. 337 at 25).

---

F.3d 1353, 1361 (Fed. Cir. 2008).  As other courts have noted, however, the rationale behind this view in unclear given that the jury is required to award a rate negotiated by willing licensors and licensees who considered the patent(s) to be valid and infringed.  *See, e.g.*, *Vectura Ltd. v. GlaxoSmithKline LLC*, No. 16-638-RGA, 2019 WL 4346502, at *7 n.10 (D. Del. Sept. 12, 2019); *see also Apple, Inc.*, 2014 WL 6687122, at *2; *EMC Corp. v. Zerto, Inc.*, No. 12-956 (GMS), 2017 WL 3434212, at *3 (D. Del. Aug. 10, 2017) (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009)); *see also* Mark A. Lemley, *The Ongoing Confusion over Ongoing Royalties*, 76 Mo. L. Rev. 695, 704 (2011) ("The ongoing royalty question is the very same question the jury has just resolved: what would a willing buyer and a willing seller who know the patent is valid and infringed have agreed to as a royalty rate?"). ‼

[24]    In a May 4, 2022 email, Defendant stated that it will confirm sales data for the PrimaFit and follow up with sales data for the PrimoFit.  The Court is unaware whether Defendant did in fact follow up with the additional sales data.

Defendant disputes the request on the PrimaFit contending that the product is no longer being manufactured for sale. (D.I. 344 at 28). As noted in connection with the request for injunctive relief, even though PrimaFit is no longer being manufactured, it is unclear whether PrimaFit is still being sold (or has been sold since November 20, 2021). Defendant does not otherwise dispute the requested amounts for PrimaFit or PrimoFit. Therefore, the Court will grant Plaintiff's request for supplemental damages (*i.e.*, a 6.5% royalty on sales of PrimoFit and $3.91 per unit on any sales of Prima Fit that occurred since November 20, 2021). The Court will also allow limited discovery focused on whether sales of PrimaFit occurred after November 20, 2021 and if so, the number of units sold.

### 5.   Pre- and Post-Judgment Interest

Plaintiff requests prejudgment interest of $1,144,734 for all damages through the date of judgment using the U.S. prime rate. (D.I. 337 at 26). Defendant contests the award of prejudgment interest because it alleges Plaintiff delayed "for years" before filing suit, and alternatively requests that the Court apply the Treasury bill rate rather than prime rate. (*See* D.I. 344 at 29). For the reasons set forth below, the Court will grant Plaintiff's request and apply the prime rate.

Prejudgment interest is awarded to restore a plaintiff to the position it would have been in had there been no wrongdoing. *See General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-56 (1983); *see also Delaware River & Bay Auth. v. Kopacz*, 584 F.3d 622, 634 (3d Cir. 2009) (prejudgment interest awards "must be compensatory rather than punitive"). "[A]bsent prejudice to the defendants, any delay by [the patentee] does not support the denial of prejudgment interest." *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1361-62 (Fed. Cir. 2001) (quoting *Lummus Indus., Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 275 (Fed. Cir. 1988)). Here, Defendant has not shown any prejudice due to Plaintiff's alleged delay.

"The matter of prejudgment interest is left to the discretion of the district court." *Taxman v. Bd. of Educ. of Twp. of Piscataway*, 91 F.3d 1547, 1566 (3d Cir. 1996). This discretion extends to a determination of the appropriate interest rate to apply. *See, e.g.*, *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 63 (3d Cir. 1986) ("In federal question cases, the rate of prejudgment interest is committed to the discretion of the district court."); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991).

The Court will assess prejudgment interest compounded quarterly at the prime rate. *See, e.g.*, *In re Frescati Shipping Co.*, 886 F.3d 291, 315 (3d Cir. 2018) (district court within its discretion to award prejudgment interest either at the prime rate or post-judgment rate prescribed by 28 U.S.C. § 1961(a)); *see also Taxman*, 91 F.3d at 1566 ("The adjusted prime rate, established periodically by the Secretary of the Treasury and codified in 26 U.S.C. § 6621, has been used regularly by district courts to calculate prejudgment interest."); *see also Amgen Inc. v. Hospira, Inc.*, 336 F. Supp. 3d 333, 364 (D. Del. 2018) (for patent damages, awarding prejudgment interest at the prime rate compounded quarterly), *aff'd*, 944 F.3d 1327 (Fed. Cir. 2019). The prime rate is by far the most common practice in the District of Delaware. *See, e.g.*, *Bayer v. Baxalta*, No. 16-1122-RGA, 2019 WL 4016235, at *7 (D. Del. Aug. 26, 2019); *Idenix Pharm. LLC v. Gilead Scis., Inc.*, 271 F. Supp. 3d 694, 705 (D. Del. 2017); *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co.*, No. 12-0205-RGA, 2015 WL 4730899, at *10 (D. Del. Aug. 10, 2015); *Ateliers*, 85 F. Supp. 3d at 783; *Dow Chem. Co. v. Nova Chems. Corp.*, No. 05-737-LPS, 2014 WL 1285508, at *11 (D. Del. Mar. 28, 2014); *XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 09-157-RGA, 2013 WL 6118447, at *11 (D. Del. Nov. 20, 2013).

Defendant asserts that the Court should apply the Treasury bill rate because Plaintiff has failed to show that it borrowed at a higher rate or a causal connection between borrowing and the

loss of the use of the money awarded.  (D.I. 344 at 29).  It is not necessary, however, for Plaintiff to "demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate." *Baxalta*, 2019 WL 4016235, at *7 (quoting *Uniroyal*, 939 F.2d at 1545); *see also In re Frescati Shipping Co.*, 886 F.3d at 314 ("[H]ad the District Court chosen to use the prime rate, it would not have abused its discretion even without extensive proof of borrowing costs."); *Idenix*, 271 F. Supp. 3d at 705 (citing *XpertUniverse*, 2013 WL 6118447, at *11).  Therefore, the Court is not persuaded that the Treasury bill rate should be applied in this case.

Thus, the judgment shall be amended to include prejudgment interest compounded quarterly at the prime rate for the $26,215,545 in lost profits for infringement by PrimaFit and the $1,799,193 in royalties for infringement by PrimoFit.

In addition, Plaintiff requests post-judgment interest in the amount of $1,281.77 per day. Post-judgment interest is mandatory for damages awarded in civil cases.  See 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). Consistent with § 1961(a), the rate proposed by Plaintiff is the weekly average one-year constant maturity Treasury yield for the week preceding entry of judgment (*i.e.*, 1.67%).  (*See* D.I. 337 at 26-27).  Defendant does not dispute that Plaintiff is entitled to post-judgment interest or that the rate used by Plaintiff is proper.  Therefore, Plaintiff shall be awarded post-judgment interest calculated using that rate and starting from the date judgment on the jury verdict was entered (*i.e.*, April 7, 2022).  Post-judgment interest shall be awarded for the entire amount included in the judgment, including prejudgment interest.  *See Skretvedt v. E.I. DuPont de Nemours*, 372 F.3d 193, 217 (3d Cir. 2004).  To be clear, however, post-judgment interest on the prejudgment interest award does not begin to accrue until the amended judgment quantifying the prejudgment interest is entered.  *See Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 175 (3d Cir. 2010)

("[P]ost-judgment interest on Travelers' award of prejudgment interest did not begin to run until the December 5, 2007 order was entered quantifying the amount in prejudgment interest owed to Travelers.").

In sum, the Court will grant Plaintiff's request for pre- and post-judgment interest.

### 6.   Counterclaims

Plaintiff requests judgment on Defendant's equitable and invalidity counterclaims and defenses for which Defendant had the burden but presented no evidence at trial.  (D.I. 337 at 27-30).  Plaintiff does not cite to any rule under which it moves.  The Court, however, understands Plaintiff to be moving to alter or amend the judgment pursuant to Rule 59(e) with respect to equitable estoppel, waiver, acquiescence and unclean hands and to be renewing its motion for JMOL under Rule 50(b) with respect to invalidity.

#### a.   Equitable Counterclaims

Defendant maintained counterclaims and affirmative defenses that the patents were unenforceable due to equitable estoppel, waiver, acquiescence and unclean hands throughout the litigation and up to the eve of trial.  Each of these claims was included in the pretrial order submitted (D.I. 284 at 4, 26) and Defendant indicated its intention to move forward on them at the pretrial conference (D.I. 296 at 39:13-20).   It was only on the Friday before trial that Defendant informed Plaintiff and the Court that it would not pursue its equitable counterclaims and defenses. (D.I. 302).  In total, Defendant stated:

> We represent Defendant Sage Products and write to follow-up on the March 21, 2022 Pretrial Conference and Sage's equitable defenses. To further narrow the issues, Sage will not assert its equitable defenses, including waiver, estoppel, unclean hands and acquiescence in this case with respect to PureWick's claims on the '376, '407 and '989 patents. Sage, however, reserves its equitable defenses with respect to PureWick's claim on the '508 patent (which is stayed).

(*Id.*).  Notably, although Defendant purported to reserve rights with respect its equitable defenses to the '508 patent, it did not do so with respect to the '376, '407 and '989 patents.  Nor did Defendant seek to dismiss its unenforceability counterclaims without prejudice.  (*Id.*).

Defendant does not contest this recitation of facts but argues that, because the counterclaims were dropped to narrow the case for trial, and the Court encourages the parties to narrow their case for trial, there is no basis for entering judgment.[25]  (D.I. 344 at 30).  Although streamlining cases for trial is often prudent, the Federal Circuit has explained that "[i]t is a claimant's burden to keep the district court clearly apprised of what parts of its claim it wishes to pursue and which parts, if any, it wishes to reserve for another day."  *Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 801 (Fed. Cir. 2010).  Thus, "it was incumbent on [Defendant] to expressly request" that the Court "dismiss [its counterclaims] without prejudice."  *Id*.  And indeed, failure to do so while simply going forward presenting no evidence at trial may result in entry of judgment that defenses or counterclaims have been waived or abandoned.  *Id.*; *see also  Strub v. Axon Corp.*, 1998 WL 537721, at *10-11 (Fed. Cir. Aug. 17, 1998) (unpublished) (reversing district court's denial of the plaintiff's motion for JMOL of validity because defendant's counterclaim for declaratory judgment of invalidity was part of the pre-trial order and defendant waited until the close of evidence to withdraw the counterclaim, reasoning that "[w]ithdrawal of a

---

[25]    Defendant argues that it withdrew its equitable defenses due to time constraints and further narrowing.  As the Federal Circuit stated in *Strub*, however, there is "no reason why [defendant] should be allowed to modify its litigation strategy in mid-course, forcing [plaintiff] to expend time and money preparing for claims that were never litigated, only to withdraw those claims without prejudice when time pressures of trial dictated another course."  *Strub*, 1998 WL 537721, at *11; *see also Asetek Danmark v. CMI USA, Inc.*, 100 F. Supp. 3d 871, 891-94 (N.D. Cal. 2015) (finding waiver of written description and indefiniteness defenses where the defendant "adduced no evidence on" those defenses at trial); *Fractus, S.A. v. Samsung Elecs. Co.*, 876 F. Supp. 2d 802, 838-39 (E.D. Tex. 2012) (finding that the defendant waived its indefiniteness argument by failing to present testimony or other evidence in support of the defense at trial).

clearly presented claim at such a late stage in the proceeding was clearly prejudicial to [the plaintiff] which was forced to prepare a defense to this claim in advance of trial," and thus plaintiff was entitled to judgment on that claim).

Defendant argues that entry of judgment is inappropriate because waiver, estoppel, unclean hands and acquiescence were not actually litigated in this case. (D.I. 344 at 29-30 (citing *Alcon Research v. Barr Labs.*, 745 F.3d 1180, 1193 (Fed. Cir. 2014) ("[t]he scope of any judgment should conform to the issues that were actually litigated"))). However, "[a]ctual litigation" of an issue does not require the issue be decided by a jury or a formal judgment. *See, e.g.*, *VirnetX Inc. v. Apple Inc.*, 792 F. App'x 796, 803 (Fed. Cir. 2019) ("Apple contends . . . that it did not 'actually litigate' any invalidity challenge except anticipation by Kiuchi simply because it chose to present to the jury no evidence on any other invalidity issue. We disagree."). Rather, the Court should evaluate the amount of effort spent on that issue through discovery and leading up to trial to determine whether there has been "a true adversarial contest."[26] *Id.* at 805.

Here, Defendant asserted counterclaims of waiver, estoppel, unclean hands and acquiescence (D.I. 53 Counterclaim II ¶¶ 53, 76, 108) and asserted each as an affirmative defense (D.I. 53 ¶ 135) for the Asserted Patents. The parties litigated those issues throughout the course of the PureWick I litigation and, as noted above, included these claims and defenses in the pretrial order submitted. (D.I. 284 at 4, 26). Defendant maintained that it would present evidence on these defenses at the pretrial conference. (D.I. 296 at 39:13-20). It was only on the eve of trial that Defendant notified Plaintiff that it was no longer pursuing its equitable defenses, including unclean hands. (*See* D.I. 302). Consistent with that, Defendant offered no evidence on these issues at trial.

---

[26] The Court understands that *VirnetX* addresses "actually litigated" in the context of collateral estoppel. Although the issue before the Court is not collateral estoppel, Plaintiff actually cites to *VirnetX* to support its argument here. (D.I. 344 at 29-30).

In the Court's view, there was a "true adversarial contest" over the unclean hand defenses and counterclaims.  Plaintiff expended considerable effort "in preparing to meet a case that was never made" and thus this qualifies as "actual litigation."  *VirnetX*, 792 F. App'x at 804 ("That framing of the issues in the trial-governing pleadings, together with full pretrial engagement on the issues and the eventual judicial rulings resolving the issues based on evidentiary insufficiency, is enough to constitute actual litigation.").  Defendant had a full chance to pursue its equitable remedies at trial.  It did not do so and has waived or abandoned them.  *See Silicon Graphics*, 607 F.3d at 801 (affirming decision to deem invalidity counterclaims not pursued at trial as "withdrawn or abandoned" where the defendants did not explain how it would serve judicial economy to permit them to "keep their untried claims alive").  Plaintiff is thus entitled to judgment on equitable estoppel, waiver, acquiescence and unclean hands.

b.  <u>**Invalidity Counterclaims**</u>

Defendant raised several invalidity counterclaims and defenses in the pretrial order that were not presented at trial: invalidity of claims 1 and 2 of the '407 patent for failure to comply with 35 U.S.C. § 112 and anticipation of claim 6 of the '989 patent and claims 1 and 2 of the '407 patent.  (D.I. 337 at 29).  Defendant argues that Plaintiff is not entitled to judgment on these issues because they were not actually litigated at trial, it did not present separate counterclaims specific to each claim and the Court's judgment (D.I. 320) already reflects the appropriate judgment, including issues dropped as part of narrowing the case.  (D.I. 344 at 29-30).  Correspondence between the parties indicates that while some invalidity claims may have been dropped as part of narrowing the issues, Defendant indicated it would maintain anticipation of the asserted claims of the '407 and '989 patents. (*See* D.I. 337-5).  Defendant also indicated in the pretrial order that it would present evidence of invalidity for the asserted claims of the '407 patent under § 112.  (D.I. 286 at Ex. B2 p. 4; Ex. C2 p. 23-26).

As with the unenforceability counterclaims, the invalidity counterclaims were actually litigated, and Defendant failed to notify the Court or Plaintiff that it was no longer pursuing these particular invalidity defenses.  As Plaintiff points out, "[i]t was not until the direct testimony of [Defendant]'s experts, Dr. Sheldon and Dr. Newman, that [Defendant] revealed that it was only arguing obviousness for '989 claim 6 and '407 claims 1 and 2."  (D.I. 337 at 30) (citing Tr. 702:8-16, 766:2-9, 781:1-6).  Defendant likewise presented no evidence on invalidity under § 112 for the asserted claims of the '407 patent at trial.  Plaintiff likely prepared defenses to all these claims for trial, which Defendant then never presented or dropped in advance of trial.

The Court may enter judgment where a defendant chooses not to adduce evidence in such situations because it fails to meet its burden.  Indeed, courts have stated that entry of judgment would be appropriate in these circumstances.  *See e.g.*, *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1371 (Fed. Cir. 2008) (affirming entry of JMOL of literal infringement where the defendant was deemed "fully heard on the issue of literal infringement" as the defendant had forfeited its noninfringement argument by not raising the issue sufficiently in advance of the start of trial and there was "no legally sufficient evidentiary basis for a reasonable jury to find for [the defendant] on that issue"); *Asetek*, 100 F. Supp. 3d at 893-94 (noting that where the defendant listed indefiniteness in its pre-trial papers but did not litigate its indefiniteness defense at trial, even absent waiver, the court "would be compelled to find that [the defendant] did not carry its burden to prove, by clear and convincing evidence, that [the] patents are invalid for indefiniteness"); *Fractus*, 876 F. Supp. 2d at 838-39 (concluding that where the defendant listed its indefiniteness defense in the pretrial order but "failed to present any explicit indefiniteness evidence at trial" and "failed to make a single reference to indefiniteness during trial," even absent waiver, the defendant failed to present clear and convincing evidence on the defense).  Therefore, Plaintiff is entitled to

judgment on Defendant's counterclaims and defenses that claims 1 and 2 of the '407 patent are invalid for failure to comply with § 112 and that claims 6 of the '989 patent and claims 1 and 2 of the '407 patent are anticipated.

## IV.   **<u>CONCLUSION</u>**

For the reasons set forth below, the Court will DENY Defendant's motions for JMOL and new trial on infringement, validity and damages as well as remittitur, DENY Plaintiff's motion for enhanced damages and motion for injunction with leave to renew, GRANT-IN-PART Plaintiff's motion for ongoing royalty and GRANT Plaintiff's motions for supplemental damages, pre- and post-judgment interest and judgment on Defendant's counterclaims.  An appropriate order will follow.